IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN ARONSON, MATTHEW ARONSON, <br><br> Plaintiffs, <br><br> v. <br><br> JJMT CAPITAL LLC, a Delaware limited liability company, JACOB WUNDERLIN, MATTHEW SCHWEINZGER, JOSEPH DEALTERIS, TYLER CROOKSTON, <br><br> Defendants. | Case No. 21-CV-01867 <br><br> Hon. Franklin U. Valderrama |

**REPLY IN SUPPORT OF TYLER CROOKSTON'S 12(B)(6) MOTION TO DISMISS**

It is undisputed that Tyler resigned from JJMT in April of 2018, that JJMT (not Tyler) issued all promissory notes to investors, and that Tyler is not a party to any of the 2019 Notes. Plaintiffs do not allege that Tyler knew Plaintiffs or ever communicated with them. The Amended Complaint relies only on vague, conclusory "group pleading" and fails to allege particular facts giving rise to any claim against Tyler. In fact, Plaintiffs go beyond the pleadings and point to various new facts not alleged in the Amended Complaint in response to Tyler's Motion. However, even if Plaintiffs had properly alleged these new facts, each of their claims against Tyler would still fail as a matter of law.

Recognizing that they cannot support their claims with any fraudulent act or misstatement by Tyler, Plaintiffs ask the Court to attribute to Tyler statements in outdated JJMT materials and statements made to them by Schweinzger *after* Plaintiffs invested in the 2019 Notes and *long after* Tyler resigned from JJMT. From there, Plaintiffs urge this Court to draw unreasonable inferences (and implausible conclusions) in their favor and, thus, authorize a fishing expedition for facts to support their deficient claims.

**ARGUMENT**

I. **Unable To Meet The Rule 9(B) Pleading Requirements, Plaintiffs Articulate New, Unsubstantiated Facts Appearing Nowhere In The Amended Complaint**

Rule 9(b) exists to protect against precisely the type of claims alleged against Tyler in the Amended Complaint. *See SEC v. Kameli*, 373 F. Supp. 3d 1194, 1201 (N.D. Ill. 2019); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994) (Rule 9(b) is meant to: (1) protect defendants' reputations; (2) minimize "strike suits" and "fishing expeditions;" and (3) provide a defendant with notice of the claim against him). Although they deny it in their Response, Plaintiffs' claims against Tyler are a textbook example of a fishing expedition. In the introduction to their Response, Plaintiffs even characterize their claims against Tyler as "an inquiry into several important questions surrounding his involvement," and pose a list of questions they hope to answer through this litigation. *See* Pls.' Resp. Br. (ECF No. 52) at 1. Plaintiffs close out their Response with yet another litany of questions, the answers to which Tyler apparently should have provided, with specificity, in his Motion. *See id.* at 16 ("A myriad of questions are not addressed by [Tyler's] Motion . . . .").

Plaintiffs do, however, acknowledge that their claims are subject to Rule 9(b) and make a half-hearted attempt to show that they satisfied the rule by, in part, pointing to new, unsubstantiated facts alleged nowhere in the Amended Complaint. These include, but are not limited to:

- "As a managing member and owner of JJMT, [Tyler] was directly responsible for the creation of offering materials JJMT provided to the Aronsons" (*id.* at 1);

- Tyler "claims that he left his role as a Managing Member of JJMT" and "he allegedly resigned" from JJMT, thereby suggesting that Tyler never resigned from JJMT (despite the Amended Complaint's allegations to the contrary) (*id.* at 10, 13; *cf.* Am. Compl. (ECF 9) ¶ 4);

- Tyler's "name still remained on the Offering Materials the Aronsons were instructed to rely upon at the time of the issuance of the promissory notes alleged in the Complaint" (Pls.' Resp. Br. at 14);

2

- Tyler "did not disavow his interest in JJMT or demand that new Offering Materials be given to investors . . . ." (*id.*); and

- "Each time the Aronsons entered into one of the promissory note agreements relevant to this case, they were directed to rely on the Offering Materials previously provided to them . . . ." (*id.*).

Relying on these unalleged and unsubstantiated facts, Plaintiffs urge the Court to make several unreasonable inferences in support of their implausible claims, including that Tyler: (1) "continued to profit from JJMT even after he allegedly resigned" from JJMT, up through (and after) the time that the Plaintiffs invested in the 2019 Promissory Notes that are the subject of this lawsuit (*id.* at 10); (2) "approved the false statements contained within the investor updates JJMT provided to the Aronsons between 2016-2019," including those subsequent to Tyler's resignation in 2018 (*id.*); and (3) "continued to be a controlling person in JJMT and participated in the sale of the promissory notes to the Aronsons" after his 2018 resignation (*id.* at 14). But these inferences are incorrect and, more importantly, simply not reasonable based upon the facts alleged in the Amended Complaint and embellished in the Response Brief.

## II.     Plaintiffs' Reliance On The Group Pleading Standard Is Improper

In addition to improperly arguing new, unsubstantiated facts, Plaintiffs also insist that they should be exempt from the specificity requirements of Rule 9(b) and allowed to rely on group pleading because the factual details as to who drafted the alleged misstatements in this case are supposedly "within the defendants' exclusive knowledge." Pls. Resp. Br. at 2. The Court should reject this argument for several reasons.

***First***, this is not a case where the facts are "shrouded in mystery." These Plaintiffs have access to a wealth of information from the SEC's Complaint against Horwitz and Schweinzger's sworn Declaration. Am. Compl. ¶ 16, Ex. 1. As a result, Plaintiffs are likely privy to *more* facts than plaintiffs in the average fraud case. Additionally, the Plaintiffs *do* know, without a doubt,

3

that Schweinzger is the only member of JJMT with whom they ever communicated. Even where Plaintiffs allege statements made "by JJMT," it is clear that the particular communication came to Plaintiffs directly from Schweinzger. *See id.* ¶¶ 26-35, 61-63.

**Second**, the Plaintiffs play fast and loose with the facts alleged – including those incorporated by reference through the Amended Complaint's exhibits – in a desperate attempt to attribute Schweinzger's statements to Tyler. In particular, the Plaintiffs try to sweep in Schweinzger's October 9, 2016 email into the "Offering Materials," despite including in its Response Brief a quote from the Subscription Agreement that *explicitly excludes* such communications. Pls.' Resp. Br. at 8 ("The Subscription Agreement defines the 'Offering Materials' as 'collectively, the "Investor Opportunity Overview" as previously provided to the Investor, and this Agreement, including the form Note attached as an appendix to this Agreement.'") (emphasis omitted). Plaintiffs also attempt to rely on Schweinzger's use of "we" and "partners" in the October 9 email to argue that his statements should be attributed to Tyler. But these attempts fail because Plaintiffs do not, and cannot, allege that Tyler helped draft or review the email before its issuance or was *even aware* of it once it had been issued. Likewise, Plaintiffs' assertion that JJMT's alleged continued use of the 2016 Investment Opportunity Overview ("Investment Overview") somehow demonstrated Tyler's ongoing involvement in JJMT misses the mark (*see, e.g.*, *id.* at 14; *see also* Am. Compl., Ex. 3), as it is undermined by the updated Investment Overview attached to the Amended Complaint as Exhibit 4, which does not include Tyler among the JJMT contacts. In fact, the Amended Complaint cites to this updated version in setting forth the allegedly misleading statements. *See* Am. Compl. ¶¶ 36, 39; Ex. 4 at 92 of 164.

4

***Finally***, and most importantly, Plaintiffs incorrectly argue that the group pleading doctrine allows them to attribute the statements by Schweinzger and within the 2016 JJMT Investment Overview to Tyler, relying upon both his role at JJMT until his 2018 resignation and the Overview's inclusion of his name among the JJMT contacts on its last page. *See* Pls.' Resp. Br. at 7-9; *see also* Am. Compl., Ex. 3. In doing so, however, the Plaintiffs ignore that the group pleading doctrine, which has been applied to federal securities fraud claims, has been rejected by the Seventh Circuit. *See Cornielsen v. Infinium Cap. Mgmt., LLC,* 916 F.3d 589, 600-601 (7th Cir. 2019) (rejecting plaintiffs' use of the group pleading doctrine to meet Rule 9(b)'s requirement to plead with particularity the misrepresentations and omissions for each defendant); *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008) ("We have rejected the 'group pleading doctrine,' a judicial presumption that statements in group-published documents are attributable to officers who have daily involvement in company operations."). This rejection is evidenced by the fact that the Plaintiffs can only cite to cases that are well over twenty-years old to argue that the doctrine still applies. *See* Pls. Resp. Br. at 7; *but cf. Kameli*, 373 F. Supp. 3d at 1201 ("A complaint that attributes misrepresentations to all defendants, 'lumped' together for pleading purposes, generally is insufficient (citation omitted)" for Rule 9(b) purposes); *Schaufenbaul v. InvestForClosures Fin., LLC*, No. 09 C 1221, 2009 WL 3188222 at *5 (N.D. Ill. Sept. 30, 2009) (rejecting doctrine's application to ISL and ICFA claims).

And, contrary to the Plaintiffs' assertions, JJMT's small size actually makes Plaintiffs' inability to attribute alleged misstatements to Tyler even more telling. The fact remains that the Plaintiffs have not alleged that Tyler was involved in the drafting of the Investment Overview, and they certainly cannot allege that he distributed the Investment Overview to them. Moreover, they have not (and cannot) assert that Tyler drafted, reviewed or was even aware of Schweinzger's

communications with them. Notwithstanding, even if these statements are considered by the Court, they do not overcome the fact that the Promissory Notes at issue in this lawsuit were issued by JJMT nearly a year or more after Tyler resigned from JJMT. While Plaintiffs try to argue that Tyler can be held responsible for allegedly false statements after his resignation (*see* Pls.' Resp. Br. at 10), they provide *absolutely no authority* for such a proposition.

Because Plaintiffs do not plead particular facts to establish any of their claims against Tyler and present no compelling reason why they should be exempt from pleading their fraud-based claims with particularity, as required by Rule 9(b), the Court should dismiss Counts I, II, III, IV, IX and X against Tyler, with prejudice.

### III. Plaintiffs Also Cannot Meet The ISL's Pleading Requirements

As set forth in Tyler's Motion, Plaintiffs' factually-deficient ISL claim also fails to meet several of the ISL's specific pleading requirements. Plaintiffs fail to rebut Tyler's Motion as to these statutory requirements, and Plaintiffs' failure to satisfy any one of the requirements on its own requires that the Court dismiss their ISL claims.

*First*, Plaintiffs concede that Tyler was no longer a member of JJMT when Plaintiffs invested in the 2019 Notes. They also plead no facts in the Amended Complaint showing that, after resigning, Tyler nevertheless "obtained money" or otherwise benefitted from those 2019 Note sales, as required to state a claim under Section 12(G) of the ISL. As noted above, Plaintiffs argue that this Court can simply infer that Tyler continued to profit from the sales of JJMT promissory notes *after* resigning. They cite to no authority in support of this illogical proposition. Nowhere in the Amended Complaint do Plaintiffs allege that the other managing members agreed that Tyler would continue profiting from new sales after he resigned. Nor do they allege any facts to explain *why* the other individual defendants would agree to such an arrangement, against their own financial interests. Thus, any such inference would be unreasonable.

***Second***, and similarly, Plaintiffs plead no facts from which the Court can reasonably infer that, after resigning, Tyler continued to participate in selling the 2019 Notes as a control person of JJMT. 815 ILCS 5/13(A). There certainly is no reasonable basis to infer that he continued on as a JJMT control person *after* resigning. Plaintiffs argue that *Froehlich v. Matz*, 417 N.E.2d 183, 194 (Ill. App. Ct. 1981) supports such an inference that, after resigning, Tyler still controlled JJMT, approved of statements made by JJMT and/or by Schweinzger as JJMT's representative, and profited from the 2019 Notes. However, the named Plaintiff in *Froehlich* – that is, the "defrauded investor" Plaintiffs point to repeatedly (*see* Pls.' Resp. Br. at 10, 11, 14) – has little in common with Tyler. As a director in the corporation, Froehlich actively pushed and then participated in a plan to bring in new investors and use their investment money to repurchase some of his stockholdings. 417 N.E.2d at 194. Froehlich remained a director and control person at the time when shares were sold to the "later investors." In fact, Froehlich never left the company. *Froehlich* is easily distinguishable for this reason and, contrary to Plaintiffs mischaracterization, has absolutely nothing to do with the issue of control person liability post-resignation. Thus, *Froehlich* does not support Plaintiffs' arguments and cannot save their claims.

***Third***, Plaintiffs do not even attempt to explain how they could recover from Tyler where rescission is the only remedy provided under the ISL and Tyler is not a party to any of the 2019 Notes. *See* 815 ILCS 5/13(A). *See also Kleban v. S.Y.S. Restaurant Mgmt., Inc.*, 912 F. Supp. 361, 368 (N.D. Ill. 1995); *Lane v. Money Masters, Inc.*, 14-CV-1715, 2015 WL 225427, at *10 (N.D. Ill. Jan. 15, 2015). They cannot rebut this undeniable truth – one that, on its own, requires dismissal of Count II.

### IV. Plaintiffs ICFA Claims Fail For Many Of The Same Reasons Stated Above

Plaintiffs argue that they can state a cause of action against Tyler under the ICFA by pleading misleading statements in (a) the JJMT Investment Overview and (b) various "investor

7

updates" sent to them over time, although they allege facts related only to updates sent *after* Tyler resigned from JJMT in the Amended Complaint. These arguments fail, and the Court should dismiss Plaintiffs' ICFA claims for the exact same reasons discussed in Sections I, II and III above.

## V. Plaintiffs Fail To Plead A Cause Of Action For Conspiracy And Cannot Re-Plead Facts To State A Claim

Plaintiffs' primary argument against dismissal of their threadbare conspiracy claim is that because conspiracies are "often shrouded in mystery," Plaintiffs are excused from pleading *any* specific facts regarding the so-called conspiracy in this case. The law is not on Plaintiffs' side, however, and none of the cases Plaintiffs cite suggest that this Court should entertain their bare bones, conclusory claim. *See e.g., Ill. Non-Profit Risk Mgmt. Ass'n v. Human Serv. Ctr. of S. Metro-E.*, 884 N.E.2d 700, 711 (Ill. App. Ct. 2008) (affirming dismissal of conspiracy and underlying fraud claims because, while conspiracies are "often intentionally shrouded in mystery . . . the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred"(citations omitted)); *Adcock v. Brakegate, Ltd.,* 645 N.E.2d 888, 895 (Ill. 1994) (noting in dicta that conspiracies are typically proven by circumstantial evidence but expressly declining to opine on the factual sufficiency of the complaint on appeal). The Seventh Circuit, likewise, has made clear that while conspiracies are often proven by circumstantial evidence, well-pled facts are still required to state a claim. *See Beaman v. Freesmeyer*, 776 F.3d 500, 511 (7th Cir. 2015) ("Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs can use circumstantial evidence to establish a conspiracy, but such evidence cannot be speculative."). *See also Linkepic Inc. v. Vyasil, LLC*, 370 F. Supp. 3d 906, 925-26 (N.D. Ill. 2019)

("Conspiracy alleging a tort as the underlying wrongful act is actionable, as long as it includes additional defendants or new facts not already pled in the underlying tort." (citation omitted)).

Plaintiffs next argue that the Court should deny Tyler's Motion because it "fails to establish, or even assert, the elements of a clear withdrawal from the Aronsons' alleged conspiracy." Pls. Resp. Br. at 16. In other words, pre-supposing that they have alleged a conspiracy claim, Plaintiffs argue that it is somehow Tyler's burden as a defendant to allege facts establishing an affirmative defense in a 12(b)(6) Motion to Dismiss. In addition to betraying common sense and basic civil procedure, this argument is not even relevant to rebut any argument in the Motion, in which Tyler does not argue that he withdrew from any conspiracy.

Additionally, even if Plaintiffs could actually plead facts to support a conspiracy claim, it is evident from the cases they cite in response to Tyler's Motion that Tyler's resignation from JJMT would, in fact, be precisely the type of affirmative act required for him to withdraw. *See e.g., Gillenwater v. Honeywell Intern., Inc.,* 996 N.E.2d 1179, 1200 (Ill. App. Ct. 2013) ("Similarly, by selling the Kaylo division to Owens-Corning in 1958 and walking away, Owens-Illinois signified to Owens-Corning that it no longer would participate in the conspiracy to distribute Kaylo without an adequate warning label. Owens-Illinois's continued silence did not change the fact of its withdrawal from the conspiracy.") Moreover, Plaintiffs fail to mention that the Seventh Circuit in *U.S. v. Read* rejected their theory of continuing liability, making clear that "[b]y definition, after a defendant withdraws, he is no longer a member of the conspiracy and the later acts of the conspirators do not bind him." *U.S. v. Read*, 658 F.2d 1225, 1232 (7th Cir. 1981).

## CONCLUSION

For all of the reasons stated above and in Tyler's 12(b)(6) Motion to Dismiss, Plaintiffs have failed to state any plausible claims against Tyler and cannot re-plead additional facts to save

9

their claims. The Court should grant Tyler's Motion and dismiss, with prejudice, Counts I, II, III, IV, IX and X.

| | |
|---|---|
| Dated: November 17, 2021 | Respectfully Submitted,<br>  s/ Jena L. Levin |
| | Ellen M. Wheeler, ewheeler@foley.com<br>Margaret G. Nelson, mnelson@foley.com<br>Jena L. Levin, jlevin@foley.com<br>Foley & Lardner LLP<br>321 North Clark Street, Suite 3000<br>Chicago, IL 60654<br>Tel: (312) 832-4500 |
| | *Attorneys for Tyler Crookston* |