**From:** Matthew Schweinzger [mailto:mschweinzger@jjmtcap.com]
**Sent:** Sunday, October 09, 2016 11:49 PM
**To:** Steven Aronson
**Subject:** JJMT Investment Opportunity

Steve,

EXHIBIT 3

As promised, ahead of our call tomorrow around 5pm ET, I wanted to share some more color on the opportunity I mentioned to you last week (JJMT Capital).  I do ask that you keep all of this confidential – I do not share this with everyone and obviously do not want any conflict with Acrisure.

JJMT Capital is an investment fund I launched in 2014 with three other Partners in Chicago.  The fund offers our investors a very low risk debt investment vehicle in which the loaned money is used for acquisition financing of film distribution rights.  Mouth full I know, but let me try and simplify this concept: JJMT helps finance the purchase price for specific film's distribution rights in specific end markets (South America, Australia and New Zealand).  We acquire the rights to distribute content from producers or their sales agents, then immediately sell those rights to one of three major platforms (Sony, HBO or Netflix).  That transaction is typically completed in a 24 hour window.  Those platforms have payback periods that range from 3 months to 1 year.  The time it takes for the platform to pay us for the rights we sell them is exactly what JJMT helps to finance.  During this sale process (the "flip"), JJMT makes money by negotiating higher sales prices from the Platforms while locking in lower purchase prices from the producers/their sales agents.  That money is what we use to pay the investors in JJMT.  To date, we've been able to clear a 20% IRR for our investors in every single film we've financed (60 in total and one to be funded at the end of this week).  The vast majority of our sales go to HBO and this platform has a payback period of 6 months.  To that end, our investors are in a short term investment, typically earning 20% to 25% IRR and use JJMT as an excellent outlet for excess cash that's otherwise in a checking account or low interest bearing money market fund.

If you're still interested after all that, here is a bit more detail:

Attached is a fairly detailed overview of our operation in a document titled JJMT Overview.  Before diving in to that document, I wanted to provide an example so you have a good understanding of our process:

- Investors interested in JJMT typically commit a certain dollar amount to the fund where the Managing Partners of the fund can then call up to that committed amount from that specific investor.  To make sure our investors are accredited, we have them execute a Subscription Agreement (attached for reference) – please note the dollar amount committed in this agreement is non-binding and we don't have you fund any dollars until a real opportunity is days from completion.  Only then do we actually call your capital and have you send funds to our corporate account
- Let's say you are interested and commit up to $100,000.  We then use that specific amount in the market as we look to acquire our next set of film distribution rights.  You would execute the attached Subscription Agreement in the amount of $100,000 and we (the Managing Partners) pencil you in for up to the total amount you've committed
- Once we have a deal completely negotiated, signed up and ready (with the exception of funding), I circle back to you with all the deal specifics and make sure you're still good for up to $100,000.  Those specifics come across through email and below is just one example of a deal we've completed/the details shared with investors.  This acts as the "capital call" to our investors:

The Perfect Weapon

➢ Cast: Steven Seagal

➢ Director: Titus Paar

➢ Description: In the not too distant future, an elite assassin fails to terminate his target and finds himself on the run from the totalitarian state's secret government organization that employs him.

➢ Funding Date: 1/17/2016

➢ Return Profile: 6 month HBO deal with repayment date of 7/20/2016

➢ IRR: 25%

➢ Investment: $100,000

➢ Capital + Interest Returned: $112,0000

- Once you confirm you're interested in investing at a 25% IRR over about a six month hold period, I have you execute a short form Investment Commitment memo (example attached) which locks us into funding dates and assures you/we have appropriate bank account information
- You fund JJMT's corporate account on or before the capital call date and we send you a fully executed promissory note governing the transaction between you and JJMT (example in the back of the Subscription Agreement attached)
- About six months later, we send back the principal plus the interest earned in one lump sum payment ($112,000 in the example above)

This example outlines an investment where the distribution rights of the film are sold to HBO. We also sell to Sony – their model is a three month payback period vs. the six months with HBO, but also is in the form of a single bullet repayment. Additionally, we sell to Netflix – their model is a 12 month payback and also is in the form of a single bullet repayment. All transactions target returns at or above a 20% IRR for our investors, regardless of who we sell the distribution rights to. You'll see examples of the three different investment profiles on page 10 of the JJMT Overview attachment. Note, because of the short term nature of these investments, even a few days will drive a difference in the total dollars returned (page 10 outlines an HBO example where $100,000 returns $11,800 vs. the $12,000 in the example above).

Just a few last details and I'll wrap this up!

- Minimum investment is $25,000

- Typical range is all over the map – we have 108 investors and two are private equity firms. Of the 108, the largest has invested almost $6 million and the smallest is of course at the minimum ($25,000). Of all our investors, the average dollar amount of deployed capital is almost exactly $210,000

- The fund is just over $30 million now. We've deployed over $22 million of investor capital and over $7 million of Partner capital (my other three Partners and myself)

I'm sure you'll have several questions after taking a look, but I'm excited to talk through this with you and possibly get some of your capital to work at returns currently averaging ~25% IRR!  We have a great pipeline for October including an opportunity we will be funding this Friday (the 14th).  This Friday's opportunity has landed right at the 25% IRR mark.  **If you have interest, please let me know ASAP on this one.**  Otherwise, we can take it slow and you and I can talk through anything and everything you'd like on this.  Appreciate the time to review this – look forward to talking with you tomorrow.


Best,


Matt


**Matt Schweinzger**

Managing Partner

JJMT Capital,  LLC

P: (269) 808-7072

mschweinzger@jjmtcap.com



"Investing With Creativity"

# Investment Opportunity Overview



# CONFIDENTIALITY AND DISCLAIMERS

JJMT Capital has deemed all of the information to be presented and all information contained in these materials as strictly confidential and proprietary and to contain legally protectable trade secrets. The information is not generally known to the public. By receiving these materials, recipients are agreeing to maintain all information contained in this presentation strictly confidential and to not to disclose the information to anyone, except within recipient's organization and to agents and advisors bound by duties of confidentiality or as otherwise required by law. The information presented and contained herein may not be reproduced or redistributed.

The information presented and contained herein contains certain statements that are "forward looking statements" and projections. Those statements may include, among others, discussions of the business strategy and JJMT Capital's expectations concerning investment results, future operations, profitability, and liquidity and capital resources. The forward looking statements and projections are necessarily based on certain assumptions and are intended to illustrate hypothetical results under those assumptions (not all of which are specified herein). These assumptions may include general assumptions relating to economic and market conditions. They also include assumptions based on good faith assessments by JJMT Capital managers.

Although JJMT Capital believes that the expectations reflected in the forward looking statements and projections are reasonable under the circumstances at the time they were prepared, it can give no assurance that such expectations will prove to be accurate. These projections and other estimates may change without notice. All phases of the operation of the JJMT Capital are subject to a number of uncertainties, risks and other influences, many of which are outside the control of JJMT Capital and any one of which, or a combination of which, could materially affect whether the forward looking statements and projections ultimately prove to be accurate. Actual results will likely differ from projected results, and such differences may be material. JJMT Capital undertakes no duty or obligation to update the forward looking statements and projections, whether as a result of new information, future events or otherwise.

Recipients of this information should not view the past or projected performance of JJMT Capital as indicative of future results, and there is a possibility of loss in connection with an investment described in these materials. These materials should be read in conjunction with the Subscription Agreement provided by JJMT Capital, including the form of Promissory Note included as an appendix to such Subscription Agreement. Any summary or other statements regarding the terms of such note contained in this Investment Opportunity Overview are qualified in their entirety by the actual terms of such note.



# JJMT CAPITAL OVERVIEW

➢ JJMT Capital ("JJMT") is a Delaware LLC focused on providing financing to 1inMM Capital for the purposes of acquiring film distribution rights

  ➢ 1inMM Capital is a sister entity to 1inMM Productions (collectively "1inMM")

➢ 1inMM is a film distribution company based in Los Angeles that engages in financing, production, and distribution of films throughout Latin America, Australia, and New Zealand

➢ 1inMM was founded in 2012 by Zach Horwitz and his partners with a significant amount of committed capital from a well known investor base

➢ In its current geographies, 1inMM is a top distribution company

➢ Within its distribution business segment, 1inMM's business model consists of purchasing the film distribution rights from Producers and selling those rights to Platforms including HBO, SONY, Netflix, Showtime, basic cable, etc.

➢ 1inMM's revenue model consists of earning a royalty on the revenue stream of every film it "licenses" to Platforms

➢ JJMT is one of the sources of capital for 1inMM – thereby providing 1inMM the financial flexibility to purchase film rights from independent film Producers/Financiers



# INDUSTRY OVERVIEW
## MOVIE PRODUCTION SUPPLY CHAIN

## Creation

## Distribution

## Exhibition

**Film Producers / Financiers**

➡

**Sales Agents**

➡

**Distribution Companies\*\***

➡

**Theaters / Platforms**

| Creation | Distribution | | Exhibition |
|---|---|---|---|
| • Formulating Idea<br>• Seeking financing<br>• Casting<br>• Direction<br>• Production<br>• Filming<br>• Editing / prints<br>• Soundtrack<br><br>**Players:**<br>• **Major Studios**: Warner Bros, Paramount, Universal, Disney<br>• **Mini-Majors**: Lionsgate, Weinstein Co., MGM<br>• **Independent film producers** | Hired by Producers to assist in:<br>• Marketing / advertising<br>• Packaging<br>• Promotion<br>• Drafting / sale of geographic distribution rights<br>• Delivery of final material to distribution partners<br><br>**Players:**<br>• **IM Global**<br>• Exclusive Media Group<br>• Block Entertainment<br>• Nu Image<br>• Film Nation<br>• Millennium Films<br>• Radiant | • Act as aggregators of content for Platforms<br>• Purchase & sell distribution rights (geographically based)<br>• Bundling of content<br>• Dubbing languages<br><br>**Players:**<br>• **1inMM**<br>• Sun Distribution<br>• Reliance Entertainment<br>• Entertainment One<br>• Exclusive<br>• Film Nation | • Cinema screening<br>• TV screening<br>• Video/DVD release<br>• Subscription-based services / streaming<br><br>**Players:**<br>• **Sony**<br>• **HBO**<br>• **Netflix**<br>• Amazon<br>• Hulu<br>• Major Theaters<br>• ShowTime<br>• TV Channels |



**JJMT**
CAPITAL

# ILLUSTRATIVE TRANSACTION OVERVIEW



**Investors** | **JJMT Partners**

**JJMT**

**1** — JJMT loans 1inMM $$ to purchase rights to a film

**1inMM**

**2a** — 1inMM uses loan proceeds to pay Producer for distribution rights to a film

**Film Producer / Sales Agent**

**2b** — Producer transfers distribution rights to 1inMM

**3b** — 1inMM transfers distribution rights to Platform

**Platform (Sony, HBO, Netflix)**

**4** — Upon payment by Platform to 1inMM, 1inMM pays JJMT Capital the principal of the original loan plus interest

**3a** — Platform signs agreement to pay 1inMM for the distribution rights (within a pay period) and also enters into a revenue sharing agreement with 1inMM for 3 years

Note: JJMT loans funds to the entity 1inMM Capital, not 1inMM Productions



# TRANSACTIONS COMPLETED TO DATE

➢ To date, the entities controlled by the Managing Partners of JJMT have financed over 50 of 1inMM's 300+ transactions

➢ The first transaction was completed in Q1 2014, with the majority beginning in 2015

| CY 2014 | | | CY 2015 | | | 2016 - YTD | | | Activity Over Time | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Date** | **Customer** | **Capital Deployed** | **Date** | **Customer** | **Capital Deployed** | **Date** | **Customer** | **Capital Deployed** | **CY 2014** | |
| Mar-14 | Sony Pictures | $37,000 | Jan-15 | HBO Studios | $81,100 | Jan-16 | Netflix | $550,000 | # of films | 4 |
| Oct-14 | Sony Pictures | $297,000 | Feb-15 | HBO Studios | $265,000 | Jan-16 | Netflix | $550,000 | Average Price | $100,625 |
| Nov-14 | Sony Pictures | $32,500 | Feb-15 | HBO Studios | $263,500 | Jan-16 | HBO Studios | $655,900 | | |
| Dec-14 | HBO Studios | $36,000 | Mar-15 | HBO Studios | $38,250 | Jan-16 | HBO Studios | $690,500 | **CY 2015** | |
| **Total** | | **$402,500** | Mar-15 | HBO Studios | $225,500 | Feb-16 | HBO Studios | $830,000 | # of films | 21 |
| | | | Apr-15 | HBO Studios | $325,250 | Feb-16 | Sony Pictures | $610,000 | Average Price | $331,500 |
| | | | Jun-15 | HBO Studios | $265,000 | Mar-16 | HBO Studios | $690,750 | | |
| | | | Jun-15 | HBO Studios | $253,500 | Apr-16 | HBO Studios | $725,500 | **CY 2016 - YTD** | |
| | | | Aug-15 | HBO Studios | $235,750 | Apr-16 | HBO Studios | $780,250 | # of films | 35 |
| | | | Aug-15 | HBO Studios | $170,500 | Apr-16 | HBO Studios | $680,750 | Average Price | $649,275 |
| | | | Aug-15 | HBO Studios | $416,000 | Apr-16 | HBO Studios | $905,500 | | |
| | | | Sep-15 | HBO Studios | $490,750 | Apr-16 | HBO Studios | $210,000 | **Since Inception** | |
| | | | Sep-15 | HBO Studios | $266,750 | May-16 | HBO Studios | $615,000 | **Total # of Films** | |
| | | | Sep-15 | HBO Studios | $195,675 | May-16 | HBO Studios | $635,000 | *# of Sony Films* | *4* |
| | | | Oct-15 | HBO Studios | $680,650 | May-16 | HBO Studios | $910,500 | *# of HBO Films* | *54* |
| | | | Oct-15 | HBO Studios | $375,500 | May-16 | HBO Studios | $960,750 | *# of Netflix Films* | *2* |
| | | | Oct-15 | HBO Studios | $285,950 | Jul-16 | HBO Studios | $912,565 | **Grand Total** | **60** |
| | | | Nov-15 | HBO Studios | $675,500 | Jul-16 | HBO Studios | $922,870 | | |
| | | | Nov-15 | HBO Studios | $590,000 | Jul-16 | HBO Studios | $588,750 | Total Capital Deployed | $30,088,490 |
| | | | Dec-15 | HBO Studios | $485,650 | Jul-16 | HBO Studios | $605,900 | Largest Single Transaction | $990,820 |
| | | | Dec-15 | HBO Studios | $375,500 | Aug-16 | HBO Studios | $610,750 | Average Price | $501,475 |
| | | | **Total** | | **$6,961,275** | Aug-16 | HBO Studios | $697,000 | | |
| | | | | | | Aug-16 | HBO Studios | $440,105 | | |
| | | | | | | Aug-16 | HBO Studios | $310,000 | | |
| | | | | | | Aug-16 | HBO Studios | $550,240 | | |
| | | | | | | Aug-16 | HBO Studios | $390,000 | | |
| | | | | | | Sep-16 | HBO Studios | $520,670 | | |
| | | | | | | Sep-16 | HBO Studios | $515,000 | | |
| | | | | | | Sep-16 | HBO Studios | $390,800 | | |
| | | | | | | Oct-16 | HBO Studios | $310,550 | | |
| | | | | | | Oct-16 | HBO Studios | $325,515 | | |
| | | | | | | Oct-16 | HBO Studios | $990,820 | | |
| | | | | | | Oct-16 | HBO Studios | $955,000 | | |
| | | | | | | Oct-16 | HBO Studios | $877,230 | | |
| | | | | | | Oct-16 | HBO Studios | $810,550 | | |
| | | | | | | **Total** | | **$22,724,715** | | |

The source of this capital comes from the founding partners of JJMT and select outside investors


**JJMT**
CAPITAL

# TRANSACTIONS COMPLETED TO DATE CONT'D…

         

        

         

         

         

**JJMT** CAPITAL

Not pictured: *Custody, The Journey, Under Fire, American Dream, The Vigilante, Living with the Dead*
Note: the above films represent transactions involving financing provided by JJMT or other entities controlled by the Managing Partners of JJMT

# NOTABLE FILMS

| Film Title | Director | Year | Cast |
|------------|----------|------|------|
| *Imperium* | Daniel Ragussis | 2016 | Daniel Radcliffe, Nestor Carbonell, Toni Collette |
| *Carol* | Todd Haynes | 2015 | Cate Blanchett, Rooney Mara, Sarah Paulson |
| *Eye in the Sky* | Gavin Hood & Colin Firth | 2016 | Helen Mirren, Alan Rickman, Aaron Paul |
| *High-Rise* | Ben Wheatley | 2015 | Tom Hiddleston, Jeremy Irons, Sienna Miller |
| *The Adderall Diaries* | Pamela Romanowsky | 2015 | James Franco, Amber Heard, Christian Slater |
| *The Last Five Years* | Richard LaGravenese | 2014 | Anna Kendrick, Jeremy Jordan, Tamar Mintz |



# HISTORIC AND FUTURE ANTICIPATED DEAL FLOW

➢ 1inMM's historical and projected deal flow is shown below.  Please note that 1inMM has **never** experienced a transaction where HBO, SONY, or Netflix failed to make full payment for the acquisition content

    ➢ **2013**: 22 films

    ➢ **2014**: 49 films

    ➢ **2015**: 71 films

    ➢ **2016**: between 110-130 films

## Anticipated 2016 1inMM Deal Flow by Month

Film Festival Schedule

| Month | Major Festival |
| --- | --- |
| January | Sundance |
| February | Berlin |
| March | South by Southwest (SXSW) |
| April | Hong Kong |
| May | Cannes |
| June | Indie & LA |
| July | Small Festivals |
| August | Telluride |
| September | Toronto & Venice |
| October | Small Festivals |
| November | American Film Market |
| December | Small Festivals |





# ILLUSTRATIVE INVESTMENT INTO JJMT

➢ Investments into JJMT are structured as loans (promissory notes) and generally short term in nature (3 months, 6 months, or 1 year)

> ➢ All loans are structured as <u>zero coupon</u> instruments and paid in full at the maturity date

➢ To date, 6 month loans have been the most common security

➢ On or prior to maturity of the note, investors will have their capital (plus interest) returned

➢ JJMT anticipates providing financing to 1inMM for 30-40 films throughout the course of any calendar year, and so expects to have ample opportunity to deploy capital

| Sony - 3 months (zero coupon) | | |
|---|---|---|
| Loan Amount | $100,000.0 | |
| % Interest Rate | 25.0% | |
| Maturity Value | $105,735.0 | |
| **Illustrative Cash Flows** | | |
| Dates | 1/1/2016 | 4/1/2016 |
| Cash Flows | ($100,000.0) | $105,735.0 |
| IRR | | 25.0% |
| Total Profit | $5,735.0 | |

| HBO - 6 months (zero coupon) | | |
|---|---|---|
| Loan Amount | $100,000.0 | |
| % Interest Rate | 25.0% | |
| Maturity Value | $111,800.0 | |
| **Illustrative Cash Flows** | | |
| Dates | 1/1/2016 | 7/1/2016 |
| Cash Flows | ($100,000.0) | $111,800.0 |
| IRR | | 25.0% |
| Total Profit | $11,800.0 | |

| Netflix - 12 months (zero coupon) | | |
|---|---|---|
| Loan Amount | $100,000.0 | |
| % Interest Rate | 25.0% | |
| Maturity Value | $125,000.0 | |
| **Illustrative Cash Flows** | | |
| Dates | 1/1/2016 | 1/1/2017 |
| Cash Flows | ($100,000.0) | $125,000.0 |
| IRR | | 25.0% |
| Total Profit | $25,000.0 | |

Note: the above examples are illustrative in nature and actual results may differ across transactions
IRR is equivalent to the Yield to Maturity or "YTM" for each loan security listed above
Zero Coupon Bond Value = Maturity Value / (1+r)^t, where r = interest rate, and t = time to maturity



# INVESTOR RETURNS

| Summary of Investor Capital Deployed to date | |
|---|---|
| Number of Unique Investors | 108 |
| Total Investor Capital Deployed[1] | $22,690,000 |
| Largest Single Investor[1] | $5,810,000 |
| Average Investor Deployment[1] | $210,000 |
| **Transaction specific detail** | |
| *Number of 3 month deals (Sony)* | *4* |
| *Number of 6 month deals (HBO)* | *54* |
| *Number of 2 year deals (Netlfix)* | *2* |
| **Total Films Financed** | **60** |

[1]Figures rounded to the nearest multiple of $10k
**Netflix Deals were previously structured as a 2 year deal, paid back each quarter in 8 equal installments.  Recently, a new payment structure of 1 year (zero coupon) was negotiated with Netflix.

## Overview of Results

➢ Entities controlled by the Managing Partners of JJMT have deployed ~$22.7mm of investor capital since April 2015

➢ Most common investment period for any single deal has been approximately 6 months (HBO deals)



# INVESTMENT OPPORTUNITY

➢ JJMT continues to raise and deploy capital in order to meet the needs of 1inMM

➢ As previously indicated, any investment into JJMT will be structured as a loan to JJMT

➢ Each loan agreement will be a separate and unique investment in which capital will be called shortly before the funding date of each film (generally 2-3 business days)

➢ It is important to note that an investment in JJMT (through the loan structure outlined in this presentation) does not give an investor any specific rights in 1inMM or in any film that may ultimately be financed through his/her investment



# INVESTMENT PROCESS

➤ Investors interested in loaning funds to JJMT will be required to follow the following process:

   ➤ The investor will be required to complete and sign a Subscription Agreement and return it to JJMT. Please read the Subscription Agreement carefully as an investor are making a number of important commitments by signing and returning the Subscription Agreement. However, by signing a Subscription Agreement, an investor is not committing to invest any particular amount, but is providing JJMT with an indication of the amount he/she _may be_ interested in investing

   ➤ JJMT will review the investor's Subscription Agreement to determine if he/she meets certain minimum qualifications to invest

   ➤ JJMT has no obligation to offer the investor any opportunity to invest in a note. If JJMT offers the investor an opportunity to invest in a note, it will present the investor with an "Investment Commitment" form with the details of the particular note to be issued by JJMT

   ➤ If the investor is interested in investing, he/she would need to sign and return the "Investment Commitment" and fund the principal amount of the note by the Investment Date specified in the "Investment Commitment" agreement

   ➤ Upon receipt of funding, JJMT will issue the investor a promissory note

   ➤ On or before the Maturity Date of the note issued to the investor, JJMT would be required to repay the note with all accrued interest

   ➤ JJMT may allow the investor to invest in more than one note at any particular time



# RISK FACTORS

➤ Making an investment in JJMT (through the loan structure outlined in this presentation) involves risks, including but not limited to the following:

  ➤ Your loan to JJMT is not secured by any collateral. If JJMT fails to repay your loan, your recourse would be to file a lawsuit against JJMT

  ➤ JJMT intends to fund the repayment of your loan by collecting on loans JJMT makes to 1inMM Capital. If 1inMM fails to repay a loan from JJMT, there is a risk that JJMT will not have sufficient cash to repay your loan to JJMT

  ➤ Neither JJMT nor any of its representatives are providing any tax or legal advice regarding your investment. You should consult with your own legal and tax advisors with respect to any investment in JJMT

  ➤ You may not sell or transfer the note you receive from JJMT except in very limited circumstances

  ➤ By signing a Subscription Agreement and any subsequent Investment Commitment, you are making a number of important commitments to JJMT. If any of these commitments turn out to be inaccurate, you may have liability to JJMT and other investors for related damages. You should carefully read the Subscription Agreement before you sign it and before you sign each Investment Commitment



**JJMT**
CAPITAL



**"Investing With Creativity"**

**For further information please reach out to any of our Managing Partners:**

**Jacob Wunderlin**
Managing Partner
jwunderlin@jjmtcap.com

**Joseph deAlteris**
Managing Partner
jdealteris@jjmtcap.com

**Matthew Schweinzger**
Managing Partner
mschweinzger@jjmtcap.com

**Tyler Crookston**
Managing Partner
tcrookston@jjmtcap.com

www.jjmtcap.com



# SUBSCRIPTION AGREEMENT

The investor named on the signature page below (the "*Investor*") is completing and signing this Subscription Agreement (the "*Agreement*") for the purposes of (1) indicating a <u>potential interest</u> in subscribing to invest in one or more promissory notes, substantially in the form attached as <u>Appendix A</u> to this Agreement (each, a "*Note*"), to be issued by JJMT Capital, LLC, a Delaware limited liability company ("*JJMT*"), (2) providing certain information to JJMT to allow JJMT to determine whether the Investor is qualified to invest in one or more Notes, and (3) making certain representations and warranties in connection with any such possible investment.

When used in this Agreement, "*Offering Materials*" means, collectively, the "Investor Opportunity Overview" as previously provided to the Investor, and this Agreement, including the form Note attached as an appendix to this Agreement.

The Investor understands and acknowledges that JJMT is entitled to rely conclusively on the information provided in this Agreement by the Investor. Neither JJMT nor any of its members, employees, representatives, or agents shall incur any liability in respect of any action taken (or not taken) in reliance on any information provided by the Investor in this Agreement.

**1. Nature of Subscription.** By signing this Agreement, the Investor is <u>not making any binding commitment</u> to purchase or otherwise acquire any Note or to make any other investment in JJMT. If the Investor desires to make a binding commitment to purchase a Note, the Investor understands it must sign and return to JJMT one or more "Investment Commitments" in the form provided by JJMT (each, a "*Commitment*"). The Investor understands that JJMT has no obligation to offer or present any Commitment to the Investor and, upon its receipt of a signed Commitment from the Investor, JJMT has no obligation to accept any such Commitment or issue any Note to the Investor. If the Investor submits any one or more signed Commitments to JJMT on or after the date of this Agreement, each such Commitment shall become a part of this Agreement, as if incorporated in this Agreement in its entirety, and the Investor will be deemed to have made all representations, warranties, covenants, and other agreements set forth in this Agreement as of the date of each such subsequent Commitment.

**2. Accredited Investor Status.** The Investor is an "accredited investor" as that term is defined in Rule 501 of Regulation D issued by the Securities and Exchange Commission (the "*SEC*") under the Securities Act of 1933 (the "*Securities Act*") because the Investor satisfies one or more of the following conditions <mark>(please check all that apply)</mark>:

     ☐   The Investor is a natural person whose net worth (*i.e.,* excess of total assets over total liabilities), excluding the value of the Investor's primary residence, either individually or jointly with the Investor's spouse, exceeds $1,000,000.[1]

---

[1] For purposes of calculating net worth, you should include as a liability any mortgage or other debt that is secured by your primary residence if the debt exceeds the estimated fair market value of your primary residence (but you need not otherwise include debt that is secured by your primary residence).

☐    The Investor is a natural person who in each of the last two calendar years had individual income[2] in excess of $200,000, or joint income[3] with his or her spouse in excess of $300,000, and reasonably expects to have individual income in excess of $200,000 or joint income in excess of $300,000 in the current calendar year.

☐    The Investor is a bank as defined in Section 3(a)(2) of the Securities Act; a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity; a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934; an insurance company as defined in Section 2(13) of the Securities Act; an investment company registered under the Investment Company Act of 1940 (the "*1940 Act*"), or a business development company as defined under Section 2(a)(48) of the Securities Act; a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons who are "accredited investors."

☐    The Investor is a private business development company, as defined in Section 202(a)(22) of the Investment Advisers Act of 1940.

☐    The Investor is a corporation, Massachusetts or similar business trust, partnership, or any organization described in Section 501(c)(3) of the Code, in each case not formed for the specific purpose of acquiring a  Note and with total assets in excess of $5,000,000.

☐    The Investor is a trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring a Note, whose purchase is directed by a person who has such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of an investment in a Note.

☐    The Investor is a self-directed plan (*i.e.,* an IRA, self-directed benefit plan, Keogh Plan, or other tax-qualified defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account) in which all persons directing the investment into a Note are "accredited investors" because each participant's net worth, excluding the value of the primary residence of the participant, either individually or jointly

---

[2] Individual income means your adjusted gross income ("*AGI*") as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, plus the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse): (a) the amount of any interest income received which is tax-exempt under Section 103 of the Internal Revenue Code (the "*Code*"), (b) the amount of losses claimed as a limited partner in a limited partnership (as reported on Schedule E of Form 1040), and (c) any deduction claimed for depletion under Section 611 *et. seq.* of the Code.

[3] Joint income with a spouse means AGI as reported for federal income tax purposes, including any income attributable to a spouse or to property owned by a spouse, plus the following amounts (including any amounts attributable to a spouse or to property owned by a spouse): (a) the amount of any interest income received which is tax-exempt under Section 103 of the Code; (b) the amount of losses claimed as a limited partner in a limited partnership (as reported on Schedule E of Form 1040); and (c) any deduction claimed for depletion under Section 611 et. seq. of the Code.

with his or her spouse, exceeds $1,000,000, or has had in each of the last two calendar years individual income in excess of $200,000 or joint income with his or her spouse in excess of $300,000, and reasonably expects to have individual income in excess of $200,000 or joint income in excess of $300,000 in the current calendar year. (See footnotes 1 through 3 above.)

☐    The Investor is an entity in which all of the equity owners are "accredited investors" under one or more of the above paragraphs. **If this box is checked, please list the name of any person having a beneficial interest in the Investor and check all of the appropriate box(es):**

| Equity Owner Name | The owner is a natural person whose net worth, excluding the value of his or her primary residence, either individually or jointly with his or her spouse, exceeds $1,000,000. (See footnote 1 above.) | The owner is a natural person who in each of the last two calendar years had individual income in excess of $200,000, or joint income with his or her spouse in excess of $300,000, and reasonably expects to have individual income in excess of $200,000 or joint income in excess of $300,000 in the current calendar year. (See footnotes 2 and 3 above.) |
|---|---|---|
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |

**3.**      **Acknowledgements.** The Investor understands and acknowledges that (a) an investment in one or more Notes involves a high degree of risk and is suitable only for sophisticated investors who qualify as "accredited investors" under the Securities Act; (b) the Notes have not been registered under the Securities Act or the securities ("blue sky") laws of any state; (c) the Notes are being offered and sold in reliance upon exemptions from registration provided under the Securities Act, as well as specific exemptions under state securities ("blue sky") laws; and (d) JJMT is relying on the representations and agreements of the Investor contained in this Agreement for the purpose of determining whether JJMT's issuance of a Note to the Investor meets the requirements for the exemptions described in this Section.

**4.**      **Representations and Warranties.** The Investor represents and warrants to JJMT, and intends that JJMT and its members, employees, agents, and other representatives rely on these representations and warranties for the purpose of establishing the acceptability of this Agreement:

         (a)      The address of the Investor's primary residence set forth in this Agreement is the true and correct address of the Investor's primary residence, and the Investor has no present intention of changing such primary residence to another state or jurisdiction. The Investor agrees to promptly notify JJMT if the information contained in this Agreement is or becomes incorrect.

(b)        The Investor has received a copy of and has carefully read the Offering Materials, including this Agreement.  The Investor is entering into this Agreement relying solely on the information set forth in this Agreement and the other Offering Materials; neither JJMT nor any person purporting to act on behalf of JJMT have made any representations or warranties of any kind or nature to induce the Investor to enter into this Agreement except as specifically set forth in this Agreement or the other Offering Materials; the Investor recognizes that the Offering Materials do not constitute investment, accounting, tax, or legal advice and the Investor is not relying on JJMT or any person purporting to act on behalf of JJMT for guidance with respect to tax or other legal or economic considerations; and the Investor has been afforded an opportunity to ask questions of, and receive answers from, JJMT and persons authorized to act on behalf of JJMT concerning the terms and conditions of an investment in one or more Notes and has been afforded the opportunity to obtain any additional information necessary to verify the accuracy of information in the Offering Materials. The Investor has made his, her, or its own inquiry and analysis with respect to an investment in the Notes and, based solely on such analysis, the Investor has been able to make an informed decision to subscribe to invest in one or more Notes.

(c)        The Investor has not distributed any of the Offering Materials to any person (other than the Investor's legal and financial advisors), without the prior written consent of the members of JJMT. Furthermore,  no person other than the Investor has used the Offering Materials provided to the Investor.

(d)        Any Notes acquired by the Investor will be for the Investor's own account and for investment purposes only, and not with a view to the distribution or resale of any Note, in whole or in part, to anyone else.

(e)        The Investor understands that an investment in one or more Notes involves substantial risks, including those set forth in the Offering Materials, and that an investment in the Notes is not suitable for all persons.  The Investor specifically understands that an investment in the Notes could result in an entire loss of the Investor's investment.

(f)        The Investor acknowledges that the transferability of the Notes is severely limited and that the Investor must continue to bear the economic risk of an investment in a Note for an indefinite period as the Notes have not been registered under the Securities Act or under any other state securities laws, and therefore cannot be offered or sold unless they are subsequently registered under such acts or an exemption from such registration is available. The Investor could afford a complete loss of the Investor's investment in any Notes acquired by the Investor from JJMT. The Investor understands and agrees that any Note issued to the Investor will bear a legend evidencing the restrictions on the transfer of the Note.

(g)        The Investor understands that no federal or state governmental agency or authority has passed upon the Notes or made any finding or determination concerning the fairness, advisability, or merits of an investment in the Notes.

(h)        The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of an investment in the Notes.  To the extent necessary, the Investor has retained and relied upon appropriate professional advice regarding the investment, tax, and legal merits and consequences of an investment in the Notes and the execution of this Agreement.

(i)        The Investor understands that the Notes are being offered by JJMT only to a limited number of "accredited investors," as that term is defined in Rule 501 of Regulation D issued by the SEC under the Securities Act, and not to the public at large.  By executing this Agreement, the Investor represents that the representations and warranties of the Investor set forth in this Agreement are true and correct, and the Investor qualifies as an "accredited investor."

(j)        The Investor, if it is an entity, represents that it was not organized for the specific purpose of acquiring the Notes. If the Investor is a corporation, the Investor represents that the corporation's governing instruments permit, and it is duly qualified to make, an investment in one or more Notes and that execution and delivery of this Agreement have been duly authorized by all required corporate action.  If the Investor is a partnership, trust, limited liability company (LLC), or other organization, the Investor represents it has the authority to invest in one or more Notes and that each of its partners, beneficiaries, principals, or members satisfies the suitability requirements set forth in this Agreement.

(k)        If the Investor is acting as trustee, agent, representative, or nominee for any person (a "*Beneficial Owner*"), the Investor understands and acknowledges that the representations, warranties, and agreements made in this Agreement are made by the Investor with respect to both the Investor and each Beneficial Owner.  The Investor further represents and warrants that it has all requisite power and authority from each such Beneficial Owner to execute and perform the obligations under this Agreement.  The Investor agrees to indemnify JJMT and its members, employees, agents, and other representatives for any and all costs, fees, and expenses (including legal fees) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained in this Agreement, or the assertion of the Investor's lack of proper authorization from any Beneficial Owner to enter into this Agreement or perform the obligations of this Agreement.

(l)        The Investor acknowledges and agrees that JJMT has the right, in its absolute discretion, to reject the subscription of the Investor for any reason or for no reason.

**5.        Governing Law**.  The Investor agrees that, notwithstanding the place where this Agreement may be executed, all the terms and provisions of this Agreement shall be construed in accordance with and governed by the laws of the State of Delaware, without regard to principles of conflicts of laws.  The Investor irrevocably agrees that any suit, action, or proceeding with respect to this Agreement and any or all transactions relating to this Agreement shall be brought in the U.S. federal and state courts in Cook County, Illinois.

**6.        Indemnification.**  The Investor agrees to hold JJMT and its members, employees, agents, and other representatives harmless from all expenses, liabilities, and damages (including reasonable attorneys' fees) resulting of any breach of any of the representations, covenants, or other agreements contained in this Agreement.

**7.        Payments.**  The Investor agrees that any checks sent to the Investor's address provided to JJMT, or any wire transfers (or ACH payments) sent to the account provided by the Investor to JJMT, will constitute payment to the Investor and relieve JJMT of any further obligation to the Investor with respect to the amounts so paid.

**8.        Reliance on Investor Instructions.**  The Investor authorizes JJMT to accept and execute any instructions with respect to this Agreement or any Notes given by the Investor in written form, including by email or by fax.  JJMT may rely conclusively on and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions, or other instrument believed in good faith to be genuine or to be signed by properly authorized persons acting on behalf of the Investor.

**9.        Miscellaneous.**

(a)        This Agreement is not transferable or assignable by the Investor.

(b)        This Agreement, together with its appendix and each Commitment signed and submitted by the Investor to JJMT, contains the entire agreement between the parties regarding its subject matter and supersedes any previous and contemporaneous negotiations, representations, and agreements between the parties with respect to such subject matter, whether written or verbal.

(c)        No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by both the Investor and JJMT.  Waiver of a particular breach of this Agreement shall not be considered to be a waiver of any other breach.  No course of dealing between or among the Investor and JJMT shall be deemed effective to modify, amend, or discharge any part of this Agreement or any rights or obligations of either the Investor or JJMT.

(d)        Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law; however, if any provision of this Agreement is held to be invalid under applicable law, such provision shall be enforced to the maximum extent possible, and the validity of the remaining provisions of this Agreement shall not be affected, shall remain in full force and effect, and shall be enforced to the maximum extent permitted by law.

(e)        This Agreement shall inure to the benefit of JJMT and its successors and assignees. The Investor agrees JJMT (and its successors and assignees) may assign this Agreement in whole or in part to any other person.

*[Signature page appears on the following page.]*

The Investor has executed this Subscription Agreement as of the date set forth below.

| | |
|---|---|
| **Date of Signature:** | |
| **Indicate Aggregate Amount Investor May be Interested in Investing**[4]**:** | |
| **Name of Investor:** | |
| **Signature of Investor:** | |
| **Title (if Investor is not a natural person):** | |
| **Signature of Joint Investor (if applicable):** | |
| **Title of Joint Investor (if applicable):** | |
| **Principal Residence of Investor (if Investor is a natural person or an IRA or trust):** | |
| **State of Organization (if Investor is any other entity):** | |

---

[4] See Section 1 of this Subscription Agreement.

## APPENDIX A

## FORM OF PROMISSORY NOTE

$_____                                                                        MM/DD/YYYY

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company (the "JJMT"), and is payable to _____ ("the Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture entitled "_____."

 **1.**  **Agreement to Pay.**  For value received, JJMT promises to pay to the order of the Investor the principal sum of _____ ($_____) plus interest due thereon of _____ ($_____) (the "Interest") for an aggregate amount of _____ ($_____) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to The Investor in one balloon payment on or before _____ (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

 **2.**  **Prepayment.**  JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

 **3.**  **Unsecured.**  This Note is unsecured.

 **4.**  **Default.**  The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

  Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

  Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

  Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

 **5.**  **Remedies.**  If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity.  Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent,

and may be pursued singularly, successively or together, at the sole discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by The Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6.** **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by The Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7.** **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8.** **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by The Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9.** **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

**10.** <u>**Extensions Granted by The Investor**</u>. All endorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

**11.** <u>**WAIVER OF RIGHT TO TRIAL BY JURY.**</u> BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION  OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

**12.** <u>**JURISDICTION AND VENUE.**</u> BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____
Name: Joseph deAlteris
Title: Managing Member

By:_____
Name: Matthew Schweinzger
Title: Managing Member

By:_____
Name: Jacob Wunderlin
Title: Managing Member

By:_____
Name: Tyler Crookston
Title: Managing Member

# INVESTMENT COMMITMENT

This Investment Commitment is provided as an addendum to the Subscription Agreement (the "*Subscription Agreement*") signed and provided by the investor identified below (the "*Investor*") to JJMT Capital, LLC, a Delaware limited liability company ("*JJMT*"), with respect to an investment by the Investor in one or more promissory notes (each, a "*Note*") to be issued by JJMT.

By signing this Investment Commitment, the Investor is agreeing to the following:

1.      All information in the Subscription Agreement remains true and correct in all respects as of the date of the Investor's signature below, including (but not limited to) the fact that the Investor qualifies as an "accredited investor" under the federal securities laws.

2.      The Investor agrees to purchase a Note to be issued by JJMT in substantially the form attached as <u>Appendix A</u> to the Subscription Agreement, but with the following terms:

Principal Amount:        $100,000.00

Investment Date:         *January 17th, 2016 (no later than 3:00pm ET)*

Issue Date:              *The Note will be issued on the date JJMT receives an amount of cash from the Investor equal to the Principal Amount noted above (the "Investment Date").*

Interest Amount:         $12,000.00

Maturity Date:           *July 20th, 2016 (no later than 3:00pm ET)*

3.      The investor agrees to transfer an amount of cash equal to the "Principal Amount" to JJMT no later than the Investment Date stated above.

> **JJMT Wiring Instructions:**
> **Beneficiar**y: JJMT Capital LLC
> **Bank Nam**e: J.P. Morgan Chase
> **Addres**s: 1 Chase Manhattan, New York, NY 10005
> **ABA / Routing #:**
> **Account #:**

4.      JJMT agrees to transfer an amount of cash equal to the "Principal Amount" plus "Interest Amount" no later than the Maturity date stated above.

> **Investor Wiring Instructions:**
> **Beneficiar**y: John Doe
> **Bank Nam**e: John Doe's Bank
> **Bank Addres**s: 123 State Street
> **ABA / Routing #:** 111-111-111
> **Account #:** 222-222-222
> **SSN / FEIN**: 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
> **Personal Address**: 456 One Street, Chicago IL, 60642

Signed and dated:

| Investor: | Date of Signature: |
|---|---|
| **John Doe** | 1/16/2016 |
| Signature of Investor: | Signature of Joint Investor *(if applicable)*: |
| **John Doe** | |
| Title *(if Investor is not a natural person):* | Title *(if Investor is not a natural person):* |