IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN ARONSON, MATTHEW ARONSON, | |
| Plaintiffs, | |
| v. | Case No. 21-CV-01867 |
| JJMT CAPITAL LLC, a Delaware limited liability company, JACOB WUNDERLIN, MATTHEW SCHWEINZGER, JOSEPH DEALTERIS, TYLER CROOKSTON, | Hon. Franklin U. Valderrama |
| | Hon. Susan E. Cox |
| Defendants. | |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS DIRECTED AT TYLER CROOKSTON**

Plaintiffs Steven Aronson and Matthew Aronson, by their undersigned counsel, submit the following Motion to Compel Discovery, and in support respectfully state as follows:

**INTRODUCTION**

Tyler Crookston ("Crookston") was an owner and managing partner of JJMT Capital, LLC ("JJMT") until he resigned in 2018 for presently unknown reasons. Plaintiffs allege that JJMT was designed for one purpose—to funnel money from outside investors to an individual named Zachary Horwitz ("Horwitz") and his entities, 1inMM Capital, LLC and 1inMM Productions (collectively the "1inMM Entities"). Plaintiffs assert that JJMT itself, through a combination of misrepresentations, gross negligence, and outright fraud, obtained investments from unsuspecting investors like Plaintiffs for the sole benefit of JJMT's principals, including Crookston. Plaintiffs allege that Crookston, along with his friends from college, enriched themselves and paid off loans they had previously made to the 1nMM Entities. It is undisputed that Horwitz and the 1inMM

1

Entities were using JJMT to fuel a massive Ponzi scheme that Horwitz was running. Horwitz is now serving a 240-month jail sentence for that Ponzi Scheme after pleading guilty to securities fraud.[1]

Despite his involvement in JJMT for multiple years and being a named Defendant in this case, Crookston is refusing to produce any documents to Plaintiffs. Crookston's outright refusal to produce documents is sanctionable, and Crookston should be compelled to produce the documents requested by Plaintiffs.

## FACTUAL BACKGROUND AND ALLEGATIONS AGAINST CROOKSTON

1. Crookston was named as defendant in this case on May 28, 2021 in the First Amended Complaint. [Dkt. No. 9]. A Second Amended Complaint was filed on December 7, 2021, which corrected an exhibit. [Dkt. No. 58]. A true and correct copy of the Second Amended Complaint is attached to this Motion as "Exhibit 1."

2. In the Second Amended Complaint, Plaintiffs allege that Crookston formed JJMT with three of his friends from college, Matthew Schweinzger ("Schweinzger"), Joseph deAlteris ("deAlteris"), and Jacob Wunderlin ("Wunderlin") (Crookston, Scheweinzger, deAlteris, and Wunderlin are collectively the "Individual Defendants") for the purpose of soliciting and then loaning investment funds to Horwitz—another college friend of theirs—and the entities he controlled, the 1inMM Entities. (SAC, ¶¶ 17, 21, 26).[2]

3. JJMT made a profit by loaning the solicited funds and taking a commission when the funds were repaid by Horwitz and the 1nMM Entities. (SAC, ¶¶ 25, 50).

4. In addition, JJMT, or other entities controlled by Crookston and the other Individual

---

[1] *See* https://www.justice.gov/usao-cdca/pr/la-man-sentenced-20-years-federal-prison-650-million-ponzi-scheme-falsely-claimed.

[2] Citations to the Second Amended Complaint are in the following format: SAC, ¶ \_\_\_\_.

Defendants, had already provided over $4,186,000 in loans to the 1inMM Entities at the time JJMT first approached Plaintiffs about an "investment opportunity." (SAC, ¶ 24). Therefore, Plaintiffs assert that the more money JJMT was able to procure from Plaintiffs for the 1inMM Entities, the more likely it was that Crookston's own loans to the 1inMM Entities were going to be paid back to him. (SAC, ¶¶ 25, 50).

5. Crookston, using JJMT as his vehicle, solicited these funds under the guise that the funds were to be used to finance the creation of media, such as films, that would then be licensed to media platforms, such as Netflix and HBO. (SAC, ¶ 17). In reality, Horwitz was running a Ponzi scheme, using the funds to support a lavish lifestyle. (SAC, ¶ 18).

6. Prior to soliciting Plaintiffs' investments, Crookston and his friends did not attempt to independently verify any of the representations Horwitz made to them or confirm the authenticity of any documents Horwitz provided to them. (SAC, ¶¶ 19, 20).

7. Plaintiffs allege they were defrauded by Defendants through the use of materials bearing Crookston's name. For example, in an October 9, 2016 email, Schweinzger stated that, "We've deployed over $22 million of investor capital and over $7 million of Partner capital (my other three Partners and myself)" for JJMT. (SAC, Ex. 3). Schweinzger also explained that "Investors . . . commit a certain dollar amount to the fund where the Managing Partners of the fund can then call up to that committed amount from that specific investor. To make sure our investors are accredited, we have them execute a Subscription Agreement . . . ." (SAC, Ex. 3). He further stated that after an investor executes the Subscription Agreement, "we (the Managing Partners) pencil you in for up to the total amount you've committed." (SAC, Ex. 3).

8. Crookston's name is found in a certain "Investor Opportunity Overview" (the "Overview") that was attached to the October 9, 2016 email. (SAC, ¶ 36, Ex. 3). The Overview

identified Crookston as one of four "Managing Partner[s]". (SAC, Ex. 3). The Overview further identified Crookston's JJMT email address and directed the Plaintiffs to reach out to Crookston for further information. *Id*. Additionally, the Overview boasts that "the entities controlled by the Managing Partners of JJMT have financed over 50 of 1inMM's 300+ transactions" and that "[e]ntities controlled by the Managing Partners of JJMT have deployed ~$22.7mm of investor capital since April 2015." *Id.*

9. Prior to transmitting the October 9, 2016 email and Overview, Crookston did not independently verify any statements made by Horwitz and the 1inMM Entities regarding the alleged transactions between the 1inMM Entities and media companies, such as Netflix and HBO. (SAC, ¶¶ 48, 49). Rather, Crookston relied solely on Horwitz's alleged statements and documents provided by Horwitz. (SAC, ¶ 19).

10. The Overview falsely stated that JJMT had itself financed multiple films and provided details on these previous media purchases. (SAC, ¶ 39, Ex. 3).

11. For unknown reasons, Crookston resigned from JJMT in 2018, but upon information and belief, Crookston received a separation payment from JJMT when he left. The amount of that separation payment, the terms of the separation agreement between Crookston and JJMT, and all documents and communications relating to the separation agreement are being withheld by Crookston.

12. Under the Second Amended Complaint, Plaintiffs are seeking damages against Crookston for his breach of Illinois Securities Laws, consumer fraud violations, and conspiracy to defraud Plaintiffs.

## PROCEDURAL BACKGROUND

13. Crookston moved to dismiss the Second Amended Complaint on October 12, 2021

[Dkt Nos. 46 & 47]. Upon the filing of Crookston's Motion to Dismiss, Judge Valderrama ruled by minute entry that "[t]he Court will rule on this motion via CM/ECF." [Dkt No. 48]. The Motion to Dismiss is fully briefed, and the Court has not dismissed any of the claims against Crookston.

14. Since there are pending claims against Crookston, on December 13, 2021, Plaintiffs issued their First Request for the Production of Documents to Crookston (the "Requests").

15. On January 27, 2022, Crookston tendered his Responses to the Requests (the "Responses"). *See* Exhibit 2.

16. In his Responses, Crookston indicated that he would produce documents in response to certain of the Requests. However, to date, Crookston has not produced any documents, and continues to this day to do so.

17. Crookston outright objected to producing documents responsive to Document Request Nos. 4-5, 14-15, 20-21, 24, 27-30, 32, 34, 36-38, 47, 50-51, 127-28, 131-33, and 136-37.

18. Crookston objects generally to producing documents related to financial information, including but not limited to investments, compensation, and tax documents, on the basis of relevance. Among the documents that Crookston refuses to produce are those related to compensation and/or payments received in connection with his resignation from JJMT.

19. On February 3, 2022, after Crookston tendered his Responses, counsel for Plaintiffs circulated a draft protective order via email. *See* Exhibit 3.

20. Instead of responding to the draft protective order, on February 7, 2022, Crookston filed a Motion to Stay this litigation—after a receiver was appointed in an action filed by the United States Securities and Exchange Commission against Horwitz and 1inMMthe 1nMM Entities—asserting that this litigation should be stayed because the Second Amended Complaint "unmistakably implicates receivership assets, and the continuation of this action would thus

undoubtedly interfere with the SEC receiver's efforts to efficiently identify, recover, and distribute assets derived from Horwitz's fraud." [Dkt. No. 59, ¶ 12].

21. JJMT, Scheweinzger, deAlteris, and Wunderlin filed a Joint Notice of Joinder of the Motion to Stay. [Dkt. No. 63].

22. Plaintiffs opposed the Motion to Stay because: (i) Defendants lack standing to seek a stay of this litigation; (ii) Defendants fail to establish that their assets are subject to the Receivership Order; (iii) Defendants fail to establish that the anti-litigation injunction in the Receivership Order applies to this litigation; (iv) the cases cited by Defendants do not support a stay of this litigation ***without an admission that implicates Defendants fully in the Ponzi scheme***; and (v) the stay in *Gould v. Crookston* has no effect on this litigation. [Dkt. No. 67]. The Motion to Stay is fully briefed.

23. On April 8, 2022, the parties filed a Joint Status Report, which states that "Counsel for Plaintiffs have conferred with Defendants' counsel regarding discovery issues, and counsel for Defendants have taken the position that documents will not be produced until the Motion to Stay has been ruled upon. Plaintiffs disagree with that position and are considering filing a motion to compel." [Dkt. No. 70].

24. On April 11, 2022, Judge Cox ruled by minute entry as follows:

> The Court has received the parties' joint status report. The motion to stay remains pending. ***Defendants have unilaterally decided they will not comply with their discovery obligations*** while the motion to stay in pending. There is no ruling or stipulation staying discovery during the pendency of that motion. If the Plaintiffs file a motion to compel (as indicated in their joint status report), The Court reminds the parties of FRCP 37(a)(5), which requires the Court to award the winning side fees and costs unless the losing party's position was substantially justified or awarding fees and costs would be unjust.

[Dkt. No. 71] (emphasis added).

25. Thereafter, on April 15, 2022, counsel for Plaintiffs and Crookston met via video

6

conference to discuss Crookston's refusal to produce any documents. During that conversation, counsel for Crookston again refused to agree to produce any documents, stating that: (1) Crookston had filed a Motion to Stay and was entitled to wait for a ruling, (2) Crookston's financial records and communications prior to 2019 were not relevant because the outstanding securities purchased by Plaintiffs occurred after Crookston resigned his membership with JJMT; and (3) because Plaintiffs seek the production of documents that will likely be duplicative of documents produced by JJMT.[3]

26.     After the video conference, counsel for Crookston explained by letter that "[i]n an effort to streamline our clients' discovery disputes and avoid the expense of briefing and arguing cross motions, I offered that if we could hold our disputes regarding the twenty-six Requests for financial documents in abeyance until after the Court decides Tyler's Motion to Dismiss, Tyler would agree to produce documents now in response to the other Requests." *See* Exhibit 5, at p. 1.

## ARGUMENT

**I.     Crookston's refusal to produce documents is improper.**

Crookston has refused to produce any documents, unilaterally and without justification. As a preliminary matter, as stated in the Joint Status Report, "counsel for Defendants have taken the position that documents will not be produced until the ***Motion to Stay*** has been ruled upon." [Dkt. No. 70] (emphasis added). Now, Crookston continues to refuse to produce any documents and has proposed an unacceptable offer to produce documents that he has already indicated that he would produce in his Responses so long as Plaintiffs and Crookston "hold our disputes regarding the twenty-six Requests for financial documents in abeyance until after the Court decides Tyler's ***Motion to Dismiss***." *See* Exhibit 5, at p. 1 (emphasis added). The narrative has apparently shifted

---

[3] Pursuant to Judge Cox's Standing Order and in compliance with Local Rule 37.2, a separate certificate attesting to compliance with the meet and confer requirement for discovery motions is attached hereto as Exhibit 4.

away from the Motion to Stay and toward the Motion to Dismiss following Judge Cox's ruling.

Ultimately, Crookston has not even produced documents responsive to documents requests to which he originally indicated that he would produce documents. This conduct constitutes an abuse of the discovery process because a party has a duty to respond to discovery in good faith. *See Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125, 1132 (7th Cir. 2002) ("Litigants are expected to act in good faith in complying with their discovery obligations[.]"); *see also Retail Experts Consulting & Mgmt., Inc. v. Premium Retail Servs., Inc*, 2006 WL 1719564 (N.D. Ill. June 15, 2006), at *7 ("The court denies this motion to compel and again reminds the parties of their duty to respond to discovery requests in good faith, and to supplement those responses as appropriate.").

To the extent that Crookston seeks protection from complying with his discovery obligations based on the Motion to Stay, Judge Cox has already correctly ruled that "Defendants have ***unilaterally*** decided they will not comply with their discovery obligations" and that "[t]here is no ruling or stipulation staying discovery during the pendency of" the Motion to Stay. [Dkt. No. 71] (emphasis added). Moreover, to the extent that Crookston seeks protection from complying with his discovery motions based on the Motion to Dismiss, the Seventh Circuit has held there is no automatic stay of discovery during the pendency of a motion to dismiss. *SK Hand Tool Corp. v. Dresser Industries, Inc*., 852 F.2d 936, 945 (7th Cir. 1988). Either way, Crookston cannot refuse to cooperate.

Importantly, while Crookston's counsel has indicated that Crookston intends to file a motion for a protective order, Crookston has not filed any motion seeking relief from complying with his discovery obligations—Crookston merely filed the Motion to Stay with respect to the lawsuit generally (not discovery specific). Indeed, he has not filed a motion to stay discovery or a

Motion for Protective Order, which is specifically authorized by Federal Rule of Civil Procedure ("Federal Rule") 26(c). In any event, even if a Motion for Protective Order is filed, there is no basis for withholding documents based upon the supposition that the Motion to Stay has merit.

Even if Crookston had filed a Motion for Protective Order (which has not been done for months since he indicated that he would produce documents but then changed his mind), there must be good cause to "limit the scope of discovery or control its sequence." *Harper v. Central Wire, Inc.*, 2020 WL 5230746, at *1 (N.D. Ill. Sept. 2, 2020). Pursuant to the Federal Rules, a determination as to good cause "encompasses factors such as whether the stay will prejudice the non-movant; whether the stay will simplify the issues in the case; and whether the stay will reduce the burden of litigation for the parties or the court." *Id.* Crookston has not even filed an appropriate motion, and even if he did, he will be unable to establish good cause to avoid producing documents. In the end, Crookston simply does not want to produce documents that will help prove Plaintiffs' case, and his unilateral withholding of documents is baseless.

**II.     Crookston's arbitrary and unilateral decision to narrow Plaintiffs' claims is improper.**

Crookston has arbitrarily and unilaterally decided to use the year 2019 as the cut-off for producing documents. This is untenable as Crookston does not have the right to decide on his own what he will or will not produce, particularly given the relevance of the document requests to which he refuses to produce all responsive documents.

Plaintiffs allege that they were defrauded by Crookston and JJMT as early as 2016, when the untrue and misleading Offering Materials bearing Crookston's name were circulated (and never retracted). Accordingly, Crookston's conduct as well as documents that pre-date 2019 are directly relevant to the allegations in the Second Amended Complaint, particularly given the fact that the fraud perpetrated against Plaintiffs started well before 2019 and Crookston's unexplained

9

departure from JJMT after he defrauded Plaintiffs.

Now, Crookston claims that "Tyler's financial records *before* 2019 have nothing to do with Plaintiffs' alleged damages. Neither do his financial records from 2019 and later, as Plaintiffs admit he resigned from JJMT in 2018." *See* Exhibit 5, at p. 6. This misses the point. Crookston's financial information is directly relevant here because it is Plaintiffs' position that he financially benefited as a result of his wrongful conduct directed towards Plaintiffs. Additionally, Crookston's financial motive is directly relevant to the conspiracy to defraud claim filed against him.

**III. Crookston's refusal to produce financial documents is in bad faith.**

Crookston not only has no basis to refuse producing relevant documents, but his adamant refusal to produce financial documents is wholly misguided and evidences bad faith. As argued above, Crookston's financial information is directly relevant, and moreover, Crookston has made no effort to finalize and execute the draft protective order. This raises an important question: Why is Crookston steadfast on not producing financial information where a protective order would protect disclosure of that information? The answer must be that Crookston does not want to reveal the extent of money he received as a result of his wrongful conduct. Furthermore, Crookston apparently does not want to allow Plaintiffs to discover the circumstances surrounding his sudden departure from JJMT, including the amount of money he received.

Crookston might not want to produce documents that will further implicate him, but that is not a sufficient reason (or any reason at all) to refuse to satisfy his discovery obligations.

**IV. Crookston continues to refuse to produce documents even though JJMT produced documents after Judge Cox's ruling.**

Crookston's bad faith is further evidenced by his co-Defendant, JJMT's agreement to start producing documents after Judge Cox's ruling. JJMT has since produced some documents, but Crookston nevertheless refuses to cooperate. Now, Crookston wants a deal—produce documents

he already indicated that he would produce in exchange for an agreement to not pursue documents to which Plaintiffs are entitled until a ruling on the Motion to Dismiss. This cannot be allowed.

V.     **Crookston cannot refuse to produce certain documents that he claims will likely be duplicative of documents produced by JJMT.**

Crookston has no basis to refuse production of certain documents on the basis that JJMT *may* produce those documents. Specifically, Crookston now asserts that, as to certain of the Requests, "any documents Tyler would produce . . . will likely be duplicative of a subset of JJMT's production." *See id.* at p. 3. Crookston has an obligation to produce documents, and just because JJMT *may* have certain documents in its possession, custody, or control, that is not a reason for Crookston not to produce those documents. Importantly, Crookston's use of the word "likely" is important, because Crookston cannot be sure that all possibly duplicative documents are in fact produced by JJMT. Moreover, there is certainly a possibility that JJMT and Crookston do not have exactly the same documents for certain of the Requests or that JJMT will produce them, especially where there is controversy among Crookston and the other Individual Defendants who were also affiliated with JJMT.

Each of the Requests were issued to Crookston, and it is his obligation to produce responsive documents in his possession, custody, or control.

## CONCLUSION

Litigation is not a game, and this lawsuit raises serious allegations of wrongdoing. The Motion to Stay is baseless and so is Crookston's continued refusal to cooperate in discovery. Crookston has a duty to cooperate, and despite Judge Cox's ruling, Crookston now asserts that he will not produce documents without a deal without Plaintiffs agreeing that certain of the Requests not be answered. Such a request is improper because Plaintiffs seek the production of relevant information to support their claims in the Second Amended Complaint.

11

WHEREFORE, for the reasons stated in this Motion, Plaintiffs respectfully request that the Court grant this Motion to Compel Discovery and enter an Order that:

1. Defendant Tyler Crookston produce all documents responsive to the document requests that he indicated that he would produce: Document Request Nos. 2, 3, 6, 7, 8, 9, 10, 11, 52, 53, 55, 72, 86, 88, 93, 110, 111, 123, 124[4];

2. Defendant Tyler Crookston produce all documents responsive to the document requests to which he outright objected to producing responsive documents: Document Request Nos. 4, 5, 14, 15, 20, 21, 24, 27, 28, 29, 30, 32, 34, 36, 37, 38, 47, 50, 51, 127, 128, 131, 132, 133, 136, and 137;

3. Plaintiffs be awarded reasonable expenses from Tyler Crookston incurred in making this Motion, including attorney's fees and costs, pursuant to Federal Rule of Civil Procedure 37(a)(5), and in connection thereof, that Plaintiffs be given leave to file an affidavit of attorney's fees and costs; and

4. Provide all further relief that the Court deems just and proper.

DATED: April 26, 2022

Respectfully submitted,

**MATTHEW ARONSON AND STEVEN ARONSON**

By: /s/ *Daniel S. Rubin*
One of their Attorneys

Scott C. Frost (#ARDC#6208276)
Daniel S. Rubin (ARDC #6293669)

---

[4] For Document Requests No. 8 and 9, Crookston responds as follows: "Tyler has no documents responsive to this Request other than any documents produced in response to Request No. 6." *See* Exhibit 2, at p. 6. For Document Request No. 93, Crookston responds as follows: "Tyler has no documents responsive to this Request other than any documents produced in response to Request No. 88." *Id.* at p. 21.

Christopher L. Schaeffer (ARDC #6321448)
Matthew A. Blumenreich (ARDC # 6329458)
Howard & Howard Attorneys PLLC
200 S. Michigan Ave., Ste. 1100
Chicago, IL 60604
(312) 372-4000
(312) 939-5617 / fax
sfrost@howardandhoward.com
drubin@howardandhoward.com
cls2@h2law.com
mblumenreich@howardandhoward.com

4867-7747-0493, v. 1