# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Steven Aronson, Matthew Aronson <br> Plaintiffs, <br><br> v. <br><br> JJMT Capital LLC, a Delaware limited liability company, Jacob Wunderlin, Mathew Schweinzger, Joseph Dealteris, Tyler Crookston <br><br> Defendants | Case No. 21-CV-01867 <br><br> JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Steven Aronson and Matthew Aronson, by and through their attorneys Scott Frost and Daniel Rubin of Howard & Howard Attorneys PLLC, hereby complains of Defendants JJMT Capital LLC, Jacob Wunderlin, Mathew Schweinzger, Joseph Dealteris and Tyler Crookston, and states as follows:

## DESCRIPTION OF THE PARTIES

1. Steven Aronson is an individual who lives in Newton, Massachusetts. Steven Aronson is a citizen of the state of Massachusetts.

2. Matthew Aronson is an individual who lives in Cambridge, Massachusetts. Matthew Aronson is a citizen of the state of Massachusetts.

3. Defendant JJMT Capital, LLC ("JJMT") is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

4. As of the filing date of this Complaint, JJMT is owned by three members: Joseph "Joe" DeAlteris ("DeAlteris"), Jacob Wunderlin ("Wunderlin"), and Matthew Schweinzger ("Schweinzger"). Crookston was a managing member of JJMT but resigned in 2018.

5. DeAlteris, Wunderlin and Schweinzger live and are domiciled in Chicago, Illinois and are citizens of the state of Illinois.

6.   Crookston lives and is domiciled in the territory of Puerto Rico and is a citizen of Puerto Rico.

7.   Collectively, DeAlteris, Wunderlin, Schweinzger and Crookston shall be referred herein as the "Individual Defendants" and JJMT, DeAlteris, Wunderlin, Schweinzger and Crookston shall be referred herein collectively as the "Defendants".

## JURISDICTION AND VENUE

8.   Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.   The written agreements out of which the causes of action arise were executed by JJMT in in Cook County, Illinois, and JJMT agreed to submit to the jurisdiction of this Court. Furthermore, the actions taken by the Defendants in this case occurred in Cook County, Illinois.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and pursuant to the forum selection clauses in the written agreements that are the subject of this litigation.

## GENERAL FACTUAL ALLEGATIONS

11. At all relevant times stated in this Complaint, Schweinzger was Chief Acquisition Officer of Acrisure, LLC ("Acrisure").

12. In April 2019, Schweinzger was promoted to Chief Financial Officer of Acrisure.

13. Prior to working at Acrisure, Schweinzger was an investment banker at Morgan Stanley. According to his LinkedIn profile, Schweinzger "[p]erformed financial and strategic analysis on mergers, acquisitions, leveraged buyouts, and divestitures across a variety of industries and geographies." In addition, Schweinzger "constructed detailed valuation models including leveraged buyout, discounted cash flow, accretion / dilution, comparable company, and precedent transaction analyses in order to advise clients on financial implications of potential transactions."

14. As an experienced C-Level executive and investment banker, Schweinzger understood the fundamental concept of undertaking due diligence on any investment he participated in or offered for sale.

15. As CAO and later CFO of Acrisure, Schweinzger could and did exercise supervisory control over Steven Aronson, who had sold his insurance practice to Acrisure in 2016.

16. On March 29, 2021, Schweinzger signed a Declaration under penalties of perjury in connection with an SEC Complaint filed against Zachary Horwitz and 1inMM Capital, LLC. A true and correct copy of the Declaration of Schweinzger (*sans exhibits*) is attached to this Complaint and incorporated herein as "Exhibit 1."

17. According to Exhibit 1, from 2014 throughout the end of 2016, DeAlteris, Wunderlin, Schweinzger and Crookston began loaning money to an individual named Zachary Horwitz ("Horwitz"), a friend from college. (Ex. 1, ¶3, 4, 5, 8). These loans were made to Horwitz's entities 1inMM Capital and 1inMM Productions (the "1inMM Entities") (Ex. 1, ¶8). These loans were either made personally by the Individual Defendants or through entities created by the Individual Defendants including, but not limited to JJMT Group LLC, JTHd Investments and Chi Town Capital (collectively JJMT Group LLC, JTHd Investments and Chi Town Capital are referred herein as "the Partner Entities"). (Ex. 1, ¶5-8). Allegedly, these funds were to be used by Horwitz to finance the creation of media such as films that would be subsequently licensed to media platforms such as Netflix, HBO or other streaming media services. (Ex. 1, ¶7).

18. In reality, Horwitz was running a Ponzi Scheme, and this Ponzi Scheme was aided and abetted by the reckless disregard for the truth by the Individual Defendants. The money given to Horwitz and 1inMM Entities was used primarily, if not solely, to fund Horwitz's lavish lifestyle and personal wealth.

19. The Individual Defendants (and JJMT and the Partner Entities which were controlled by the Individual Defendants) relied solely on representations and documents provided by Horwitz and their friendship with Horwitz when they began making investments with Horwitz through the 1inMM Entities, either individually or through the Partner Entities. (Ex. 1, ¶5, 7). Later, the Individual Defendants, Partner Entities and JJMT also relied on the fact that previous loans had been paid off on a timely basis. (Ex. 1, ¶8).

20. At no time during 2016-2019 did the Individual Defendants attempt to independently verify any of the representations made by Horwitz or confirm the authenticity of any of the documents provided by Horwitz to the Individual Defendants or JJMT.

21. As the Individual Defendants' loans to the 1nMM Entities grew in size, the Individual Defendants decided to focus on using other entities for the purpose of loaning money to Horwitz. (Ex. 1, ¶9). Specifically, in July 2015, the Individual Defendants formed JJMT and organized JJMT under the laws of the state of Delaware. Although it was a Delaware limited liability

company, the Individual Defendants all lived in Chicago and JJMT's principal place of business was located in Cook County, Illinois. See Exhibit 1.

22. JJMT and JJMT Group, LLC are two separate entities, according to the Delaware Secretary of State and the Schweinzger Declaration.

23. According to the Schweinzger Declaration, the Individual Defendants began utilizing JJMT in July 2015 as the "primary vehicle" to act as a "continued source of promissory note financing" for the 1inMM Entities. (Ex. 1, ¶9)

24. According to the Schweinzger Declaration, at the time the Individual Defendants began to utilize JJMT as the "primary vehicle" for promissory note financing for the 1inMM Entities, the Individual Defendants and the Partner Entities had lent the 1inMM Entities over $4,186,000.00. (Ex. 1, ¶8)

25. At all times stated in this Complaint, Schweinzger was an agent of both JJMT and the Individual Defendants. Schweinzger was authorized by the Individual Defendants and JJMT to acquire more capital for JJMT, and the money procured by Schweinzger would be funneled to Horwitz and the 1nMM Entities and then returned to the Individual Defendants, or the Partner Entities by Horwitz and the 1nMM Entities as "payment" for previously issued loans.

26. As part of the scheme to acquire more capital for Horwitz and assure that the Individual Defendants and Partner Entities' loans were paid off, on October 6, 2016, Schweinzger contacted Steven Aronson using an Acrisure e-mail address. A true and correct copy of the October 6, 2016 e-mail (the "October 6 Email) that Schweinzger sent Steven Aronson is attached to this Complaint and incorporated herein as "Exhibit 2."

27. In the October 6, 2016 E-mail, Schweinzger asserted that "I run a decent sized debt fund and a small equity fund that does similar types of RE investing along with growth equity investing." (Ex. 2).

28. On October 9, 2016, Schweinzger sent another e-mail (the "October 9 E-mail) to Steven Aronson regarding the investment offering that Schweinzger was proposing. A true and correct copy of the October 9 E-mail is attached to this Complaint and incorporated herein as "Exhibit 3."

29. In the October 9 E-mail, Schweinzger stated that JJMT was formed in Chicago by himself and three "Partners" in 2014. Those three "Partners" were DeAlteris, Wunderlin, and Crookston.

30. In the October 9 e-mail, Schweinzger stated to Steven Aronson that JJMT was offering "investors a very low risk debt investment vehicle in which the loaned money is used for acquisition financing of film distribution rights." (Ex. 3).

31. In the October 9 e-mail, Schweinzger further explained JJMT's business model to Steven Aronson by stating that "[w]e acquire the rights to distribute content from producers or their sales agents, then immediately sell those rights to one of three major platforms (Sony, HBO or Netflix). (Ex. 3). Schweinzger stated that: "JJMT makes money by negotiating higher sales prices from the Platforms while locking in lower purchase prices from the producers/their sales agents." (Ex. 3). That money, according to Schweinzger, is used to "pay the investors in JJMT." (Ex. 3).

32. In the October 9 e-mail, Schweinzger further stated that JJMT has financed 60 films as of October 9, 2016 and another film financing was closing that week. (Ex. 3).

33. In the October 9 e-mail, Schweinzger stated that the "vast majority" of JJMT's sales were made directly to HBO (Home Box Office) (Ex. 3).

34. In the October 9, e-mail, Schweinzger described investments in JJMT as an "excellent outlet for excess cash that's otherwise in a checking account or low interest bearing money market fund." (Ex. 3).

35. In the October 9 e-mail, Schweinzger stated to Aronson that the "Managing Partners" – presumably the Individual Defendants – have investors on standby until a "real opportunity is days from completion" (Ex. 3). Importantly, according to Schweinzger, capital from investors is only called for "[o]nce a deal completely negotiated, signed up, and ready" (Ex. 3). An e-mail is the sent to investors by JJMT which acts as JJMT's "capital call" (Ex. 3).

36. Attached to the October 9 E-mail was a PDF titled "Investment Opportunity Overview" (the "Overview"). A true and correct copy of the Overview is attached to this Complaint and incorporated herein as "Exhibit 4."

37. The Overview stated that JJMT's partner, 1inMM Productions ("1inMM") is a "top distribution company" founded by Horwitz.

38. The Overview further stated that 1inMM "business model consists of purchasing the film distribution rights from Producers and selling those rights to Platforms including HBO, SONY, Netflix, Showtime, basic cable, etc."

39. The Overview further stated that 1inMM uses "loan proceeds to pay Producer for distribution rights to a film". In addition, the Overview stated that the "Managing Partners of

JJMT" have financed 50 of 1inMM's transactions and provided specific examples of sales. (Ex. 4, 6-8).

40. The October 9 E-mail and Overview constituted the "Offering Materials" as defined in the Subscription Agreement signed by Steven Aronson and Matthew Aronson.

41. Steven Aronson and his son, Matthew Aronson, relied on the statements made by Schweinzger in the October 9 E-mail and Overview when they decided to invest in JJMT and both signed the "Subscription Agreement" provided by the Defendants.

42. Between 2016 and the end of 2019, Steven Aronson and Matthew Aronson (collectively the "Aronsons") invested millions of dollars in JJMT through the issuance of Promissory Notes issued by JJMT (collectively the "Notes") and payable to either Steven Aronson or Matthew Aronson.

43. When making the investments evidenced by the Notes, the Aronsons relied on the truthfulness of Schweinzger's statements because Schweinzger was Aronson's superior at Acrisure and the Aronsons trusted Schweinzger and believed him to be an experienced investment banker who would conduct proper due diligence into the investments being offered by JJMT.

44. The Aronsons would not have invested in JJMT or with Horwitz/1inMM if Schweinzger had not been involved with JJMT.

45. The Notes are "securities" as defined by the Illinois Securities Law, 815 ILCS 5/1 et seq.

46. The statements of fact and representations made by Defendants in the October 9 E-mail and Overview were misleading and untrue as follows: JJMT did not acquire any film rights nor did it make money by negotiating any deals with content producers or streaming services. JJMT did not use loan proceeds to pay producers for distribution rights. JJMT did not make any sales to HBO. JJMT was not formed in 2014. Capital calls made by JJMT were not made to investors until a deal was "completely negotiated, signed up, and ready". The investments being offered by JJMT were not "very low risk".

47. In addition to the misrepresentations contained in the October 9 E-mail and Overview, those documents failed to disclose that the Individual Defendants and the Partner Entities were at that time owed significant sums of money by the 1inMM Entities. In fact, the only disclosure of loans made by Individual Defendants and the Partner Entities was in the "Transactions Completed" page of the Overview, falsely implying the loans had been paid off.

48. Prior to transmitting the October 9 E-mail and Overview, JJMT and the Individual Defendants failed to independently verify any statements made by Horwitz and the 1inMM Entities. Furthermore, neither JJMT nor the Individual Defendants had been involved in the financing of the projects contained in the Overview.

49. While Horwitz and 1inMM Entities may have transmitted false and forged documents to Defendants as part of Horwitz's own fraudulent scheme, Defendants recklessly took no steps to conduct independent due diligence and independently verify the existence of the alleged projects that were allegedly being financed by JJMT.

50. The Individual Defendants' failure to conduct any real due diligence about Horwitz or the 1inMM Entities was willful because the Individual Defendants had invested significant sums of money with Horwitz and the 1inMM Entities. The Individual Defendants had a financial incentive to not conduct any independent due diligence into the activities of the 1inMM Entities because: (a) their previous loans were being paid off via new capital infusions being acquired by JJMT and the Individual Defendants and; (b) the Individual Defendants' financial return increased as the amounts of money invested increased.

51. If Defendants had conducted any basic independent due diligence, including but not limited to contacting either HBO, Netflix, Sony or even the original producers of the films identified in the Overview, they would have discovered that Horwitz and the 1inMM Entities were not involved in the distribution, financing, creation or transfer of those projects.

52. The following Promissory Notes were issued by JJMT payable to the Aronsons:

    a. The "BTS-Matthew Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 5."

    b. The "BTS-Steven Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 6."

    c. The "Depraved-Matthew Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 7."

    d. The "Depraved-Steven Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 8."

    e. The "Christmas-Matthew Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 9."

    f. The "Christmas-Steven Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 10."

    g. The "Italy-Matthew Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 11."

    h. The "Italy-Steven Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 12."

i.   The "Heidi-Matthew Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 13."

j.   The "Heidi-Steven Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 14."

k.   The "Yuli-Steven Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 15."

l.   The "Allagah-Steven Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 16."

m.   The "Samson-Steven Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 17."

n.   The "Storm-Steven Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 18."

o.   The "Stubby-Steven Aronson Note", a copy of which is attached to this Complaint and incorporated herein as "Exhibit 19"[1]

53. Collectively the Promissory Notes attached to this Complaint shall be referred herein as the "Notes".

54. Collectively, the BTS-Steven Aronson Note, Depraved-Steven Aronson Note, Christmas-Steven Aronson Note, Italy-Steven Aronson Note, Heidi-Steven Aronson Note, Yuli-Steven Aronson Note, Allagah-Steven Aronson Note, Samson-Steven Aronson Note, Storm-Steven Aronson Note, and Stubby-Steven Aronson Note shall be referred herein as the "Steven Notes".

55. Collectively, the BTS-Matthew Aronson Note, Depraved-Matthew Aronson Note, Christmas-Matthew Aronson Note, Italy-Matthew Aronson Note, Heidi-Matthew Aronson Note, shall be referred herein as the "Matthew Notes".

56. As of March 11, 2021, Steven Aronson had invested $1,340,000.00 via purchase of the Notes attached to this Complaint that have not been paid.

57. As of March 11, 2021, Matthew Aronson had invested $497,000.00 via purchase of the Notes attached to this Complaint that have not been paid.

58. The Aronsons reasonably believed that the money being loaned to JJMT was being used to finance and acquire various media projects described in each Notes, based on the misrepresentations contained in the Overview and the language of the Notes themselves. Each of the Notes issued by JJMT identified the purpose of the funds being loaned by the Aronsons to JJMT. For example, the "Storm-Steven Aronson Note" indicated that JJMT would use the

---

[1] In addition to the Promissory Notes referenced in this Complaint, JJMT issued other Promissory Notes to the Aronsons, which have been paid off.

proceeds of said Note for the "purpose of engaging in financing the acquisition and distribution rights related to the motion picture(s) entitled "Run the Race & Storm Boy".

59. The representations of JJMT contained in the Notes regarding the use of proceeds were false.

60. In consideration of JJMT's false promises contained in the Notes, the Aronsons lent a total of $1,837,000.00 to JJMT.

61. Throughout 2016 through 2019, Schweinzger repeated the false assertions made in the Overview to the Aronsons via e-mails, phone calls and in-person meetings. For example, throughout these years, Schweinzger repeatedly stated that JJMT was landing deals with HBO and Netflix. And, on December 14, 2017, Schweinzger stated: "we've landed another HBO deal". A true and correct copy of the December 14, 2017 E-mail from Schweinzger is attached to this Complaint and incorporated herein as "Exhibit 20." On June 13, 2018, Schweinzger made a similar false misrepresentation, stating that: "We just landed another Netflix package with funding dates tight around the return of your money." A true and correct copy of the June 13, 2018 E-mail from Schweinzger is attached to this Complaint and incorporated herein as "Exhibit 21." Schweinzger thereafter similarly falsely asserted on June 15, 2018, that JJMT had procured a "deal we are selling to Netflix". A true and correct copy of the June 15, 2018 E-mail from Schweinzger is attached to this Complaint and incorporated herein as "Exhibit 22."

62. Based on those false representations and the false representations contained in the October 9 E-mail and subsequent communications, the Aronsons reasonably believed that JJMT was involved with the negotiation and sale of content to HBO, Netflix, or similar media platforms.

63. In addition, JJMT and Schweinzger repeatedly assured the Aronsons that JJMT and the Individual Defendants were conducting the appropriate due diligence on the transactions evidenced by the Notes. For example, in an effort to assuage concerns from investors regarding the repayment of securities that JJMT had sold, Defendants made false representations to the Aronsons and other investors. On November 16, 2020, Schweinzger stated that "1inMM successfully remedied all open items with Netflix relating to their audit requests, on October 29th Netflix informed 1iMM that the audit had formally concluded" Similar statements were made by Defendants in 2020 and 2021 in an effort to induce the Aronsons and other investors to refrain from filing litigation against the Defendants.

64. Defendants acted with a reckless indifference to the truth when they made statements to the Aronsons and other JJMT investors about the status of 1inMM Entities' relationship with Netflix, HBO and Sony and the producers of the media being allegedly sold to those entities. In fact, there was no relationship between the 1inMM Entities and any of those studios or content producers.

<div align="center">

**COUNT I**
**VIOLATION OF THE ILLINOIS SECURITIES LAW**
**Steven Aronson v. Defendants**

</div>

65. Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

66. The Steven Notes are "securities" as defined by the Illinois Securities Law (the "ISL"). 815 ILCS 5/2.1.

67. The ISL prohibits the use of untrue statements of material fact and misleading statements of material facts in the connection with the sale of securities. 815 ILCS 5/12(G).

68. Defendants made multiple false statements and misleading statements regarding the purchase of the Steven Notes to the Steven Aronson prior to Steven Aronson investing in JJMT and Defendants continued to make false and misleading statements through 2021 to Steven Aronson.

69. Steven Aronson reasonably relied on the misrepresentations and false statements made by Defendants when he purchased the Steven Notes.

70. As a result of Defendants' misleading and untrue statements, Steven Aronson has been damaged in an amount no less than $1,340,000.00.

71. Steven Aronson, as purchaser of the Steven Notes, is entitled to rescind the purchase of the Steven Notes as the investments represented by the Steven Notes were procured by violations of Section 12 of the ISL.

72. Pursuant to 815 ILCS 5/13(A), the Individual Defendants are jointly and severally liable to Steven Aronson, as the Individual Defendants participated and aided JJMT with the sale of the Steven Notes and the transmission of false material facts and misleading statements.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, Joseph DeAlteris, Jacob Wunderlin, Matthew Schweinzger and Tyler Crookston, jointly and severally, in an amount no less than $1,340,000.00, plus reasonable attorneys' fees and costs, prejudgment

interest and any other relief that this Court deems just and proper and allowed under the Illinois Securities Law.

## COUNT II
### VIOLATION OF THE ILLINOIS SECURITIES LAW
### Matthew Aronson v. Defendants

73. Matthew Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

74. The Matthew Notes are "securities" as defined by the Illinois Securities Law (the "ISL"). 815 ILCS 5/2.1.

75. The ISL prohibits the use of untrue statements of material fact and misleading statements of material facts in the connection with the sale of securities. 815 ILCS 5/12(G).

76. Defendants made multiple false statements and misleading statements regarding the purchase of the Matthew Notes to Matthew Aronson prior to Matthew Aronson investing in JJMT and Defendants continued to make false and misleading statements through 2021 to Matthew Aronson.

77. Matthew Aronson reasonably relied on the misrepresentations and false statements made by Defendants when he purchased the Matthew Notes.

78. As a result of Defendants' misleading and untrue statements, Matthew Aronson has been damaged in an amount no less than $497,000.00.

79. Matthew Aronson, as purchaser of the Matthew Notes, is entitled to rescind the purchase of the Matthew Notes as the investments represented by the Matthew Notes were procured by violations of Section 12 of the ISL.

80. Pursuant to 815 ILCS 5/13(A), the Individual Defendants are jointly and severally liable to the Aronsons, as the Individual Defendants participated and aided JJMT with the sale of the Matthew Notes and the transmission of false material facts and misleading statements.

WHEREFORE, Matthew Aronson prays for judgment against JJMT Capital, LLC, Joseph DeAlteris, Jacob Wunderlin, Matthew Schweinzger and Tyler Crookston, jointly and severally, in an amount no less than $497,000.00, plus reasonable attorneys' fees and costs, prejudgment interest, and any other relief that this Court deems just and proper and allowed under the Illinois Securities Law.

## COUNT III–

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### Steven Aronson v. Defendants

81. Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

82. At all relevant times stated in this Complaint, there existed the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/ *et seq* (the "ICFA"). Section 10(a) of the ICFA authorizes actions for violations of the ICFA.

83. As detailed in Paragraphs 1 through 64 of this Complaint, Schweinzger, acting on behalf of all Defendants, made misleading and untrue statements to Steven Aronson regarding JJMT and 1nMM Entities' involvement in the production and sale of movie rights and JJMT's use of money obtained from Steven Aronson's purchase of the Steven Notes. Despite the false representations of Schweinzger, either no movie rights were ever negotiated or purchased by either JJMT or the 1nMM Entities at any time, or the number of movie rights actually purchased by 1nMM Entities was not close to the 60 transactions stated in the Overview.

84. Schweinzger and Defendants intended Steven Aronson to rely on the deceptive and misleading acts described in this Complaint and buy securities from JJMT. Specifically, the more money obtained from Steven Aronson, the more money that Defendants would receive from the 1inMM Entities and the Defendants' existing loans would be paid off by capital contributed by Steven Aronson.

85. The deceptive acts described in this Complaint were done in the offering for sale of securities, specifically the Steven Notes.

86. Steven Aronson was deceived by the deceptive acts and practices described in this Complaint.

87. The Defendants' deceptive and misleading acts were the proximate cause of Steven Aronson losing $1,340,000.00, as Steven Aronson invested that sum with JJMT via the Steven Notes based on the Defendants' deceptive and misleading acts.

88. Defendants acted with reckless indifference to the truth when they made deceptive statements regarding JJMT's and 1nMM Entities purchasing and reselling media rights. Defendants made no effort to independently confirm that the 1nMM Entities actually purchased rights from content producers and simply relied on the false statements of Horwitz without conducting any independent due diligence. In addition, Defendants acted with reckless

indifference to Steven Aronson when they failed to ensure that the money used from the purchase of the Steven Notes was actually used for the specific purposes stated in the Steven Notes.

89. Defendants violated the ICFA and due to the reckless indifference exhibited by the Defendants, Steven Aronson is entitled to punitive damages under the ICFA.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, Joseph DeAlteris, Jacob Wunderlin, Matthew Schweinzger and Tyler Crookston, jointly and severally, in an amount no less than $1,340,000.00, plus punitive damages as determined by a trier of fact, reasonable attorneys' fees and costs, prejudgment interest and any other relief that this Court deems just and proper and allowed under the Illinois Consumer Fraud and Deceptive Business Practices Act.

<div align="center">

**COUNT IV–**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS**
**PRACTICES ACT**
**Matthew Aronson v. Defendants**

</div>

90. Matthew Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

91. At all relevant times stated in this Complaint, there existed the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/ et seq (the "ICFA"). Section 10(a) of the ICFA authorizes actions for violations of the ICFA.

92. As detailed in Paragraphs 1 through 64, Schweinzger, acting on behalf of all Defendants, made misleading and untrue statements to Matthew Aronson regarding JJMT and 1nMM Entities' involvement in the production and sale of movie rights and JJMT's use of money obtained from Matthew Aronson's purchase of the Matthew Notes. Despite the false representations of Schweinzger, either no movie rights were ever negotiated or purchased by either JJMT or the 1nMM Entities at any time, or the number of movie rights actually purchased by 1nMM Entities was not close to the 60 transactions stated in the Overview.

93. Defendants intended Matthew Aronson to rely on the deceptive and misleading acts described in this Complaint and buy securities from JJMT. Specifically, the more money obtained from Matthew Aronson, the more money that Defendants would receive from the 1inMM Entities and the Defendants' existing loans would be paid off by capital contributed by Matthew Aronson.

94. The deceptive acts described in this Complaint were done in the offering for sale of securities, specifically the Matthew Notes.

95. Matthew Aronson was deceived by the deceptive acts and practices described in this Complaint.

96. The Defendants' deceptive and misleading acts were the proximate cause of Matthew Aronson losing $497,000.00, as the Matthew Aronson invested that sum with JJMT via the Matthew Notes based on the Defendants' deceptive and misleading acts.

97. Defendants acted with reckless indifference to the truth when they made deceptive statements regarding JJMT's and 1nMM Entities purchasing and reselling media rights. Defendants made no effort to independently confirm that the 1nMM Entities actually purchased rights from content producers and simply relied on the false statements of Horwitz without conducting any independent due diligence. In addition, Defendants acted with reckless indifference to Matthew Aronson when they failed to ensure that the money used from the purchase of the Matthew Notes was actually used for the specific purposes stated in the Matthew Notes.

98. Defendants violated the ICFA and due to the reckless indifference exhibited by the Defendants, Matthew Aronson is entitled to punitive damages under the ICFA.

WHEREFORE, Matthew Aronson prays for judgment against JJMT Capital, LLC, Joseph DeAlteris, Jacob Wunderlin, Matthew Schweinzger and Tyler Crookston, jointly and severally, in an amount no less than $497,000.00, plus punitive damages as determined by a trier of fact, pre-judgment interest, reasonable attorneys' fees and costs, and any other relief that this Court deems just and proper and allowed under the Illinois Consumer Fraud and Deceptive Business Practices Act.

### COUNT V–
### COMMON LAW FRAUD VIA FRAUDULENT MISREPRESENTATIONS
### Steven Aronson v. Schweinzger

99. Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

100. Schweinzger made numerous false statements of material facts regarding the history of JJMT, the operations of JJMT, JJMT's business model and JJMT's history of financing media projects and selling those projects to studios like Netflix, HBO, and Sony. These false statements began with the October 9 E-mail and continued for over a span of five years.

101. Schweinzger, as a managing partner of JJMT, knew that the statements made by him were false because Schweinzger had actual knowledge that JJMT did nothing but funnel money to Horwitz and the 1inMM Entities.

102.    Schweinzger intended Steven Aronson to rely on the false statements made by Schweinzger and buy securities from JJMT. Specifically, the more money obtained from Steven Aronson, the more money that Schweinzger would receive from the 1inMM Entities and existing loans made by Schweinzger (either made by him personally or through the Partner Entities) would be paid off.

103.    Steven Aronson reasonably relied on Schweinzger's false statements described in this Complaint when he bought the Steven Notes.  Schweinzger held himself out to be an experienced investment banker who understood how to supervise investments and Schweinzger utilized his superior position at Acrisure to validate the investment opportunity in JJMT.

104.    As a result of Steven Aronson's reliance on Schweinzger's false statements of material facts, Steven Aronson has been damaged in an amount no less than $1,340,000.00.

105.    Schweinzger's fraudulent statements were made willfully and wantonly as he made no effort to independently confirm any of the representations made by Horwitz related to the use of Steven Aronson's money and had a monetary incentive to not confirm the truth of Horwitz's statements because Horwitz was using the money procured from JJMT to pay Schweinzger.

WHEREFORE, Steven Aronson prays for judgment against Matthew Schweinzger in the amount of $1,340,000.00, plus punitive damages as determined by a trier of fact, pre-judgment interest, reasonable attorneys' fees and costs, and any other relief that this Court deems just and proper and allowed under Illinois law.

## COUNT VI–
## COMMON LAW FRAUD VIA FRAUDULENT MISREPRESENTATIONS
### Matthew Aronson v. Schweinzger

106.    Matthew Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64

107.    Schweinzger made numerous false statements of material facts regarding the history of JJMT, the operations of JJMT, JJMT's business model and JJMT's history of financing media projects and selling those projects to studios like Netflix, HBO, and Sony. These false statements began with the October 9 E-mail and continued for over a span of five years.

108.    Schweinzger, as a managing partner of JJMT, knew that the statements made by him were false because Schweinzger had actual knowledge that JJMT did nothing but funnel money to Horwitz and the 1inMM Entities.

109.     Schweinzger intended Matthew Aronson to rely on the false statements made by Schweinzger and buy securities from JJMT. Specifically, the more money obtained from Matthew Aronson, the more money that Schweinzger would receive from the 1inMM Entities and existing loans made by Schweinzger (either made by him personally or through the Partner Entities) would be paid off by capital contributed by Matthew Aronson.

110.     Matthew Aronson reasonably relied on the truth of Schweinzger's false statements described in this Complaint when he purchased the Matthew Notes. Schweinzger held himself out to be an experienced investment banker who understood how to supervise investments and Schweinzger utilized his position at Acrisure to validate the investment opportunity in JJMT.

111.     As a result of Matthew Aronson's reliance on Schweinzger's false statements of material facts, Matthew Aronson has been damaged in an amount no less than $497,000.00.

112.     Schweinzger's fraudulent statements were made willfully and wantonly as he made no effort to independently confirm any of the representations made by Horwitz related to the use of Matthew Aronson's money and had a monetary incentive to not confirm the truth of Horwitz's statements because Horwitz was using the money procured from JJMT to pay Schweinzger.

WHEREFORE, Matthew Aronson prays for judgment against Matthew Schweinzger in the amount of $497,000.00 plus punitive damages as determined by a trier of fact, pre-judgment interest, reasonable attorneys' fees and costs, and any other relief that this Court deems just and proper and allowed under Illinois law.

## COUNT VII
## NEGLIGENT MISREPRESENTATION
### Steven Aronson v. Schweinzger

113.     Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

114.     Schweinzger had a duty to communicate accurate information to Steven Aronson regarding JJMT as he solicited and accepted funds from Steven Aronson on behalf of JJMT and had a duty to communicate accurate information as a managing member of JJMT.

115.     Schweinzger made numerous false statements of material facts to Steven Aronson regarding the history of JJMT, the operations of JJMT, JJMT's business model and JJMT's history of financing media projects and selling those projects to studios like Netflix, HBO, and Sony. These false statements began with the October 9 E-mail and continued for over a span of five years.

116.     Schweinzger's misrepresentations regarding the acquisition of movie rights by JJMT and the 1nMM Entities were caused by his carelessness and negligence, specifically he failed to conduct any independent due diligence regarding Horwitz's representations regarding the status of the negotiation and acquisition of movie production deals with media companies like HBO, Netflix, Sony and other streaming services.

117.     Schweinzger intended Steven Aronson  rely on the false statements made by Schweinzger and buy securities from JJMT. Specifically, the more money obtained from Steven Aronson, the more money that Schweinzger would receive from the 1inMM Entities and existing loans made by Schweinzger (either made by him personally or through the JJMT or the Partner Entities) would be paid off by capital contributed by Steven Aronson.

118.     Steven Aronson reasonably relied on the truth of Schweinzger's false statements described in this Complaint when he bought the Steven Notes. Schweinzger held himself out to be an experienced investment banker who understood how to supervise investments and Schweinzger utilized his superior position at Acrisure to validate the investment opportunity in JJMT.

119.     As a result of Steven Aronson's reliance on Schweinzger's false statements of material facts, Steven Aronson has been damaged in an amount no less than $1,340,000.00

120.     Schweizenger's fraudulent statements were made willfully and wantonly as he made no effort to independently confirm any of the representations made by Horwitz related to the use of Steven Aronson's money and had a monetary incentive to not confirm the truth of Horwitz's statements because Horwitz was using the money procured from JJMT to pay Schweinzger.

WHEREFORE, Steven Aronson prays for judgment against Matthew Schweinzger in the amount of $1,340,000.00, plus punitive damages as determined by a trier of fact, pre-judgment interest, reasonable attorneys' fees and costs, and any other relief that this Court deems just and proper and allowed under Illinois law.

<div align="center">

**COUNT VIII**
**NEGLIGENT MISREPRESENTATION**
**Matthew Aronson v. Schweinzger**

</div>

121.     Matthew Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

122. Schweinzger had a duty to communicate accurate information to Matthew Aronson regarding JJMT as he solicited and accepted funds from Matthew Aronson on behalf of JJMT and had a duty to communicate accurate information as a managing member of JJMT.

123. Schweinzger made numerous false statements of material facts regarding the history of JJMT, the operations of JJMT, JJMT's business model and JJMT's history of financing media projects and selling those projects to studios like Netflix, HBO and Sony. These false statements began with the October 9 E-mail and continued for over a span of five years.

124. Schweinzger's misrepresentations regarding the acquisition of movie rights by JJMT and the 1nMM Entities were caused by his carelessness and negligence, specifically he failed to conduct any independent due diligence regarding Horwitz's representations regarding the status of JJMT and 1inMM Entities' negotiation and acquisition of movie production deals with media companies like HBO, Netflix, Sony and other streaming services.

125. Schweinzger intended Matthew Aronson to rely on the false statements made by Schweinzger and buy securities from JJMT. Specifically, the more money obtained from Matthew Aronson, the more money that Schweinzger would receive from the 1inMM Entities and existing loans made by Schweinzger (either made by him personally or through JJMT or the Partner Entities) would be paid off by capital contributed by Matthew Aronson.

126. Matthew Aronson reasonably relied on the truth of Schweinzger's false statements described in this Complaint when he bought the Matthew Notes. Schweinzger held himself out to be an experienced investment banker who understood how to supervise investments and Schweinzger utilized his superior position at Acrisure to validate the investment opportunity in JJMT.

127. As a result of Matthew Aronson's reliance on Schweinzger's false statements of material facts, Matthew Aronson has been damaged in an amount no less than $497,000.00

128. Schweinzger's fraudulent statements were made willfully and wantonly as he made no effort to independently confirm any of the representations made by Horwitz related to the use of Matthew Aronson's money and had a monetary incentive to not confirm the truth of Horwitz's statements because Horwitz was using the money procured from JJMT to pay Schweinzger.

WHEREFORE, Matthew Aronson prays for judgment against Matthew Schweinzger in the amount of $497,000.00 plus punitive damages as determined by a trier of fact, pre-judgment

interest, reasonable attorneys' fees and costs, and any other relief that this Court deems just and proper and allowed under Illinois law.

## COUNT IX
## CONSPIRACY TO DEFRAUD
### Steven Aronson v. Defendants

129.    Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

130.    The Individual Defendants pursued a scheme to defraud Steven Aronson and other prospective investors in JJMT by misrepresenting that JJMT was in the business of financing movie projects. In fact, JJMT was not in the business of financing movie projects. The scheme was underscored by the fact that the Individual Defendants created multiple entities to invest in the Ponzi scheme being run by Horwitz and used the funds contributed by investors like Steven Aronson to pay themselves back for loans the Individual Defendants made to Horwitz and/or the 1nMM entities.

131.    The Individual Defendants formed an agreement to obtain money from Steven Aronson and other investors through fraudulent and misleading representations.

132.    The Individual Defendants pursued the same goal of obtaining money from Steven Aronson and other investors in JJMT through the misrepresentations described in this Complaint. While Schweinzger was Steven Aronson's main contact, the other Individual Defendants – Wunderlin, Dealteris and Crookston – solicited other investors though similar fraudulent and misleading statements.

133.    Wunderlin, Dealteris and Crookston planned, assisted, and encouraged Schweinzger's misrepresentations.

134.    Schweinzger carried out the tortious acts of fraudulent misrepresentation, negligent misrepresentation and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act in furtherance of the conspiracy agreed to by the Individual Defendants.

135.    As a result of the Individual Defendants' conspiracy, Stevenson Aronson has been damaged in an amount no less than $1,340,000.00 because  he bought the Steven Notes based on the tortious acts committed by Schweinzger and the conspiracy to defraud described in this Complaint.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, Joseph DeAlteris, Jacob Wunderlin, Matthew Schweinzger and Tyler Crookston, jointly and severally, in an amount no less than $1,340,000.00, plus punitive damages as determined by a trier of fact, reasonable attorneys' fees and costs, prejudgment interest and any other relief that this Court deems just and proper and allowed under Illinois law.

<div align="center">

**COUNT X–**
**CONSPIRACY TO DEFRAUD**
**Matthew Aronson v. Defendants**

</div>

136.     Matthew Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

137.     The Individual Defendants pursued a scheme to defraud Matthew Aronson and other prospective investors in JJMT by misrepresenting that JJMT was in the business of financing movie projects. In fact, JJMT was not in the business of financing movie projects. The scheme was underscored by the fact that the Individual Defendants created multiple entities to invest in the Ponzi scheme being run by Horwitz and used the funds contributed by investors like Matthew Aronson to pay themselves bac for loans the Individual Defendants made to Horwitz and/or the 1nMM entities.

138.     The Individual Defendants formed an agreement to obtain money from Matthew Aronson and other investors through fraudulent and misleading representations.

139.     The Individual Defendants pursued the same goal of obtaining money from Matthew Aronson and other investors in JJMT through misrepresentations described in this Complaint. While Schweinzger was Matthew Aronson's main contact, the other Individual Defendants – Wunderlin, Dealteris and Crookston – solicited other investors though similar fraudulent and misleading statements.

140.     Wunderlin, Dealteris and Crookston planned, assisted, and encouraged Schweinzger's misrepresentations.

141.     Schweinzger carried out the tortious acts of fraudulent misrepresentation, negligent misrepresentation and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act in furtherance of the conspiracy agreed to by the Individual Defendants.

142.     As a result of the Individual Defendants' conspiracy, Matthew Aronson has been damaged in an amount no less than $497,000.00

WHEREFORE, Matthew Aronson prays for judgment against JJMT Capital, LLC, Joseph DeAlteris, Jacob Wunderlin, Matthew Schweinzger and Tyler Crookston, jointly and severally, in an amount no less than $497,000.00, plus punitive damages as determined by a trier of fact, reasonable attorneys' fees and costs, prejudgment interest and any other relief that this Court deems just and proper and allowed under Illinois law.

<div align="center">

**COUNT XI–**
**BREACH OF PROMISSORY NOTE**
**(**BTS-Matthew Aronson Note)
(Plead In The Alternative)

</div>

143.     Matthew Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

144.     The BTS-Matthew Aronson Note (Ex. 5) was executed by JJMT, is payable to Matthew Aronson and was delivered to Matthew Aronson by JJMT.

145.     In consideration for the promises contained in the BTS-Matthew Aronson Note, Matthew Aronson lent the principal sum of $100,000.00 to JJMT.

146.     Matthew Aronson has performed all of his obligations under the BTS-Matthew Aronson Note.

147.     JJMT breached the terms of the BTS-Matthew Aronson Note by failing and refusing to pay the amounts due and owing under the BTS-Matthew Aronson Note by February 12, 2020, the maturity date of the BTS-Matthew Aronson Note.

148.     As a direct and proximate result of JJMT's breach of the BTS-Matthew Aronson Note, Matthew Aronson has been damaged in the amount of at least $123,000.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

149.     Pursuant to the terms of the BTS-Matthew Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the BTS-Matthew Aronson Note.

WHEREFORE, Matthew Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $123,000.00, plus ongoing fees and penalties accruing under the BTS-Matthew Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due

under the BTS-Matthew Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

## COUNT XII
## BREACH OF PROMISSORY NOTE
### (BTS-Steven Aronson Note)
### (Plead In the Alternative)

150.    Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

151.    The BTS-Steven Aronson Note (Ex. 6) was executed by JJMT, is payable to Steven Aronson and was delivered to Steven Aronson by JJMT.

152.    In consideration for the promises contained in the BTS-Steven Aronson Note, Steven Aronson lent the principal sum of $100,000.00 to JJMT.

153.    Steven Aronson has performed all of his obligations under the BTS-Steven Aronson Note.

154.    JJMT breached the terms of the BTS-Steven Aronson Note by failing and refusing to pay the amounts due and owing under the BTS-Steven Aronson Note by February 12, 2020, the maturity date of the BTS-Steven Aronson Note.

155.    As a direct and proximate result of JJMT's breach of the BTS-Steven Aronson Note, Steven Aronson has been damaged in the amount of at least $123,000.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

156.    Pursuant to the terms of the BTS-Steven Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the BTS-Steven Aronson Note.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $123,000.00, plus ongoing fees and penalties accruing under the BTS-Steven Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the BTS-Steven Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

## COUNT XIII – BREACH OF PROMISSORY NOTE

(Depraved-Matthew Aronson Note)
(Plead In the Alternative)

157.     Matthew Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

158.     The Depraved-Matthew Aronson Note (Ex. 7) was executed by JJMT, is payable to Matthew Aronson and was delivered to Matthew Aronson by JJMT.

159.     In consideration for the promises contained in the Depraved-Matthew Aronson Note, Matthew Aronson lent the principal sum of $50,000.00 to JJMT.

160.     Matthew Aronson has performed all of his obligations under the Depraved-Matthew Aronson Note.

161.     JJMT breached the terms of the Depraved-Matthew Aronson Note by failing and refusing to pay the amounts due and owing under the Depraved-Matthew Aronson Note by January 10, 2020, the maturity date of the Depraved-Matthew Aronson Note.

162.     As a direct and proximate result of JJMT's breach of the Depraved-Matthew Aronson Note, Matthew Aronson has been damaged in the amount of at least $57,167.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

163.     Pursuant to the terms of the Depraved-Matthew Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Depraved-Matthew Aronson Note.

WHEREFORE, Matthew Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $57,167.00, plus ongoing fees and penalties accruing under the Depraved-Matthew Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Depraved-Matthew Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

### COUNT XIV – BREACH OF PROMISSORY NOTE
(Depraved-Steven Aronson Note)
(Plead In the Alternative)

164.     Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

165.     The Depraved-Steven Aronson Note (Ex. 8) was executed by JJMT, is payable to Steven Aronson and was delivered to Steven Aronson by JJMT.

166.     In consideration for the promises contained in the Depraved-Steven Aronson Note, Steven Aronson lent the principal sum of $200,000.00 to JJMT.

167.     Steven Aronson has performed all of his obligations under the Depraved-Steven Aronson Note.

168.     JJMT breached the terms of the Depraved-Steven Aronson Note by failing and refusing to pay the amounts due and owing under the Depraved-Steven Aronson Note by January 10, 2020, the maturity date of the Depraved-Steven Aronson Note.

169.     As a direct and proximate result of JJMT's breach of the Depraved-Steven Aronson Note, Steven Aronson has been damaged in the amount of at least $227,057.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

170.     Pursuant to the terms of the Depraved-Steven Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Depraved-Steven Aronson Note.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $227,057.00, plus ongoing fees and penalties accruing under the Depraved-Steven Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Depraved-Steven Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

### COUNT XV – BREACH OF PROMISSORY NOTE
(Christmas-Matthew Aronson Note)
(Plead In the Alternative)

171.     Matthew Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

172.     The Christmas-Matthew Aronson Note (Ex. 9) was executed by JJMT, is payable to Matthew Aronson and was delivered to Matthew Aronson by JJMT.

173.     In consideration for the promises contained in the Christmas-Matthew Aronson Note, Matthew Aronson lent the principal sum of $125,000.00 to JJMT.

174.     Matthew Aronson has performed all of his obligations under the Christmas-Matthew Aronson Note.

175.     JJMT breached the terms of the Christmas-Matthew Aronson Note by failing and refusing to pay the amounts due and owing under the Christmas-Matthew Aronson Note by May 5, 2020, the maturity date of the Christmas-Matthew Aronson Note.

176.     As a direct and proximate result of JJMT's breach of the Christmas-Matthew Aronson Note, Matthew Aronson has been damaged in the amount of at least $139,200.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

177.     Pursuant to the terms of the Christmas-Matthew Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Christmas-Matthew Aronson Note.

WHEREFORE, Matthew Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $139,200.00, plus ongoing fees and penalties accruing under the Christmas-Matthew Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Christmas-Matthew Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

### COUNT XVI – BREACH OF PROMISSORY NOTE
(Christmas-Steven Aronson Note)
(Plead In the Alternative)

178.     Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

179.     The Christmas-Steven Aronson Note (Ex. 10) was executed by JJMT, is payable to Steven Aronson and was delivered to Steven Aronson by JJMT.

180.     In consideration for the promises contained in the Christmas-Steven Aronson Note, Steven Aronson lent the principal sum of $90,000.00 to JJMT.

181.     Steven Aronson has performed all of his obligations under the Christmas-Steven Aronson Note.

182.     JJMT breached the terms of the Christmas-Steven Aronson Note by failing and refusing to pay the amounts due and owing under the Christmas-Steven Aronson Note by May 5, 2020, the maturity date of the Christmas-Steven Aronson Note.

183.     As a direct and proximate result of JJMT's breach of the Christmas-Steven Aronson Note, Steven Aronson has been damaged in the amount of at least $100,200.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

184.     Pursuant to the terms of the Christmas-Steven Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Christmas-Steven Aronson Note.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $100,200.00, plus ongoing fees and penalties accruing under the Christmas-Steven Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Christmas-Steven Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

## COUNT XVII – BREACH OF PROMISSORY NOTE
### (Italy-Matthew Aronson Note)
### (Plead In the Alternative)

185.     Matthew Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

186.     The Italy-Matthew Aronson Note (Ex. 11) was executed by JJMT, is payable to Matthew Aronson and was delivered to Matthew Aronson by JJMT.

187.     In consideration for the promises contained in the Italy-Matthew Aronson Note, Matthew Aronson lent the principal sum of $110,000.00 to JJMT.

188.     Matthew Aronson has performed all of his obligations under the Italy-Matthew Aronson Note.

189.     JJMT breached the terms of the Italy-Matthew Aronson Note by failing and refusing to pay the amounts due and owing under the Italy-Matthew Aronson Note by October 1, 2020, the maturity date of the Italy-Matthew Aronson Note.

190.     As a direct and proximate result of JJMT's breach of the Italy-Matthew Aronson Note, Matthew Aronson has been damaged in the amount of at least $137,800.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

191.     Pursuant to the terms of the Italy-Matthew Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Italy-Matthew Aronson Note.

WHEREFORE, Matthew Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $137,800.00 plus ongoing fees and penalties accruing under the Italy-Matthew Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Italy-Matthew Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

## COUNT XVIII – BREACH OF PROMISSORY NOTE
(Italy-Steven Aronson Note)
(Plead In the Alternative)

192.     Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

193.     The Italy-Steven Aronson Note (Ex. 12) was executed by JJMT, is payable to Steven Aronson and was delivered to Steven Aronson by JJMT.

194.     In consideration for the promises contained in the Italy-Steven Aronson Note, Steven Aronson lent the principal sum of $110,000.00 to JJMT.

195.     Steven Aronson has performed all of his obligations under the Italy-Steven Aronson Note.

196.     JJMT breached the terms of the Italy-Steven Aronson Note by failing and refusing to pay the amounts due and owing under the Italy-Steven Aronson Note by October 1, 2020, the maturity date of the Italy-Steven Aronson Note.

197.     As a direct and proximate result of JJMT's breach of the Italy-Steven Aronson Note, Steven Aronson has been damaged in the amount of at least $137,800.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

198.     Pursuant to the terms of the Italy-Steven Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Italy-Steven Aronson Note.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $137,800.00 plus ongoing fees and penalties accruing under the Italy-Steven Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Italy-Steven Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

### COUNT XIX – BREACH OF PROMISSORY NOTE
**(**Heidi-Matthew Aronson Note)
(Plead In The Alternative)

199.     Matthew Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

200.     The Heidi-Matthew Aronson Note (Ex. 13) was executed by JJMT, is payable to Matthew Aronson and was delivered to Matthew Aronson by JJMT.

201.     In consideration for the promises contained in the Heidi-Matthew Aronson Note, Matthew Aronson lent the principal sum of $112,000.00 to JJMT.

202.     Matthew Aronson has performed all of his obligations under the Heidi-Matthew Aronson Note.

203.

204.     JJMT breached the terms of the Heidi-Matthew Aronson Note by failing and refusing to pay the amounts due and owing under the Heidi-Matthew Aronson Note by June 9, 2020, the maturity date of the Heidi-Matthew Aronson Note.

205.     As a direct and proximate result of JJMT's breach of the Heidi-Matthew Aronson Note, Matthew Aronson has been damaged in the amount of at least $125,000.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

206.     Pursuant to the terms of the Heidi-Matthew Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Heidi-Matthew Aronson Note.

WHEREFORE, Matthew Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $125,000.00 plus ongoing fees and penalties accruing under the Heidi-Matthew Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Heidi-Matthew Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

<div align="center">

**COUNT XX – BREACH OF PROMISSORY NOTE**
(Heidi-Steven Aronson Note)
(Plead In The Alternative)

</div>

207.     Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

208.     The Heidi-Steven Aronson Note (Ex. 14) was executed by JJMT, is payable to Steven Aronson and was delivered to Steven Aronson by JJMT.

209.     In consideration for the promises contained in the Heidi-Steven Aronson Note, Steven Aronson lent the principal sum of $280,000.00 to JJMT.

210.     Steven Aronson has performed all of his obligations under the Heidi-Steven Aronson Note.

211.     JJMT breached the terms of the Heidi-Steven Aronson Note by failing and refusing to pay the amounts due and owing under the Heidi-Steven Aronson Note by June 9, 2020, the maturity date of the Heidi-Steven Aronson Note.

212.     As a direct and proximate result of JJMT's breach of the Heidi-Steven Aronson Note, Steven Aronson has been damaged in the amount of at least $313,000.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

213.     Pursuant to the terms of the Heidi-Steven Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Heidi-Steven Aronson Note.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $313,000.00 plus ongoing fees and penalties accruing under the Heidi-Steven Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Heidi-

Steven Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

## COUNT XXI – BREACH OF PROMISSORY NOTE
### (Yuli-Steven Aronson Note)
### (Plead In The Alternative)

214.　　Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

215.　　The Yuli-Steven Aronson Note (Ex. 15) was executed by JJMT, is payable to Steven Aronson and was delivered to Steven Aronson by JJMT.

216.　　In consideration for the promises contained in the Yuli-Steven Aronson Note, Steven Aronson lent the principal sum of $65,000.00 to JJMT.

217.　　Steven Aronson has performed all of his obligations under the Yuli-Steven Aronson Note.

218.　　JJMT breached the terms of the Yuli-Steven Aronson Note by failing and refusing to pay the amounts due and owing under the Yuli-Steven Aronson Note by February 28, 2020, the maturity date of the Yuli-Steven Aronson Note.

219.　　As a direct and proximate result of JJMT's breach of the Yuli-Steven Aronson Note, Steven Aronson has been damaged in the amount of at least $80,750.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

220.　　Pursuant to the terms of the Yuli-Steven Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Yuli-Steven Aronson Note.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $80,750.00 plus ongoing fees and penalties accruing under the Yuli-Steven Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Yuli-Steven Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

## COUNT XXII – BREACH OF PROMISSORY NOTE
### (Allagah-Steven Aronson Note)
### (Plead In The Alternative)

221.     Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

222.     The Allagah-Steven Aronson Note (Ex. 16) was executed by JJMT, is payable to Steven Aronson and was delivered to Steven Aronson by JJMT.

223.     In consideration for the promises contained in the Allagah-Steven Aronson Note, Steven Aronson lent the principal sum of $35,000.00 to JJMT.

224.     Steven Aronson has performed all of his obligations under the Allagah-Steven Aronson Note.

225.     JJMT breached the terms of the Allagah-Steven Aronson Note by failing and refusing to pay the amounts due and owing under the Allagah-Steven Aronson Note by May 7, 2020, the maturity date of the Allagah-Steven Aronson Note.

226.     As a direct and proximate result of JJMT's breach of the Allagah-Steven Aronson Note, Steven Aronson has been damaged in the amount of at least $39,000.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

227.     Pursuant to the terms of the Allagah-Steven Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Allagah-Steven Aronson Note.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $39,000.00 plus ongoing fees and penalties accruing under the Allagah-Steven Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Allagah-Steven Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

### COUNT XXIII – BREACH OF PROMISSORY NOTE
**(Samson-Steven Aronson Note)**
(Plead In The Alternative)

228.     Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

229.     The Samson-Steven Aronson Note (Ex. 17) was executed by JJMT, is payable to Steven Aronson and was delivered to Steven Aronson by JJMT.

230.     In consideration for the promises contained in the Samson-Steven Aronson Note, Steven Aronson lent the principal sum of $300,000.00 to JJMT.

231.     Steven Aronson has performed all of his obligations under the Samson-Steven Aronson Note.

232.     JJMT breached the terms of the Samson-Steven Aronson Note by failing and refusing to pay the amounts due and owing under the Samson-Steven Aronson Note by August 31, 2020, the maturity date of the Samson-Steven Aronson Note.

233.     As a direct and proximate result of JJMT's breach of the Samson-Steven Aronson Note, Steven Aronson has been damaged in the amount of at least $375,000.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

234.     Pursuant to the terms of the Samson-Steven Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Samson-Steven Aronson Note.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $375,000.00 plus ongoing fees and penalties accruing under the Samson-Steven Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Samson-Steven Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

### COUNT XXIV – BREACH OF PROMISSORY NOTE
(Storm-Steven Aronson Note)
(Plead In The Alternative)

235.     Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

236.     The Storm-Steven Aronson Note (Ex. 18) was executed by JJMT, is payable to Steven Aronson and was delivered to Steven Aronson by JJMT.

237.     In consideration for the promises contained in the Storm-Steven Aronson Note, Steven Aronson lent the principal sum of $125,000.00 to JJMT.

238.    Steven Aronson has performed all of his obligations under the Storm-Steven Aronson Note.

239.    JJMT breached the terms of the Storm-Steven Aronson Note by failing and refusing to pay the amounts due and owing under the Storm-Steven Aronson Note by September 15, 2020, the maturity date of the Storm-Steven Aronson Note.

240.    As a direct and proximate result of JJMT's breach of the Storm-Steven Aronson Note, Steven Aronson has been damaged in the amount of at least $155,000.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

241.    Pursuant to the terms of the Storm-Steven Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Storm-Steven Aronson Note.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $155,000.00 plus ongoing fees and penalties accruing under the Storm-Steven Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Storm-Steven Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

## COUNT XXV – BREACH OF PROMISSORY NOTE
### (Stubby-Steven Aronson Note)
### (Plead In The Alternative)

242.    Steven Aronson incorporates by this reference the allegations set forth above in Paragraphs 1 through 64.

243.    The Stubby-Steven Aronson Note (Ex. 19) was executed by JJMT, is payable to Steven Aronson and was delivered to Steven Aronson by JJMT.

244.    In consideration for the promises contained in the Stubby-Steven Aronson Note, Steven Aronson lent the principal sum of $35,000.00 to JJMT.

245.    Steven Aronson has performed all of his obligations under the Stubby-Steven Aronson Note.

246.     JJMT breached the terms of the Stubby-Steven Aronson Note by failing and refusing to pay the amounts due and owing under the Stubby-Steven Aronson Note by June 29, 2020, the maturity date of the Stubby-Steven Aronson Note.

247.     As a direct and proximate result of JJMT's breach of the Stubby-Steven Aronson Note, Steven Aronson has been damaged in the amount of at least $43,700.00, together with ongoing interest, penalties, attorney fees, and costs incurred until the date of judgment in this matter.

248.     Pursuant to the terms of the Stubby-Steven Aronson Note, JJMT agreed to pay all reasonable attorneys' fees and costs, if an Event of Default occurred under the Stubby-Steven Aronson Note.

WHEREFORE, Steven Aronson prays for judgment against JJMT Capital, LLC, in an amount no less than $43,700.00 plus ongoing fees and penalties accruing under the Stubby-Steven Aronson Note, plus reasonable attorneys' fees and costs expended to collect sums due under the Stubby-Steven Aronson Note, and any other relief this Court deems just and equitable or as allowed under Delaware law.

<div style="margin-left:40%">

Respectfully Submitted,

MATTHEW ARONSON AND STEVEN ARONSON

s/Scott C. Frost
By One of Its Attorneys

</div>

## JURY DEMAND

The United States demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

<div style="margin-left:40%">

MATTHEW ARONSON AND STEVEN ARONSON

s/Scott C. Frost
By One of Its Attorney

</div>

Daniel S. Rubin ARDC #6293669
Scott Frost ARDC #6208276
Howard & Howard Attorneys PLLC

200 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Phone: (312) 372-4000
Fax:      (312) 939-5617
sfrost@howardandhoward.com
drubin@howardandhoward.com

CLERK, U.S. DISTRICT COURT

APR - 5 2021

CENTRAL DISTRICT OF CALIFORNIA
BY:_____RS_____DEPUTY

1  KATHRYN C. WANNER (Cal. Bar No. 269310)
   Email: wannerk@sec.gov
2  M. LANCE JASPER (Cal. Bar No. 244516)
   Email: jasperml@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Michele Wein Layne, Regional Director
5  Alka N. Patel, Associate Regional Director
   Amy J. Longo, Regional Trial Counsel
6  444 S. Flower Street, Suite 900
   Los Angeles, California 90071
7  Telephone: (323) 965-3998
   Facsimile: (213) 443-1904
8
9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  SECURITIES AND EXCHANGE          Case No. 2:21-CV-02927-CAS-GJSx
    COMMISSION,
13
             Plaintiff,             DECLARATION OF MATTHEW
14                                  SCHWEINZGER
          vs.
15
    ZACHARY J. HORWITZ; AND
16  1INMM CAPITAL, LLC,             (FILED UNDER SEAL)

17           Defendants.

18

19

20

21

22

23

24

25

26

27

28

                                    EXHIBIT 1

## DECLARATION OF MATTHEW SCHWEINZGER

I, Matthew Schweinzger, declare, pursuant to 28 U.S.C. § 1746, as follows:

1.       I am an individual over 18 years of age and have personal knowledge of the matters set forth herein, except as otherwise noted, and, if called as a witness, I could and would competently testify under oath to the facts stated herein.

2.       I make this declaration at the request of the staff of the U.S. Securities and Exchange Commission ("SEC").

3.       I am a managing member of JJMT Capital, LLC ("JJMT").  The three managing members of JJMT – Jacob Wunderlin, Joseph deAlteris, and myself (collectively, "JJMT members") – met Zachary Horwitz, the founder and managing member of 1inMM Capital ("1inMM"), while attending Indiana University from 2007-2010, where we became friends.

4.       In or about March of 2014, based on my information and belief, Horwitz presented Wunderlin with an investment opportunity in 1inMM, whereby Wunderlin would lend funds in exchange for a promissory note, and the funds would serve to finance and facilitate the licensing of specific media content to a streaming platform.  To induce Wunderlin to extend the loan, Horwitz made representations regarding 1inMM, which Wunderlin reasonably believed to be true and accurate, regarding Horwitz's experience and relationships in the media content distribution industry, as well as the investment dynamics, deal structure, potential returns, and associated risks pertaining to the opportunity.  To further induce Wunderlin to extend the loan, Horwitz personally guaranteed Wunderlin's initial loan.  In reliance upon Horwitz's representations and his personal guarantee, that same month, Wunderlin and an associate ("EF"), loaned approximately $37,000 in exchange for a promissory note with 1inMM.  This initial note was timely repaid in full by 1inMM with the specified amount of interest in or about June 2014.

5.       From in or about September 2014 through March 2015, Horwitz made additional representations to me, as well as to Wunderlin and deAlteris, in order to induce us to lend additional capital to 1inMM in exchange for promissory notes that would finance and

facilitate the licensing of specific media content to streaming platforms. In reliance on these representations, which I reasonably believed to be true and accurate, and the timely repayment with interest by 1inMM of the initial note described above, the following occurred, among other things:

- Wunderlin, deAlteris, and I agreed to lend additional capital in exchange for promissory notes issued by 1inMM.

- These notes were financed by Wunderlin, deAlteris, or Chi Town Capital ("CT Capital"), an entity formed by Wunderlin, deAlteris, me, and two other associates ("EF" and "TC") for the purpose of providing financing to 1inMM in exchange for promissory notes. The capital for these notes was provided by Wunderlin, deAlteris, and me personally, as well as from our friends and associates.

- All of these notes were timely repaid in full by 1inMM with the specified amount of interest.

- The following chart summarizes these loans and the associated media content, as represented by Horwitz and reasonably believed to be true and accurate by me:

| Lender | Title | Transaction Date | Maturity Date | Customer | Loan Amount |
|---|---|---|---|---|---|
| Jacob Wunderlin | Deseo | March 2014 | June 2014 | Sony Pictures | $37,000 |
| Chi Town Capital | Los Olvidados | October 2014 | January 2015 | Sony Pictures | $297,000 |
| Jacob Wunderlin | Fräulein Else | November 2014 | February 2015 | Sony Pictures | $32,500 |
| Jacob Wunderlin | HellFire | December 2014 | June 2015 | HBO Studios | $36,000 |
| Joseph deAlteris | Kickboxer | January 2015 | July 2015 | HBO Studios | $81,100 |
| Chi Town Capital | Wild Night | February 2015 | August 2015 | HBO Studios | $265,000 |
| Chi Town Capital | Anna Waters | February 2015 | August 2015 | HBO Studios | $263,500 |
| Jacob Wunderlin | Skyler | March 2015 | September 2015 | HBO Studios | $38,250 |

6.     Among the representations made by Horwitz to induce Wunderlin, deAlteris, and me to provide financing in exchange for promissory notes to 1inMM as described above, which I reasonably believed to be true, and which I relied upon in agreeing to provide

additional financing in exchange for promissory notes as described below, were the

following, among other things:

- Horwitz was well-connected in the content distribution industry as a result of his

    relationships with Julio Hallivis (his friend), Gustavo Montaudon (Julio's family

    member), and Javier Salgado (Gustavo's business partner).

- Montaudon was an "industry veteran" with 20+ years' experience in content

    distribution with direct connections at Netflix/HBO/Sony for the Latin American

    Markets (https://www.linkedin.com/in/gustavo-montaudon-71989123/;

    http://www.alebrije.tv/)

- Horwitz had been working for the VC firm Maveron (https://www.maveron.com/),

    where he had formed relationships with wealthy businessmen Howard Schultz and

    Dan Levitan.

- Schultz and Levitan were instrumental in creating inroads for Horwitz at platforms

    such as Netflix, HBO, and Sony and for facilitating the various output deals that

    1inMM had in place with these platforms.

- Horwitz had another larger operation called "1inMM Productions" that was

    financially supported by Schultz and Levitan for the purpose of acquiring titles larger

    in scale and more speculative in nature.

- In contrast to 1inMM Productions, 1inMM was created specifically to acquire titles

    that were generally approximately $1 million or less in purchase price.

7. Throughout our dealings with 1inMM and Horwitz, it was critical to my decisions to

provide financing to 1inMM that Horwitz made representations and provided

documentation, emails, and other information that I reasonably believed to be true and

accurate that 1inMM was licensing content to well-established, well-respected, and well-

financed platforms known to be actively seeking and licensing such content in the relevant

markets, most notably Netflix and HBO.

8. From in or about April 2015 through October 2015, in reliance upon Horwitz's

representations and the documentation, emails, and other information he provided, which I

3

reasonably believed to be true and accurate, and the timely repayment with the specified amount of interest by 1inMM of the prior notes, Wunderlin, deAlteris, and I were induced to extend thirteen additional loans to 1inMM in exchange for promissory notes via two entities (JTHD Investments and JJMT Group). These were entities created either individually or collectively by Wunderlin, deAlteris, and/or me (and a fourth associate, "TC") for the purpose of lending additional capital to 1inMM in exchange for promissory notes. The capital for these loans was provided by Wunderlin, deAlteris, and me personally, as well as by our family, friends, and associates. The following chart summarizes these loans and the associated media content, as represented by Horwitz and which I reasonably believed to be true and accurate:

| Lender | Title | Transaction Date | Maturity Date | Customer | Loan Amount |
|---|---|---|---|---|---|
| JTHd Investments | The Muse | April 2015 | October 2015 | HBO Studios | $225,500 |
| JTHd Investments | The Last Five Years | April 2015 | October 2015 | HBO Studios | $325,250 |
| JTHd Investments | Hell & Back | June 2015 | December 2015 | HBO Studios | $265,000 |
| JTHd Investments | Bronco Belle | June 2015 | December 2015 | HBO Studios | $253,500 |
| JJMT Group | Pound of Flesh | August 2015 | February 2016 | HBO Studios | $235,750 |
| JJMT Group | Stolen Dreams | August 2015 | February 2016 | HBO Studios | $170,500 |
| JJMT Group | Sinister 2 | August 2015 | February 2016 | HBO Studios | $416,000 |
| JJMT Group | Eye in the Sky | September 2015 | March 2016 | HBO Studios | $490,750 |
| JJMT Group | The Adderall Diaries | September 2015 | March 2016 | HBO Studios | $266,750 |
| JJMT Group | Beast | September 2015 | March 2016 | HBO Studios | $195,675 |
| JJMT Group | High-Rise | October 2015 | April 2016 | HBO Studios | $680,650 |
| JJMT Group | Carol | October 2015 | April 2016 | HBO Studios | $375,500 |
| JJMT Group | A Year And Change | October 2015 | April 2016 | HBO Studios | $285,950 |

9.      In or about July of 2015, JJMT was created by managing members Wunderlin, deAlteris, and me (along with "TC," who is no longer affiliated with JJMT). In or about November of 2015, the JJMT members began to utilize JJMT as the primary vehicle to act

as a continued source of promissory note financing for 1inMM.  The capital deployed by

JJMT was provided by the JJMT members personally, as well as by our family, friends, and

associates.  During this time, Horwitz made representations and provided documentation,

emails, and other information to the JJMT members, which I reasonably believed to be true

and accurate, and upon which I relied in agreeing to have JJMT provide financing to

1inMM, that indicated as follows, among other things:

- 1inMM and Horwitz would use loan funds from JJMT to acquire distribution rights for the Latin American marketplace from various Foreign Sales Agents ("FSAs").

- Following acquisition from the FSA, 1inMM and Horwitz would sublicense these distribution rights to Sony, HBO or Netflix.

- Repayment of JJMT's loans, inclusive of the specified amount of interest, to 1inMM would be tied to the repayment of licensing fees from Sony, HBO or Netflix to 1inMM.

- Sony's standard payment term/timeline for any transaction was 3 months following the transaction date with 1inMM.

- HBO's standard payment term/timeline for any transaction was 6 months following the transaction date with 1inMM.

- Netflix's standard payment term/timeline for any transaction was 24 months following the transaction date with 1inMM (later, in 2017, this term/timeline became 12 months).

- As such, JJMT's loans to 1inMM would be outstanding for either 3 months (Sony titles), 6 months (HBO titles) or 24 (later 12) months (Netflix titles) depending on which platform ultimately licensed the content.

- Further, in or about March 2017, 1inMM formed a partnership with Pathe International, a content distribution business in Europe.  Using loan funds from JJMT, 1inMM would provide financing to Pathe to acquire the rights to content that Pathe would thereafter sublicense to HBO for the European marketplace.  For each of these transactions, Pathe's payment term/timeline was 6 months (consistent with

5

HBO's standard payment term/timeline).  Pathe would repay 1inMM, and 1inMM

would thereafter repay the JJMT notes, inclusive of the specified amount of interest.

- For Pathe transactions, JJMT would provide approximately 80% of the capital for the loans to 1inMM and Horwitz, via ZJH Enterprise LLC ("ZJH"), would provide JJMT with the additional 20% of loan capital.  In turn, ZJH would receive a proportionate share of the interest on these notes upon repayment from 1inMM to JJMT.

- The manner in which 1inMM generated revenue for itself included, but was not limited to, the following: (i) receiving a percentage of the gross receipts that HBO generated from exploiting film rights; (ii) retaining a portion of the profit margin from Netflix-specific transactions; (iii) following the repayment of notes used to finance the acquisition of content rights and the expiration of initial 3-year sublicensing period with platforms such as HBO and Netflix, 1inMM would retain rights to the same content for an additional period of years, thereby enabling 1inMM to continue licensing the content to other parties for 1inMM's sole financial benefit; and (iv) 1inMM would also, as of in or about March 2017, enter into a profit participation arrangement with Pathe and receive a portion of the gross receipts that HBO paid to Pathe.

10.     From the start of the JJMT financing arrangement with 1inMM in or about 2015 until late 2019, JJMT continued to increase the use of the JJMT members' own personal capital, as well as capital from our family, friends, and associates, to provide financing to 1inMM in exchange for promissory notes.  In so doing, I relied upon 1inMM's timely repayment of promissory notes in full with the specified amount of interest, as well as upon Horwitz's continued representations and provision of hundreds of documents, emails, and other information that he claimed, and I reasonably believed, to be true and accurate, regarding 1inMM's operations, investments, revenue, transactions, business relationships, and growing financing opportunities.  For example, Horwitz provided JJMT with what was reported to be 1inMM's "Annual Report" from 2015, a true and correct copy of which is attached hereto as

Exhibit 1.  Additional examples of documents, emails, and other information Horwitz

provided to JJMT include, but are not limited to, the following:

- Foreign Sales Agent (FSA) Purchase Agreements

- Licensing and Distribution Agreements with Netflix and HBO

- 1inMM and JJMT Promissory Notes

- Netflix Proposal

- Due Diligence questions and answers

- Communications with FSAs, Netflix, and HBO

Throughout the course of our dealings, in order to induce continued financing from JJMT in

exchange for promissory notes, Horwitz provided, among other things, more than 400

documents and contracts, as well as emails, and other materials regarding putative content

licensing transactions conducted by 1inMM that Horwitz represented, and I reasonably

believed, to be true and accurate.  Horwitz would provide these materials and other

documents regarding specific content licensing transactions to JJMT via email, secure

messenger application, and/or Box.  For example, Horwitz and 1inMM provided JJMT with

FSA agreements, promissory notes, distribution/licensing agreements, and other relevant

deal documents and communication for the following content titles:

- **HBO:** *Blood Quantum*; *Look Away*; *Bitter Harvest*.  True and correct copies of
  putative FSA agreements, promissory notes, and distribution/licensing agreements
  dated, respectively, July 16, 12, and 30, 2019 (*Blood Quantum*); August 15, 13, and
  27, 2019 (*Look Away*); October 02, 2019, September 27, 2019, and October 10, 2019
  (*Bitter Harvest*) are attached hereto as Exhibits 2(a)-(c) (*Blood Quantum*); 3(a)-(c)
  (*Look Away*); 4(a)-(c) (*Bitter Harvest*).

- **Netflix:** *Active Measures*; *Divide & Conquer*; *Lucia's Grace*.  True and correct
  copies of putative FSA agreements, promissory notes, and distribution/licensing
  agreements dated, respectively, December 17, 17, and 21, 2018 (*Active Measures*);
  December 17, 17, and 21, 2018 (*Divide & Conquer*); February 27 and 27, 2019, and

March 4, 2019 (*Lucia's Grace*) are attached hereto as Exhibits 5(a)-(c) (*Active Measures*); 6(a)-(c) (*Divide & Conquer*); 7(a)-(c) (*Lucia's Grace*).

11.     As noted above, JJMT's continued participation in its financing arrangement with 1inMM was induced in part by 1inMM's full and timely repayment with the specified amount of interest of promissory notes.  From the start of the JJMT financing arrangement described above until in or about late 2019, 1inMM did not default on any loans made by JJMT.

12.     From in or about mid 2015 until late 2019, JJMT's financing of 1inMM's content licensing transactions continued to grow.  During this time, JJMT provided financing to 1inMM in exchange for promissory notes with total principal value of approximately $485 million.  The amount repaid by 1inMM to JJMT during this period for these promissory notes, inclusive of specified interest, was approximately $440 million, some of which was redeployed by noteholders for future loans.  At present, JJMT currently has delinquent and unpaid notes owing from 1inMM with principal values of approximately $165MM (exclusive of interest) for amounts loaned in or about 2018 and 2019.  Collectively, the JJMT members represent JJMT's largest noteholders with approximately $42.5 million in principal value of notes outstanding, which is approximately 26% of the outstanding note principal owed to JJMT by 1inMM.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th  day of March, 2021 in Chicago , Illinois .

Matthew Schweinzger

>>>>> -----Original Message-----

>>>>> From: Matthew Schweinzger [mailto:mschweinzger@acrisure.com]

>>>>> Sent: Thursday, October 06, 2016 9:06 AM

>>>>> To: Steven Aronson

>>>>> Subject: RE: Jumbo Capital Management-New Investment Offering

>>>>>

>>>>> Steve,

>>>>>

>>>>> First and foremost, I want to make sure you indeed intend on including me here!  If not, no worries at all and I will delete/clear the files.  If you did - "thank you" as I greatly appreciate you thinking about me with an investment opportunity.  I don't believe you and I spoke about this, but I run a decent sized debt fund and a small equity fund that does similar types of RE investing along with growth equity investing.  To that end, we would always love to get a look at something like this.  In this particular case, our hurdle rates may be too high given current returns our debt investors are making (our lenders make 20% to 25% IRRs in the debt fund).

>>>>>

>>>>> If you or your boys have interest in discussing this, other investment opportunities or our debt fund, please let me know!  Thank you again for reaching out on this and if an accident, let me know and I'll delete right away!  PS - I still would love to grab a lunch, coffee or drink with your son in Chicago one of these days (Daniel, right?)...

>>>>>

>>>>> Thanks, Steve.

>>>>>

>>>>> Best,

>>>>>

>>>>> Matt

>>>>>

>>>>> Matthew Schweinzger

EXHIBIT 2

>>>>> Chief Acquisition Officer

>>>>> Acrisure

>>>>> Email: mschweinzger@acrisure.com

>>>>> Office: (312) 837-3415

>>>>> Cell: (269) 808-7072

>>>>> www.Acrisure.com

>>>>>

>>>>>

**From:** Matthew Schweinzger [mailto:mschweinzger@jjmtcap.com]
**Sent:** Sunday, October 09, 2016 11:49 PM
**To:** Steven Aronson
**Subject:** JJMT Investment Opportunity

Steve,

# EXHIBIT 3

As promised, ahead of our call tomorrow around 5pm ET, I wanted to share some more color on the opportunity I mentioned to you last week (JJMT Capital). I do ask that you keep all of this confidential – I do not share this with everyone and obviously do not want any conflict with Acrisure.

JJMT Capital is an investment fund I launched in 2014 with three other Partners in Chicago. The fund offers our investors a very low risk debt investment vehicle in which the loaned money is used for acquisition financing of film distribution rights. Mouth full I know, but let me try and simplify this concept: JJMT helps finance the purchase price for specific film's distribution rights in specific end markets (South America, Australia and New Zealand). We acquire the rights to distribute content from producers or their sales agents, then immediately sell those rights to one of three major platforms (Sony, HBO or Netflix). That transaction is typically completed in a 24 hour window. Those platforms have payback periods that range from 3 months to 1 year. The time it takes for the platform to pay us for the rights we sell them is exactly what JJMT helps to finance. During this sale process (the "flip"), JJMT makes money by negotiating higher sales prices from the Platforms while locking in lower purchase prices from the producers/their sales agents. That money is what we use to pay the investors in JJMT. To date, we've been able to clear a 20% IRR for our investors in every single film we've financed (60 in total and one to be funded at the end of this week). The vast majority of our sales go to HBO and this platform has a payback period of 6 months. To that end, our investors are in a short term investment, typically earning 20% to 25% IRR and use JJMT as an excellent outlet for excess cash that's otherwise in a checking account or low interest bearing money market fund.

If you're still interested after all that, here is a bit more detail:

Attached is a fairly detailed overview of our operation in a document titled JJMT Overview. Before diving in to that document, I wanted to provide an example so you have a good understanding of our process:

- Investors interested in JJMT typically commit a certain dollar amount to the fund where the Managing Partners of the fund can then call up to that committed amount from that specific investor. To make sure our investors are accredited, we have them execute a Subscription Agreement (attached for reference) – please note the dollar amount committed in this agreement is non-binding and we don't have you fund any dollars until a real opportunity is days from completion. Only then do we actually call your capital and have you send funds to our corporate account
- Let's say you are interested and commit up to $100,000. We then use that specific amount in the market as we look to acquire our next set of film distribution rights. You would execute the attached Subscription Agreement in the amount of $100,000 and we (the Managing Partners) pencil you in for up to the total amount you've committed
- Once we have a deal completely negotiated, signed up and ready (with the exception of funding), I circle back to you with all the deal specifics and make sure you're still good for up to $100,000. Those specifics come across through email and below is just one example of a deal we've completed/the details shared with investors. This acts as the "capital call" to our investors:

The Perfect Weapon

➢ Cast: Steven Seagal

➢ Director: Titus Paar

➢ Description: In the not too distant future, an elite assassin fails to terminate his target and finds himself on the run from the totalitarian state's secret government organization that employs him.

➢ Funding Date: 1/17/2016

➢ Return Profile: 6 month HBO deal with repayment date of 7/20/2016

➢ IRR: 25%

➢ Investment: $100,000

➢ Capital + Interest Returned: $112,0000

- Once you confirm you're interested in investing at a 25% IRR over about a six month hold period, I have you execute a short form Investment Commitment memo (example attached) which locks us into funding dates and assures you/we have appropriate bank account information
- You fund JJMT's corporate account on or before the capital call date and we send you a fully executed promissory note governing the transaction between you and JJMT (example in the back of the Subscription Agreement attached)
- About six months later, we send back the principal plus the interest earned in one lump sum payment ($112,000 in the example above)

This example outlines an investment where the distribution rights of the film are sold to HBO. We also sell to Sony – their model is a three month payback period vs. the six months with HBO, but also is in the form of a single bullet repayment. Additionally, we sell to Netflix – their model is a 12 month payback and also is in the form of a single bullet repayment. All transactions target returns at or above a 20% IRR for our investors, regardless of who we sell the distribution rights to. You'll see examples of the three different investment profiles on page 10 of the JJMT Overview attachment. Note, because of the short term nature of these investments, even a few days will drive a difference in the total dollars returned (page 10 outlines an HBO example where $100,000 returns $11,800 vs. the $12,000 in the example above).

Just a few last details and I'll wrap this up!

- Minimum investment is $25,000

- Typical range is all over the map – we have 108 investors and two are private equity firms. Of the 108, the largest has invested almost $6 million and the smallest is of course at the minimum ($25,000). Of all our investors, the average dollar amount of deployed capital is almost exactly $210,000

- The fund is just over $30 million now. We've deployed over $22 million of investor capital and over $7 million of Partner capital (my other three Partners and myself)

I'm sure you'll have several questions after taking a look, but I'm excited to talk through this with you and possibly get some of your capital to work at returns currently averaging ~25% IRR!  We have a great pipeline for October including an opportunity we will be funding this Friday (the 14th).  This Friday's opportunity has landed right at the 25% IRR mark.  **If you have interest, please let me know ASAP on this one.**  Otherwise, we can take it slow and you and I can talk through anything and everything you'd like on this.  Appreciate the time to review this – look forward to talking with you tomorrow.


Best,


Matt


**Matt Schweinzger**

Managing Partner

JJMT Capital,  LLC

P: (269) 808-7072

mschweinzger@jjmtcap.com



*"Investing With Creativity"*

# Investment Opportunity Overview



# CONFIDENTIALITY AND DISCLAIMERS

JJMT Capital has deemed all of the information to be presented and all information contained in these materials as strictly confidential and proprietary and to contain legally protectable trade secrets. The information is not generally known to the public.  By receiving these materials, recipients are agreeing to maintain all information contained in this presentation strictly confidential and to not to disclose the information to anyone, except within recipient's organization and to agents and advisors bound by duties of confidentiality or as otherwise required by law. The information presented and contained herein may not be reproduced or redistributed.

The information presented and contained herein contains certain statements that are "forward looking statements" and projections. Those statements may include, among others, discussions of the business strategy and JJMT Capital's expectations concerning investment results, future operations, profitability, and liquidity and capital resources. The forward looking statements and projections are necessarily based on certain assumptions and are intended to illustrate hypothetical results under those assumptions (not all of which are specified herein).  These assumptions may include general assumptions relating to economic and market conditions.  They also include assumptions based on good faith assessments by JJMT Capital managers.

Although JJMT Capital believes that the expectations reflected in the forward looking statements and projections are reasonable under the circumstances at the time they were prepared, it can give no assurance that such expectations will prove to be accurate.  These projections and other estimates may change without notice.  All phases of the operation of the JJMT Capital are subject to a number of uncertainties, risks and other influences, many of which are outside the control of JJMT Capital and any one of which, or a combination of which, could materially affect whether the forward looking statements and projections ultimately prove to be accurate. Actual results will likely differ from projected results, and such differences may be material. JJMT Capital undertakes no duty or obligation to update the forward looking statements and projections, whether as a result of new information, future events or otherwise.

Recipients of this information should not view the past or projected performance of JJMT Capital as indicative of future results, and there is a possibility of loss in connection with an investment described in these materials.  These materials should be read in conjunction with the Subscription Agreement provided by JJMT Capital, including the form of Promissory Note included as an appendix to such Subscription Agreement.  Any summary or other statements regarding the terms of such note contained in this Investment Opportunity Overview are qualified in their entirety by the actual terms of such note.



# JJMT CAPITAL OVERVIEW

➢ JJMT Capital ("JJMT") is a Delaware LLC focused on providing financing to 1inMM Capital for the purposes of acquiring film distribution rights

    ➢ 1inMM Capital is a sister entity to 1inMM Productions (collectively "1inMM")

➢ 1inMM is a film distribution company based in Los Angeles that engages in financing, production, and distribution of films throughout Latin America, Australia, and New Zealand

➢ 1inMM was founded in 2012 by Zach Horwitz and his partners with a significant amount of committed capital from a well known investor base

➢ In its current geographies, 1inMM is a top distribution company

➢ Within its distribution business segment, 1inMM's business model consists of purchasing the film distribution rights from Producers and selling those rights to Platforms including HBO, SONY, Netflix, Showtime, basic cable, etc.

➢ 1inMM's revenue model consists of earning a royalty on the revenue stream of every film it "licenses" to Platforms

➢ JJMT is one of the sources of capital for 1inMM – thereby providing 1inMM the financial flexibility to purchase film rights from independent film Producers/Financiers



# INDUSTRY OVERVIEW
## MOVIE PRODUCTION SUPPLY CHAIN

## **Creation**

## **Distribution**

## **Exhibition**

### Film Producers / Financiers

### Sales Agents

### Distribution Companies**

### Theaters / Platforms

- Formulating Idea
- Seeking financing
- Casting
- Direction
- Production
- Filming
- Editing / prints
- Soundtrack

**Players:**
- **Major Studios**: Warner Bros, Paramount, Universal, Disney
- **Mini-Majors**: Lionsgate, Weinstein Co., MGM
- **Independent film producers**

Hired by Producers to assist in:
- Marketing / advertising
- Packaging
- Promotion
- Drafting / sale of geographic distribution rights
- Delivery of final material to distribution partners

**Players:**
- **IM Global**
- Exclusive Media Group
- Block Entertainment
- Nu Image
- Film Nation
- Millennium Films
- Radiant

- Act as aggregators of content for Platforms
- Purchase & sell distribution rights (geographically based)
- Bundling of content
- Dubbing languages

**Players:**
- **1inMM**
- Sun Distribution
- Reliance Entertainment
- Entertainment One
- Exclusive
- Film Nation

- Cinema screening
- TV screening
- Video/DVD release
- Subscription-based services / streaming

**Players:**
- **Sony**
- **HBO**
- **Netflix**
- Amazon
- Hulu
- Major Theaters
- ShowTime
- TV Channels



**JJMT**
CAPITAL

# ILLUSTRATIVE TRANSACTION OVERVIEW



Note: JJMT loans funds to the entity 1inMM Capital, not 1inMM Productions



# TRANSACTIONS COMPLETED TO DATE

➢ To date, the entities controlled by the Managing Partners of JJMT have financed over 50 of 1inMM's 300+ transactions

    ➢ The first transaction was completed in Q1 2014, with the majority beginning in 2015

### CY 2014

| Date | Customer | Capital Deployed |
|---|---|---|
| Mar-14 | Sony Pictures | $37,000 |
| Oct-14 | Sony Pictures | $297,000 |
| Nov-14 | Sony Pictures | $32,500 |
| Dec-14 | HBO Studios | $36,000 |
| **Total** | | **$402,500** |

### CY 2015

| Date | Customer | Capital Deployed |
|---|---|---|
| Jan-15 | HBO Studios | $81,100 |
| Feb-15 | HBO Studios | $265,000 |
| Feb-15 | HBO Studios | $263,500 |
| Mar-15 | HBO Studios | $38,250 |
| Mar-15 | HBO Studios | $225,500 |
| Apr-15 | HBO Studios | $325,250 |
| Jun-15 | HBO Studios | $265,000 |
| Jun-15 | HBO Studios | $253,500 |
| Aug-15 | HBO Studios | $235,750 |
| Aug-15 | HBO Studios | $170,500 |
| Aug-15 | HBO Studios | $416,000 |
| Sep-15 | HBO Studios | $490,750 |
| Sep-15 | HBO Studios | $266,750 |
| Sep-15 | HBO Studios | $195,675 |
| Oct-15 | HBO Studios | $680,650 |
| Oct-15 | HBO Studios | $375,500 |
| Oct-15 | HBO Studios | $285,950 |
| Nov-15 | HBO Studios | $675,500 |
| Nov-15 | HBO Studios | $590,000 |
| Dec-15 | HBO Studios | $485,650 |
| Dec-15 | HBO Studios | $375,500 |
| **Total** | | **$6,961,275** |

### 2016 - YTD

| Date | Customer | Capital Deployed |
|---|---|---|
| Jan-16 | Netflix | $550,000 |
| Jan-16 | Netflix | $550,000 |
| Jan-16 | HBO Studios | $655,900 |
| Jan-16 | HBO Studios | $690,500 |
| Feb-16 | HBO Studios | $830,000 |
| Feb-16 | Sony Pictures | $610,000 |
| Mar-16 | HBO Studios | $690,750 |
| Apr-16 | HBO Studios | $725,500 |
| Apr-16 | HBO Studios | $780,250 |
| Apr-16 | HBO Studios | $680,750 |
| Apr-16 | HBO Studios | $905,500 |
| Apr-16 | HBO Studios | $210,000 |
| May-16 | HBO Studios | $615,000 |
| May-16 | HBO Studios | $635,000 |
| May-16 | HBO Studios | $910,500 |
| May-16 | HBO Studios | $960,750 |
| Jul-16 | HBO Studios | $912,565 |
| Jul-16 | HBO Studios | $922,870 |
| Jul-16 | HBO Studios | $588,750 |
| Jul-16 | HBO Studios | $605,900 |
| Aug-16 | HBO Studios | $610,750 |
| Aug-16 | HBO Studios | $697,000 |
| Aug-16 | HBO Studios | $440,105 |
| Aug-16 | HBO Studios | $310,000 |
| Aug-16 | HBO Studios | $550,240 |
| Aug-16 | HBO Studios | $390,000 |
| Sep-16 | HBO Studios | $520,670 |
| Sep-16 | HBO Studios | $515,000 |
| Sep-16 | HBO Studios | $390,800 |
| Oct-16 | HBO Studios | $310,550 |
| Oct-16 | HBO Studios | $325,515 |
| Oct-16 | HBO Studios | $990,820 |
| Oct-16 | HBO Studios | $955,000 |
| Oct-16 | HBO Studios | $877,230 |
| Oct-16 | HBO Studios | $810,550 |
| **Total** | | **$22,724,715** |

### Activity Over Time

| | |
|---|---|
| **CY 2014** | |
| # of films | 4 |
| Average Price | $100,625 |
| **CY 2015** | |
| # of films | 21 |
| Average Price | $331,500 |
| **CY 2016 - YTD** | |
| # of films | 35 |
| Average Price | $649,275 |

### Since Inception

| | |
|---|---|
| **Total # of Films** | |
| *# of Sony Films* | *4* |
| *# of HBO Films* | *54* |
| *# of Netflix Films* | *2* |
| **Grand Total** | **60** |
| Total Capital Deployed | $30,088,490 |
| Largest Single Transaction | $990,820 |
| Average Price | $501,475 |

The source of this capital comes from the founding partners of JJMT and select outside investors



**JJMT** CAPITAL

CONFIDENTIAL INFORMATION

# TRANSACTIONS COMPLETED TO DATE CONT'D…

         

        

          

          

         

Not pictured: *Custody, The Journey, Under Fire, American Dream, The Vigilante, Living with the Dead*
Note: the above films represent transactions involving financing provided by JJMT or other entities controlled by the Managing Partners of JJMT

# NOTABLE FILMS

| Film Title | | Director | Year | Cast |
|---|---|---|---|---|
| | *Imperium* | Daniel Ragussis | 2016 | Daniel Radcliffe, Nestor Carbonell, Toni Collette |
| | *Carol* | Todd Haynes | 2015 | Cate Blanchett, Rooney Mara, Sarah Paulson |
| | *Eye in the Sky* | Gavin Hood & Colin Firth | 2016 | Helen Mirren, Alan Rickman, Aaron Paul |
| | *High-Rise* | Ben Wheatley | 2015 | Tom Hiddleston, Jeremy Irons, Sienna Miller |
| | *The Adderall Diaries* | Pamela Romanowsky | 2015 | James Franco, Amber Heard, Christian Slater |
| | *The Last Five Years* | Richard LaGravenese | 2014 | Anna Kendrick, Jeremy Jordan, Tamar Mintz |



JJMT
CAPITAL

# HISTORIC AND FUTURE ANTICIPATED DEAL FLOW

➤ 1inMM's historical and projected deal flow is shown below.  Please note that 1inMM has **never** experienced a transaction where HBO, SONY, or Netflix failed to make full payment for the acquisition content

- ➤ **2013**: 22 films

- ➤ **2014**: 49 films

- ➤ **2015**: 71 films

- ➤ **2016**: between 110-130 films

## Anticipated 2016 1inMM Deal Flow by Month

Film Festival Schedule

| Month | Major Festival |
|-------|----------------|
| January | Sundance |
| February | Berlin |
| March | South by Southwest (SXSW) |
| April | Hong Kong |
| May | Cannes |
| June | Indie & LA |
| July | Small Festivals |
| August | Telluride |
| September | Toronto & Venice |
| October | Small Festivals |
| November | American Film Market |
| December | Small Festivals |



CONFIDENTIAL INFORMATION



9

# ILLUSTRATIVE INVESTMENT INTO JJMT

➢ Investments into JJMT are structured as loans (promissory notes) and generally short term in nature (3 months, 6 months, or 1 year)

  ➢ All loans are structured as <u>zero coupon</u> instruments and paid in full at the maturity date

➢ To date, 6 month loans have been the most common security

➢ On or prior to maturity of the note, investors will have their capital (plus interest) returned

➢ JJMT anticipates providing financing to 1inMM for 30-40 films throughout the course of any calendar year, and so expects to have ample opportunity to deploy capital

| Sony - 3 months (zero coupon) | | |
|---|---|---|
| Loan Amount | $100,000.0 | |
| % Interest Rate | 25.0% | |
| Maturity Value | $105,735.0 | |
| **Illustrative Cash Flows** | | |
| Dates | 1/1/2016 | 4/1/2016 |
| Cash Flows | ($100,000.0) | $105,735.0 |
| IRR | | 25.0% |
| Total Profit | $5,735.0 | |

| HBO - 6 months (zero coupon) | | |
|---|---|---|
| Loan Amount | $100,000.0 | |
| % Interest Rate | 25.0% | |
| Maturity Value | $111,800.0 | |
| **Illustrative Cash Flows** | | |
| Dates | 1/1/2016 | 7/1/2016 |
| Cash Flows | ($100,000.0) | $111,800.0 |
| IRR | | 25.0% |
| Total Profit | $11,800.0 | |

| Netflix - 12 months (zero coupon) | | |
|---|---|---|
| Loan Amount | $100,000.0 | |
| % Interest Rate | 25.0% | |
| Maturity Value | $125,000.0 | |
| **Illustrative Cash Flows** | | |
| Dates | 1/1/2016 | 1/1/2017 |
| Cash Flows | ($100,000.0) | $125,000.0 |
| IRR | | 25.0% |
| Total Profit | $25,000.0 | |

Note: the above examples are illustrative in nature and actual results may differ across transactions
IRR is equivalent to the Yield to Maturity or "YTM" for each loan security listed above
Zero Coupon Bond Value = Maturity Value / (1+r)^t, where r = interest rate, and t = time to maturity


JJMT
CAPITAL

# INVESTOR RETURNS

| Summary of Investor Capital Deployed to date | |
|---|---|
| Number of Unique Investors | 108 |
| Total Investor Capital Deployed[1] | $22,690,000 |
| Largest Single Investor[1] | $5,810,000 |
| Average Investor Deployment[1] | $210,000 |
| **Transaction specific detail** | |
| *Number of 3 month deals (Sony)* | *4* |
| *Number of 6 month deals (HBO)* | *54* |
| *Number of 2 year deals (Netlfix)* | *2* |
| **Total Films Financed** | **60** |

[1]Figures rounded to the nearest multiple of $10k
\*\*Netflix Deals were previously structured as a 2 year deal, paid back each quarter in 8 equal installments. Recently, a new payment structure of 1 year (zero coupon) was negotiated with Netflix.

## Overview of Results

➤ Entities controlled by the Managing Partners of JJMT have deployed ~$22.7mm of investor capital since April 2015

➤ Most common investment period for any single deal has been approximately 6 months (HBO deals)



**JJMT**
CAPITAL

# INVESTMENT OPPORTUNITY

➢ JJMT continues to raise and deploy capital in order to meet the needs of 1inMM

➢ As previously indicated, any investment into JJMT will be structured as a loan to JJMT

➢ Each loan agreement will be a separate and unique investment in which capital will be called shortly before the funding date of each film (generally 2-3 business days)

➢ It is important to note that an investment in JJMT (through the loan structure outlined in this presentation) does not give an investor any specific rights in 1inMM or in any film that may ultimately be financed through his/her investment



# INVESTMENT PROCESS

- ➢ Investors interested in loaning funds to JJMT will be required to follow the following process:

    - ➢ The investor will be required to complete and sign a Subscription Agreement and return it to JJMT. Please read the Subscription Agreement carefully as an investor are making a number of important commitments by signing and returning the Subscription Agreement. However, by signing a Subscription Agreement, an investor is not committing to invest any particular amount, but is providing JJMT with an indication of the amount he/she _may be_ interested in investing

    - ➢ JJMT will review the investor's Subscription Agreement to determine if he/she meets certain minimum qualifications to invest

    - ➢ JJMT has no obligation to offer the investor any opportunity to invest in a note. If JJMT offers the investor an opportunity to invest in a note, it will present the investor with an "Investment Commitment" form with the details of the particular note to be issued by JJMT

    - ➢ If the investor is interested in investing, he/she would need to sign and return the "Investment Commitment" and fund the principal amount of the note by the Investment Date specified in the "Investment Commitment" agreement

    - ➢ Upon receipt of funding, JJMT will issue the investor a promissory note

    - ➢ On or before the Maturity Date of the note issued to the investor, JJMT would be required to repay the note with all accrued interest

    - ➢ JJMT may allow the investor to invest in more than one note at any particular time



# RISK FACTORS

➢ Making an investment in JJMT (through the loan structure outlined in this presentation) involves risks, including but not limited to the following:

  ➢ Your loan to JJMT is not secured by any collateral. If JJMT fails to repay your loan, your recourse would be to file a lawsuit against JJMT

  ➢ JJMT intends to fund the repayment of your loan by collecting on loans JJMT makes to 1inMM Capital. If 1inMM fails to repay a loan from JJMT, there is a risk that JJMT will not have sufficient cash to repay your loan to JJMT

  ➢ Neither JJMT nor any of its representatives are providing any tax or legal advice regarding your investment. You should consult with your own legal and tax advisors with respect to any investment in JJMT

  ➢ You may not sell or transfer the note you receive from JJMT except in very limited circumstances

  ➢ By signing a Subscription Agreement and any subsequent Investment Commitment, you are making a number of important commitments to JJMT. If any of these commitments turn out to be inaccurate, you may have liability to JJMT and other investors for related damages. You should carefully read the Subscription Agreement before you sign it and before you sign each Investment Commitment





**CAPITAL**

*"Investing With Creativity"*

**For further information please reach out to any of our Managing Partners:**

**Jacob Wunderlin**
Managing Partner
jwunderlin@jjmtcap.com

**Joseph deAlteris**
Managing Partner
jdealteris@jjmtcap.com

**Matthew Schweinzger**
Managing Partner
mschweinzger@jjmtcap.com

**Tyler Crookston**
Managing Partner
tcrookston@jjmtcap.com

www.jjmtcap.com



# SUBSCRIPTION AGREEMENT

The investor named on the signature page below (the "*Investor*") is completing and signing this Subscription Agreement (the "*Agreement*") for the purposes of (1) indicating a <u>potential interest</u> in subscribing to invest in one or more promissory notes, substantially in the form attached as <u>Appendix A</u> to this Agreement (each, a "*Note*"), to be issued by JJMT Capital, LLC, a Delaware limited liability company ("*JJMT*"), (2) providing certain information to JJMT to allow JJMT to determine whether the Investor is qualified to invest in one or more Notes, and (3) making certain representations and warranties in connection with any such possible investment.

When used in this Agreement, "*Offering Materials*" means, collectively, the "Investor Opportunity Overview" as previously provided to the Investor, and this Agreement, including the form Note attached as an appendix to this Agreement.

The Investor understands and acknowledges that JJMT is entitled to rely conclusively on the information provided in this Agreement by the Investor. Neither JJMT nor any of its members, employees, representatives, or agents shall incur any liability in respect of any action taken (or not taken) in reliance on any information provided by the Investor in this Agreement.

**1. Nature of Subscription.** By signing this Agreement, the Investor is <u>not making any binding commitment</u> to purchase or otherwise acquire any Note or to make any other investment in JJMT. If the Investor desires to make a binding commitment to purchase a Note, the Investor understands it must sign and return to JJMT one or more "Investment Commitments" in the form provided by JJMT (each, a "*Commitment*"). The Investor understands that JJMT has no obligation to offer or present any Commitment to the Investor and, upon its receipt of a signed Commitment from the Investor, JJMT has no obligation to accept any such Commitment or issue any Note to the Investor. If the Investor submits any one or more signed Commitments to JJMT on or after the date of this Agreement, each such Commitment shall become a part of this Agreement, as if incorporated in this Agreement in its entirety, and the Investor will be deemed to have made all representations, warranties, covenants, and other agreements set forth in this Agreement as of the date of each such subsequent Commitment.

**2. Accredited Investor Status.** The Investor is an "accredited investor" as that term is defined in Rule 501 of Regulation D issued by the Securities and Exchange Commission (the "*SEC*") under the Securities Act of 1933 (the "*Securities Act*") because the Investor satisfies one or more of the following conditions (please check all that apply):

☐ The Investor is a natural person whose net worth (*i.e.,* excess of total assets over total liabilities), excluding the value of the Investor's primary residence, either individually or jointly with the Investor's spouse, exceeds $1,000,000.[1]

---

[1] For purposes of calculating net worth, you should include as a liability any mortgage or other debt that is secured by your primary residence if the debt exceeds the estimated fair market value of your primary residence (but you need not otherwise include debt that is secured by your primary residence).

☐    The Investor is a natural person who in each of the last two calendar years had individual income[2] in excess of $200,000, or joint income[3] with his or her spouse in excess of $300,000, and reasonably expects to have individual income in excess of $200,000 or joint income in excess of $300,000 in the current calendar year.

☐    The Investor is a bank as defined in Section 3(a)(2) of the Securities Act; a savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act, whether acting in its individual or fiduciary capacity; a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934; an insurance company as defined in Section 2(13) of the Securities Act; an investment company registered under the Investment Company Act of 1940 (the "*1940 Act*"), or a business development company as defined under Section 2(a)(48) of the Securities Act; a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974, if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons who are "accredited investors."

☐    The Investor is a private business development company, as defined in Section 202(a)(22) of the Investment Advisers Act of 1940.

☐    The Investor is a corporation, Massachusetts or similar business trust, partnership, or any organization described in Section 501(c)(3) of the Code, in each case not formed for the specific purpose of acquiring a Note and with total assets in excess of $5,000,000.

☐    The Investor is a trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring a Note, whose purchase is directed by a person who has such knowledge and experience in financial and business matters that such person is capable of evaluating the merits and risks of an investment in a Note.

☐    The Investor is a self-directed plan (*i.e.,* an IRA, self-directed benefit plan, Keogh Plan, or other tax-qualified defined contribution plan in which a participant may exercise control over the investment of assets credited to his or her account) in which all persons directing the investment into a Note are "accredited investors" because each participant's net worth, excluding the value of the primary residence of the participant, either individually or jointly

---

[2] Individual income means your adjusted gross income ("*AGI*") as reported for federal income tax purposes, less any income attributable to a spouse or to property owned by a spouse, plus the following amounts (but not including any amounts attributable to a spouse or to property owned by a spouse): (a) the amount of any interest income received which is tax-exempt under Section 103 of the Internal Revenue Code (the "*Code*"), (b) the amount of losses claimed as a limited partner in a limited partnership (as reported on Schedule E of Form 1040), and (c) any deduction claimed for depletion under Section 611 *et. seq.* of the Code.

[3] Joint income with a spouse means AGI as reported for federal income tax purposes, including any income attributable to a spouse or to property owned by a spouse, plus the following amounts (including any amounts attributable to a spouse or to property owned by a spouse): (a) the amount of any interest income received which is tax-exempt under Section 103 of the Code; (b) the amount of losses claimed as a limited partner in a limited partnership (as reported on Schedule E of Form 1040); and (c) any deduction claimed for depletion under Section 611 et. seq. of the Code.

*JJMT Capital, LLC*                                                    *Confidential*

with his or her spouse, exceeds $1,000,000, or has had in each of the last two calendar years individual income in excess of $200,000 or joint income with his or her spouse in excess of $300,000, and reasonably expects to have individual income in excess of $200,000 or joint income in excess of $300,000 in the current calendar year. (See footnotes 1 through 3 above.)

☐   The Investor is an entity in which all of the equity owners are "accredited investors" under one or more of the above paragraphs. **If this box is checked, please list the name of any person having a beneficial interest in the Investor and check all of the appropriate box(es):**

| Equity Owner Name | The owner is a natural person whose net worth, excluding the value of his or her primary residence, either individually or jointly with his or her spouse, exceeds $1,000,000. (See footnote 1 above.) | The owner is a natural person who in each of the last two calendar years had individual income in excess of $200,000, or joint income with his or her spouse in excess of $300,000, and reasonably expects to have individual income in excess of $200,000 or joint income in excess of $300,000 in the current calendar year. (See footnotes 2 and 3 above.) |
|---|---|---|
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |

**3.     Acknowledgements.** The Investor understands and acknowledges that (a) an investment in one or more Notes involves a high degree of risk and is suitable only for sophisticated investors who qualify as "accredited investors" under the Securities Act; (b) the Notes have not been registered under the Securities Act or the securities ("blue sky") laws of any state; (c) the Notes are being offered and sold in reliance upon exemptions from registration provided under the Securities Act, as well as specific exemptions under state securities ("blue sky") laws; and (d) JJMT is relying on the representations and agreements of the Investor contained in this Agreement for the purpose of determining whether JJMT's issuance of a Note to the Investor meets the requirements for the exemptions described in this Section.

**4.     Representations and Warranties.** The Investor represents and warrants to JJMT, and intends that JJMT and its members, employees, agents, and other representatives rely on these representations and warranties for the purpose of establishing the acceptability of this Agreement:

(a)     The address of the Investor's primary residence set forth in this Agreement is the true and correct address of the Investor's primary residence, and the Investor has no present intention of changing such primary residence to another state or jurisdiction. The Investor agrees to promptly notify JJMT if the information contained in this Agreement is or becomes incorrect.

(b)       The Investor has received a copy of and has carefully read the Offering Materials, including this Agreement.  The Investor is entering into this Agreement relying solely on the information set forth in this Agreement and the other Offering Materials; neither JJMT nor any person purporting to act on behalf of JJMT have made any representations or warranties of any kind or nature to induce the Investor to enter into this Agreement except as specifically set forth in this Agreement or the other Offering Materials; the Investor recognizes that the Offering Materials do not constitute investment, accounting, tax, or legal advice and the Investor is not relying on JJMT or any person purporting to act on behalf of JJMT for guidance with respect to tax or other legal or economic considerations; and the Investor has been afforded an opportunity to ask questions of, and receive answers from, JJMT and persons authorized to act on behalf of JJMT concerning the terms and conditions of an investment in one or more Notes and has been afforded the opportunity to obtain any additional information necessary to verify the accuracy of information in the Offering Materials. The Investor has made his, her, or its own inquiry and analysis with respect to an investment in the Notes and, based solely on such analysis, the Investor has been able to make an informed decision to subscribe to invest in one or more Notes.

(c)       The Investor has not distributed any of the Offering Materials to any person (other than the Investor's legal and financial advisors), without the prior written consent of the members of JJMT. Furthermore,  no person other than the Investor has used the Offering Materials provided to the Investor.

(d)       Any Notes acquired by the Investor will be for the Investor's own account and for investment purposes only, and not with a view to the distribution or resale of any Note, in whole or in part, to anyone else.

(e)       The Investor understands that an investment in one or more Notes involves substantial risks, including those set forth in the Offering Materials, and that an investment in the Notes is not suitable for all persons.  The Investor specifically understands that an investment in the Notes could result in an entire loss of the Investor's investment.

(f)       The Investor acknowledges that the transferability of the Notes is severely limited and that the Investor must continue to bear the economic risk of an investment in a Note for an indefinite period as the Notes have not been registered under the Securities Act or under any other state securities laws, and therefore cannot be offered or sold unless they are subsequently registered under such acts or an exemption from such registration is available. The Investor could afford a complete loss of the Investor's investment in any Notes acquired by the Investor from JJMT. The Investor understands and agrees that any Note issued to the Investor will bear a legend evidencing the restrictions on the transfer of the Note.

(g)       The Investor understands that no federal or state governmental agency or authority has passed upon the Notes or made any finding or determination concerning the fairness, advisability, or merits of an investment in the Notes.

(h)       The Investor has such knowledge and experience in financial and business matters that the Investor is capable of evaluating the merits and risks of an investment in the Notes.  To the extent necessary, the Investor has retained and relied upon appropriate professional advice regarding the investment, tax, and legal merits and consequences of an investment in the Notes and the execution of this Agreement.

(i)       The Investor understands that the Notes are being offered by JJMT only to a limited number of "accredited investors," as that term is defined in Rule 501 of Regulation D issued by the SEC under the Securities Act, and not to the public at large.  By executing this Agreement, the Investor represents that the representations and warranties of the Investor set forth in this Agreement are true and correct, and the Investor qualifies as an "accredited investor."

(j)      The Investor, if it is an entity, represents that it was not organized for the specific purpose of acquiring the Notes. If the Investor is a corporation, the Investor represents that the corporation's governing instruments permit, and it is duly qualified to make, an investment in one or more Notes and that execution and delivery of this Agreement have been duly authorized by all required corporate action. If the Investor is a partnership, trust, limited liability company (LLC), or other organization, the Investor represents it has the authority to invest in one or more Notes and that each of its partners, beneficiaries, principals, or members satisfies the suitability requirements set forth in this Agreement.

(k)      If the Investor is acting as trustee, agent, representative, or nominee for any person (a "*Beneficial Owner*"), the Investor understands and acknowledges that the representations, warranties, and agreements made in this Agreement are made by the Investor with respect to both the Investor and each Beneficial Owner. The Investor further represents and warrants that it has all requisite power and authority from each such Beneficial Owner to execute and perform the obligations under this Agreement. The Investor agrees to indemnify JJMT and its members, employees, agents, and other representatives for any and all costs, fees, and expenses (including legal fees) in connection with any damages resulting from the Investor's misrepresentation or misstatement contained in this Agreement, or the assertion of the Investor's lack of proper authorization from any Beneficial Owner to enter into this Agreement or perform the obligations of this Agreement.

(l)      The Investor acknowledges and agrees that JJMT has the right, in its absolute discretion, to reject the subscription of the Investor for any reason or for no reason.

**5.**      **Governing Law**.  The Investor agrees that, notwithstanding the place where this Agreement may be executed, all the terms and provisions of this Agreement shall be construed in accordance with and governed by the laws of the State of Delaware, without regard to principles of conflicts of laws. The Investor irrevocably agrees that any suit, action, or proceeding with respect to this Agreement and any or all transactions relating to this Agreement shall be brought in the U.S. federal and state courts in Cook County, Illinois.

**6.**      **Indemnification.**  The Investor agrees to hold JJMT and its members, employees, agents, and other representatives harmless from all expenses, liabilities, and damages (including reasonable attorneys' fees) resulting of any breach of any of the representations, covenants, or other agreements contained in this Agreement.

**7.**      **Payments.**  The Investor agrees that any checks sent to the Investor's address provided to JJMT, or any wire transfers (or ACH payments) sent to the account provided by the Investor to JJMT, will constitute payment to the Investor and relieve JJMT of any further obligation to the Investor with respect to the amounts so paid.

**8.**      **Reliance on Investor Instructions.**  The Investor authorizes JJMT to accept and execute any instructions with respect to this Agreement or any Notes given by the Investor in written form, including by email or by fax. JJMT may rely conclusively on and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions, or other instrument believed in good faith to be genuine or to be signed by properly authorized persons acting on behalf of the Investor.

**9.**      **Miscellaneous.**

(a)      This Agreement is not transferable or assignable by the Investor.

(b)    This Agreement, together with its appendix and each Commitment signed and submitted by the Investor to JJMT, contains the entire agreement between the parties regarding its subject matter and supersedes any previous and contemporaneous negotiations, representations, and agreements between the parties with respect to such subject matter, whether written or verbal.

(c)    No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless in writing signed by both the Investor and JJMT.  Waiver of a particular breach of this Agreement shall not be considered to be a waiver of any other breach.  No course of dealing between or among the Investor and JJMT shall be deemed effective to modify, amend, or discharge any part of this Agreement or any rights or obligations of either the Investor or JJMT.

(d)    Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law; however, if any provision of this Agreement is held to be invalid under applicable law, such provision shall be enforced to the maximum extent possible, and the validity of the remaining provisions of this Agreement shall not be affected, shall remain in full force and effect, and shall be enforced to the maximum extent permitted by law.

(e)    This Agreement shall inure to the benefit of JJMT and its successors and assignees. The Investor agrees JJMT (and its successors and assignees) may assign this Agreement in whole or in part to any other person.

*[Signature page appears on the following page.]*

*JJMT Capital, LLC* *Confidential*

The Investor has executed this Subscription Agreement as of the date set forth below.

| | |
|---|---|
| **Date of Signature:** | |
| **Indicate Aggregate Amount Investor May be Interested in Investing[4]:** | |
| **Name of Investor:** | |
| **Signature of Investor:** | |
| **Title (if Investor is not a natural person):** | |
| **Signature of Joint Investor (if applicable):** | |
| **Title of Joint Investor (if applicable):** | |
| **Principal Residence of Investor (if Investor is a natural person or an IRA or trust):** | |
| **State of Organization (if Investor is any other entity):** | |

---

[4] See Section 1 of this Subscription Agreement.

## <u>APPENDIX A</u>

### <u>FORM OF PROMISSORY NOTE</u>

$_____                                                     MM/DD/YYYY

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company (the "<u>JJMT</u>"), and is payable to _____ ("the <u>Investor</u>"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture entitled "_____."

1.    **<u>Agreement to Pay.</u>** For value received, JJMT promises to pay to the order of the Investor the principal sum of _____ ($_____) plus interest due thereon of _____ ($_____) (the "Interest") for an aggregate amount of _____ ($_____) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to The Investor in one balloon payment on or before _____ (the "<u>Maturity Date</u>"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2.    **<u>Prepayment.</u>** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3.    **<u>Unsecured.</u>** This Note is unsecured.

4.    **<u>Default.</u>** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

     <u>Monetary.</u> JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

     <u>Performance of Obligation.</u> JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

     <u>Bankruptcy; Insolvency; Dissolution.</u> (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5.    **<u>Remedies.</u>** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent,

and may be pursued singularly, successively or together, at the sole discretion of the Investor, and may be exercised as often as occasion therefor shall arise.  No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by The Investor and then only to the extent specifically set forth in such written waiver.  A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6.**      **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by The Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7.**      **Waiver.**  JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8.**      **Miscellaneous.**  The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A.      All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B.      The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns.  This Note shall inure to the benefit of and may be enforced by The Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT.  The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C.      If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D.      Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E.      This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9.**      **Governing Law.**  This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

**10.** **Extensions Granted by The Investor**. All endorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

**11.** **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

**12.** **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

*JJMT Capital, LLC*                                                    *Confidential*

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____
Name: Joseph deAlteris
Title: Managing Member


By:_____
Name: Matthew Schweinzger
Title: Managing Member


By:_____
Name: Jacob Wunderlin
Title: Managing Member


By:_____
Name: Tyler Crookston
Title: Managing Member

# INVESTMENT COMMITMENT

This Investment Commitment is provided as an addendum to the Subscription Agreement (the "*Subscription Agreement*") signed and provided by the investor identified below (the "*Investor*") to JJMT Capital, LLC, a Delaware limited liability company ("*JJMT*"), with respect to an investment by the Investor in one or more promissory notes (each, a "*Note*") to be issued by JJMT.

By signing this Investment Commitment, the Investor is agreeing to the following:

1.     All information in the Subscription Agreement remains true and correct in all respects as of the date of the Investor's signature below, including (but not limited to) the fact that the Investor qualifies as an "accredited investor" under the federal securities laws.

2.     The Investor agrees to purchase a Note to be issued by JJMT in substantially the form attached as <u>Appendix A</u> to the Subscription Agreement, but with the following terms:

| | |
|---|---|
| Principal Amount: | $100,000.00 |
| Investment Date: | *January 17th, 2016 (no later than 3:00pm ET)* |
| Issue Date: | *The Note will be issued on the date JJMT receives an amount of cash from the Investor equal to the Principal Amount noted above (the "Investment Date").* |
| Interest Amount: | $12,000.00 |
| Maturity Date: | *July 20th, 2016 (no later than 3:00pm ET)* |

3.     The investor agrees to transfer an amount of cash equal to the "Principal Amount" to JJMT no later than the Investment Date stated above.

> **JJMT Wiring Instructions:**
> **Beneficiar**y: JJMT Capital LLC
> **Bank Nam**e: J.P. Morgan Chase
> **Addres**s: 1 Chase Manhattan, New York, NY 10005
> **ABA / Routing #:**
> **Account #:**

4.     JJMT agrees to transfer an amount of cash equal to the "Principal Amount" plus "Interest Amount" no later than the Maturity date stated above.

> **Investor Wiring Instructions:**
> **Beneficiar**y: John Doe
> **Bank Nam**e: John Doe's Bank
> **Bank Addres**s: 123 State Street
> **ABA / Routing #:** 111-111-111
> **Account #:** 222-222-222
> **SSN / FEIN**: 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
> **Personal Address**: 456 One Street, Chicago IL, 60642

*JJMT Capital, LLC*                                                     *Confidential*

Signed and dated:

| Investor:<br>**John Doe** | Date of Signature:<br>1/16/2016 |
|---|---|
| Signature of Investor:<br>**John Doe** | Signature of Joint Investor *(if applicable)*: |
| Title *(if Investor is not a natural person)*: | Title *(if Investor is not a natural person)*: |

# JJMT

## CAPITAL

*"Investing With Creativity"*

## Investment Opportunity Overview

EXHIBIT 4

# CONFIDENTIALITY AND DISCLAIMERS

JJMT Capital has deemed all of the information to be presented and all information contained in these materials as strictly confidential and proprietary and to contain legally protectable trade secrets. The information is not generally known to the public. By receiving these materials, recipients are agreeing to maintain all information contained in this presentation strictly confidential and to not to disclose the information to anyone, except within recipient's organization and to agents and advisors bound by duties of confidentiality or as otherwise required by law. The information presented and contained herein may not be reproduced or redistributed.

The information presented and contained herein contains certain statements that are "forward looking statements" and projections. Those statements may include, among others, discussions of the business strategy and JJMT Capital's expectations concerning investment results, future operations, profitability and liquidity and capital resources. The forward looking statements and projections are necessarily based on certain assumptions and are intended to illustrate hypothetical results under those assumptions (not all of which are specified herein). These assumptions may include general assumptions relating to economic and market conditions. They also include assumptions based on good faith assessments by JJMT Capital managers.

Although JJMT Capital believes that the expectations reflected in the forward looking statements and projections are reasonable under the circumstances at the time they were prepared, it can give no assurance that such expectations will prove to be accurate. These projections and other estimates may change without notice. All phases of the operation of the JJMT Capital are subject to a number of uncertainties, risks and other influences, many of which are outside the control of JJMT Capital and any one of which, or a combination of which, could materially affect whether the forward looking statements and projections ultimately prove to be accurate. Actual results will likely differ from projected results, and such differences may be material. JJMT Capital undertakes no duty or obligation to update the forward looking statements and projections, whether as a result of new information, future events or otherwise.

Recipients of this information should not view the past or projected performance of JJMT Capital as indicative of future results, and there is a possibility of loss in connection with an investment described in these materials. These materials should be read in conjunction with the Subscription Agreement provided by JJMT Capital, including the form of Promissory Note included as an appendix to such Subscription Agreement. Any summary or other statements regarding the terms of such note contained in this Investment Opportunity Overview are qualified in their entirety by the actual terms of such note.

**JJMT**
CAPITAL

# JJMT CAPITAL OVERVIEW

- ➢ JJMT Capital ("JJMT") is a Delaware LLC focused on providing financing to 1inMM Capital for the purposes of acquiring film distribution rights

  - ➢ 1inMM Capital is a sister entity to 1inMM Productions (collectively "1inMM")

- ➢ 1inMM is a film distribution company based in Los Angeles that engages in financing, production, and distribution of films throughout Latin America, Australia, and New Zealand

- ➢ 1inMM was founded in 2012 by Zach Horwitz and his partners with a significant amount of committed capital from a well known investor base

- ➢ In its current geographies, 1inMM is a top distribution company

- ➢ Within its distribution business segment, 1inMM's business model consists of purchasing the film distribution rights from Producers and selling those rights to Platforms including HBO, SONY, Netflix, Showtime, basic cable, etc.

- ➢ 1inMM's revenue model consists of earning a royalty on the revenue stream of every film it "licenses" to Platforms

- ➢ JJMT is one of the sources of capital for 1inMM – thereby providing 1inMM the financial flexibility to purchase film rights from independent film Producers/Financiers

**JJMT**
CAPITAL

# INDUSTRY OVERVIEW
## MOVIE PRODUCTION SUPPLY CHAIN



**Creation**

**Distribution**

**Exhibition**

**Film Producers / Financiers**

- Formulating Idea
- Seeking financing
- Casting
- Direction
- Production
- Filming
- Editing / prints
- Soundtrack

**Players:**
- **Major Studios**: Warner Bros, Paramount, Universal, Disney
- **Mini-Majors**: Lionsgate, Weinstein Co., MGM
- **Independent film producers**

**Sales Agents**

Hired by Producers to assist in:
- Marketing / advertising
- Packaging
- Promotion
- Drafting / sale of geographic distribution rights
- Delivery of final material to distribution partners

**Players:**
- **IM Global**
- Exclusive Media Group
- Block Entertainment
- Nu Image
- Film Nation
- Millennium Films
- Radiant

**Distribution Companies\*\***

- Act as aggregators of content for Platforms
- Purchase & sell distribution rights (geographically based)
- Bundling of content
- Dubbing languages

**Players:**
- **1inMM**
- Sun Distribution
- Reliance Entertainment
- Entertainment One
- Exclusive
- Film Nation

**Theaters / Platforms**

- Cinema screening
- TV screening
- Video/DVD release
- Subscription-based services / streaming

**Players:**
- **Sony**
- **HBO**
- **Netflix**
- **Amazon**
- Hulu
- Major Theaters
- ShowTime
- TV Channels

JJMT
CAPITAL

# ILLUSTRATIVE TRANSACTION OVERVIEW



**JJMT**
CAPITAL

Note: JJMT loans funds to the entity 1inMM Capital, not 1inMM Productions

# TRANSACTIONS COMPLETED TO DATE

➤ To date, the entities controlled by the Managing Partners of JJMT have financed over 50 of 1inMM's 300+ transactions

    ➤ The first transaction was completed in Q1 2014, with the majority beginning in 2015

| CY 2014 Date | Customer | Capital Deployed | CY 2015 Date | Customer | Capital Deployed | 2016 - YTD Date | Customer | Capital Deployed |
|---|---|---|---|---|---|---|---|---|
| Mar-14 | Sony Pictures | $37,000 | Jan-15 | HBO Studios | $81,100 | Jan-16 | Netflix | $550,000 |
| Oct-14 | Sony Pictures | $297,000 | Feb-15 | HBO Studios | $265,000 | Jan-16 | Netflix | $550,000 |
| Nov-14 | Sony Pictures | $32,500 | Feb-15 | HBO Studios | $263,500 | Jan-16 | HBO Studios | $655,900 |
| Dec-14 | HBO Studios | $36,000 | Mar-15 | HBO Studios | $38,250 | Jan-16 | HBO Studios | $690,500 |
| Total | | $402,500 | Mar-15 | HBO Studios | $225,500 | Feb-16 | HBO Studios | $830,000 |
| | | | Apr-15 | HBO Studios | $325,250 | Feb-16 | Sony Pictures | $610,000 |
| | | | Jun-15 | HBO Studios | $265,000 | Mar-16 | HBO Studios | $690,750 |
| | | | Jun-15 | HBO Studios | $253,500 | Apr-16 | HBO Studios | $725,500 |
| | | | Aug-15 | HBO Studios | $235,750 | Apr-16 | HBO Studios | $780,250 |
| | | | Aug-15 | HBO Studios | $170,500 | Apr-16 | HBO Studios | $680,750 |
| | | | Aug-15 | HBO Studios | $416,000 | Apr-16 | HBO Studios | $905,500 |
| | | | Sep-15 | HBO Studios | $490,750 | Apr-16 | HBO Studios | $210,000 |
| | | | Sep-15 | HBO Studios | $266,750 | May-16 | HBO Studios | $615,000 |
| | | | Sep-15 | HBO Studios | $195,675 | May-16 | HBO Studios | $635,000 |
| | | | Oct-15 | HBO Studios | $680,650 | May-16 | HBO Studios | $910,500 |
| | | | Oct-15 | HBO Studios | $375,500 | May-16 | HBO Studios | $960,750 |
| | | | Oct-15 | HBO Studios | $285,950 | Jul-16 | HBO Studios | $912,565 |
| | | | Nov-15 | HBO Studios | $675,500 | Jul-16 | HBO Studios | $922,870 |
| | | | Nov-15 | HBO Studios | $590,000 | Jul-16 | HBO Studios | $588,750 |
| | | | Dec-15 | HBO Studios | $485,650 | Jul-16 | HBO Studios | $605,900 |
| | | | Dec-15 | HBO Studios | $375,500 | Aug-16 | HBO Studios | $610,750 |
| | | | Total | | $6,961,275 | Aug-16 | HBO Studios | $697,000 |
| | | | | | | Aug-16 | HBO Studios | $440,105 |
| | | | | | | Aug-16 | HBO Studios | $310,000 |
| | | | | | | Aug-16 | HBO Studios | $550,240 |
| | | | | | | Aug-16 | HBO Studios | $390,000 |
| | | | | | | Sep-16 | HBO Studios | $520,670 |
| | | | | | | Sep-16 | HBO Studios | $515,000 |
| | | | | | | Sep-16 | HBO Studios | $390,800 |
| | | | | | | Oct-16 | HBO Studios | $310,550 |
| | | | | | | Oct-16 | HBO Studios | $325,515 |
| | | | | | | Oct-16 | HBO Studios | $990,820 |
| | | | | | | Oct-16 | HBO Studios | $955,000 |
| | | | | | | Oct-16 | HBO Studios | $877,230 |
| | | | | | | Oct-16 | HBO Studios | $810,550 |
| | | | | | | Total | | $22,724,715 |

**Activity Over Time**

| | |
|---|---|
| **CY 2014** | |
| # of films | 4 |
| Average Price | $100,625 |
| **CY 2015** | |
| # of films | 21 |
| Average Price | $331,500 |
| **CY 2016 - YTD** | |
| # of films | 35 |
| Average Price | $649,275 |

**Since Inception**

| | |
|---|---|
| **Total # of Films** | |
| # of Sony Films | 4 |
| # of HBO Films | 54 |
| # of Netflix Films | 2 |
| Grand Total | 60 |
| Total Capital Deployed | $30,088,490 |
| Largest Single Transaction | $990,820 |
| Average Price | $501,475 |

The source of this capital comes from the founding partners of JJMT and select outside investors

**JJMT**
CAPITAL

CONFIDENTIAL INFORMATION

# TRANSACTIONS COMPLETED TO DATE CONT'D…



**JJMT** CAPITAL    Not pictured: Custody, The Journey, Under Fire, American Dream, The Vigilante, Living with the Dead
Note: the above films represent transactions involving financing provided by JJMT or other entities controlled by the Managing Partners of JJMT

CONFIDENTIAL INFORMATION

7

# NOTABLE FILMS

| Film Title | Director | Year | Cast |
|---|---|---|---|
| *Imperium* | Daniel Ragussis | 2016 | Daniel Radcliffe, Nestor Carbonell, Toni Collette |
| *Carol* | Todd Haynes | 2015 | Cate Blanchett, Rooney Mara, Sarah Paulson |
| *Eye in the Sky* | Gavin Hood & Colin Firth | 2016 | Helen Mirren, Alan Rickman, Aaron Paul |
| *High-Rise* | Ben Wheatley | 2015 | Tom Hiddleston, Jeremy Irons, Sienna Miller |
| *The Adderall Diaries* | Pamela Romanowsky | 2015 | James Franco, Amber Heard, Christian Slater |
| *The Last Five Years* | Richard LaGravenese | 2014 | Anna Kendrick, Jeremy Jordan, Tamar Mintz |

# HISTORIC AND FUTURE ANTICIPATED DEAL FLOW

➢ 1inMM's historical and projected deal flow is shown below. Please note that 1inMM has **never** experienced a transaction where HBO, SONY, or Netflix failed to make full payment for the acquisition content

    ➢ **2013**: 22 films

    ➢ **2014**: 49 films

    ➢ **2015**: 71 films

    ➢ **2016**: between 110-130 films

## Anticipated 2016 1inMM Deal Flow by Month

Film Festival Schedule

| Month | Major Festival |
|---|---|
| January | Sundance |
| February | Berlin |
| March | South by Southwest (SXSW) |
| April | Hong Kong |
| May | Cannes |
| June | Indie & LA |
| July | Small Festivals |
| August | Telluride |
| September | Toronto & Venice |
| October | Small Festivals |
| November | American Film Market |
| December | Small Festivals |



JJMT
CAPITAL

9

# ILLUSTRATIVE INVESTMENT INTO JJMT

- ➢ Investments into JJMT are structured as loans (promissory notes) and generally short term in nature (3 months, 6 months, or 1 year)
  - ➢ All loans are structured as zero coupon instruments and paid in full at the maturity date
- ➢ To date, 6 month loans have been the most common security
- ➢ On or prior to maturity of the note, investors will have their capital (plus interest) returned
- ➢ JJMT anticipates providing financing to 1inMM for 30-40 films throughout the course of any calendar year, and so expects to have ample opportunity to deploy capital

**Sony - 3 months (zero coupon)**

| Loan Amount | $100,000.0 | |
|---|---|---|
| % Interest Rate | 25.0% | |
| Maturity Value | $105,735.0 | |
| **Illustrative Cash Flows** | | |
| Dates | 1/1/2016 | 4/1/2016 |
| Cash Flows | ($100,000.0) | $105,735.0 |
| IRR | | 25.0% |
| Total Profit | $5,735.0 | |

**HBO - 6 months (zero coupon)**

| Loan Amount | $100,000.0 | |
|---|---|---|
| % Interest Rate | 25.0% | |
| Maturity Value | $111,800.0 | |
| **Illustrative Cash Flows** | | |
| Dates | 1/1/2016 | 7/1/2016 |
| Cash Flows | ($100,000.0) | $111,800.0 |
| IRR | | 25.0% |
| Total Profit | $11,800.0 | |

**Netflix - 12 months (zero coupon)**

| Loan Amount | $100,000.0 | |
|---|---|---|
| % Interest Rate | 25.0% | |
| Maturity Value | $125,000.0 | |
| **Illustrative Cash Flows** | | |
| Dates | 1/1/2016 | 1/1/2017 |
| Cash Flows | ($100,000.0) | $125,000.0 |
| IRR | | 25.0% |
| Total Profit | $25,000.0 | |

Note: the above examples are illustrative in nature and actual results may differ across transactions
IRR is equivalent to the Yield to Maturity or "YTM" for each loan security listed above
Zero Coupon Bond Value = Maturity Value / (1+r)^t, where r = interest rate, and t = time to maturity

**JJMT**
CAPITAL

CONFIDENTIAL INFORMATION

# INVESTOR RETURNS

| Summary of Investor Capital Deployed to date | |
|---|---|
| Number of Unique Investors | 108 |
| Total Investor Capital Deployed[1] | $22,690,000 |
| Largest Single Investor[1] | $5,810,000 |
| Average Investor Deployment[1] | $210,000 |
| **Transaction specific detail** | |
| *Number of 3 month deals (Sony)* | *4* |
| *Number of 6 month deals (HBO)* | *54* |
| *Number of 2 year deals (Netlfix)* | *2* |
| **Total Films Financed** | **60** |

[1]Figures rounded to the nearest multiple of $10k
**Netflix Deals were previously structured as a 2 year deal, paid back each quarter in 8 equal installments.  Recently, a new payment structure of 1 year (zero coupon) was negotiated with Netflix.

## Overview of Results

➢ Entities controlled by the Managing Partners of JJMT have deployed ~$22.7mm of investor capital since April 2015

➢ Most common investment period for any single deal has been approximately 6 months (HBO deals)

**JJMT**
CAPITAL

CONFIDENTIAL INFORMATION

11

# INVESTMENT OPPORTUNITY

➢ JJMT continues to raise and deploy capital in order to meet the needs of 1inMM

➢ As previously indicated, any investment into JJMT will be structured as a loan to JJMT

➢ Each loan agreement will be a separate and unique investment in which capital will be called shortly before the funding date of each film (generally 2-3 business days)

➢ It is important to note that an investment in JJMT (through the loan structure outlined in this presentation) does not give an investor any specific rights in 1inMM or in any film that may ultimately be financed through his/her investment

**JJMT**
CAPITAL

# INVESTMENT PROCESS

- ➢ Investors interested in loaning funds to JJMT will be required to follow the following process:

  - ➢ The investor will be required to complete and sign a Subscription Agreement and return it to JJMT. Please read the Subscription Agreement carefully as an investor are making a number of important commitments by signing and returning the Subscription Agreement. However, by signing a Subscription Agreement, an investor is not committing to invest any particular amount, but is providing JJMT with an indication of the amount he/she *may be* interested in investing

  - ➢ JJMT will review the investor's Subscription Agreement to determine if he/she meets certain minimum qualifications to invest

  - ➢ JJMT has no obligation to offer the investor any opportunity to invest in a note. If JJMT offers the investor an opportunity to invest in a note, it will present the investor with an "Investment Commitment" form with the details of the particular note to be issued by JJMT

  - ➢ If the investor is interested in investing, he/she would need to sign and return the "Investment Commitment" and fund the principal amount of the note by the Investment Date specified in the "Investment Commitment" agreement

  - ➢ Upon receipt of funding, JJMT will issue the investor a promissory note

  - ➢ On or before the Maturity Date of the note issued to the investor, JJMT would be required to repay the note with all accrued interest

  - ➢ JJMT may allow the investor to invest in more than one note at any particular time

# RISK FACTORS

➢ Making an investment in JJMT (through the loan structure outlined in this presentation) involves risks, including but not limited to the following:

 ➢ Your loan to JJMT is not secured by any collateral. If JJMT fails to repay your loan, your recourse would be to file a lawsuit against JJMT

 ➢ JJMT intends to fund the repayment of your loan by collecting on loans JJMT makes to 1inMM Capital. If 1inMM fails to repay a loan from JJMT, there is a risk that JJMT will not have sufficient cash to repay your loan to JJMT

 ➢ Neither JJMT nor any of its representatives are providing any tax or legal advice regarding your investment. You should consult with your own legal and tax advisors with respect to any investment in JJMT

 ➢ You may not sell or transfer the note you receive from JJMT except in very limited circumstances

 ➢ By signing a Subscription Agreement and any subsequent Investment Commitment, you are making a number of important commitments to JJMT. If any of these commitments turn out to be inaccurate, you may have liability to JJMT and other investors for related damages. You should carefully read the Subscription Agreement before you sign it and before you sign each Investment Commitment

**JJMT**
CAPITAL

# JJMT

## CAPITAL

*"Investing With Creativity"*

**For further information please reach out to any of our Managing Partners:**

**Jacob Wunderlin**
Managing Partner
jwunderlin@jjmtcap.com

**Joseph deAlteris**
Managing Partner
jdealteris@jjmtcap.com

**Matthew Schweinzger**
Managing Partner
mschweinzger@jjmtcap.com

**Tyler Crookston**
Managing Partner
tcrookston@jjmtcap.com

www.jjmtcap.com

JJMT
CAPITAL

15

# PROMISSORY NOTE

**$100,000.00**                                                                                            02/08/2019

       This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Matthew Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Minha Vida Em Marte" & "BTS World Tour: Love Yourself in Seoul".

1. **Agreement to Pay.**  For value received, JJMT promises to pay to the order of the Investor the principal sum of One Hundred  Thousand  Dollars and Zero Cents ($100,000.00) plus interest due thereon of Twenty Three Thousand  Dollars and Zero Cents ($23,000.00) (the "Interest") for an aggregate amount of One Hundred Twenty Three Thousand  Dollars and Zero Cents ($123,000.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before February 12, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2.     **Prepayment.**  JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3.     **Unsecured.**  This Note is unsecured.

4.     **Default.**  The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

       A.     Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

       B.     Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

       C.     Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5.     **Remedies.**  If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity.  Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

**EXHIBIT 5**

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6.** **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7.** **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8.** **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9.** **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

2

10.     **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11.     **WAIVER OF RIGHT TO TRIAL BY JURY.**  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION  OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12.     **JURISDICTION AND VENUE.**  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By: _____

Name: Joseph deAlteris

Title: Managing Member

By: _____

Name: Jacob Wunderlin

Title: Managing Member

By: _____

Name: Matthew Schweinzger

Title: Managing Member

4

**PROMISSORY NOTE**

**$100,000.00**                                                                02/08/2019

        This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Steven Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Minha Vida Em Marte" & "BTS World Tour: Love Yourself in Seoul".

1.  **Agreement to Pay.**  For value received, JJMT promises to pay to the order of the Investor the principal sum of One Hundred  Thousand  Dollars and Zero Cents ($100,000.00) plus interest due thereon of Twenty Three Thousand  Dollars and Zero Cents ($23,000.00) (the "Interest") for an aggregate amount of One Hundred Twenty Three Thousand  Dollars and Zero Cents ($123,000.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before February 12, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2.      **Prepayment.**  JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3.      **Unsecured.**  This Note is unsecured.

4.      **Default.**  The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

        A.      Monetary.  JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

        B.      Performance of Obligation.  JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

        C.      Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5.      **Remedies.**  If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity.  Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

Exhibit 6

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

6. **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

7. **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

8. **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

9. **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

2

10. <u>**Extensions Granted by the Investor**</u>. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. <u>**WAIVER OF RIGHT TO TRIAL BY JURY.**</u> BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. <u>**JURISDICTION AND VENUE.**</u> BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

3

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By: _____
Name: Joseph deAlteris
Title: Managing Member

By: _____
Name: Jacob Wunderlin
Title: Managing Member

By: _____
Name: Matthew Schweinzger
Title: Managing Member

4

# PROMISSORY NOTE

**$50,000.00**                                                                    06/11/2019

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Matthew Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Depraved, Our House, Come To Daddy".

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of Fifty Thousand Dollars and Zero Cents ($50,000.00) plus interest due thereon of Six Thousand Dollars and Zero Cents ($6,000.00) (the "Interest") for an aggregate amount of Fifty Six Thousand Dollars and Zero Cents ($56,000.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before December 13, 2019 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

    A. **Monetary.** JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

    B. **Performance of Obligation.** JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

    C. **Bankruptcy; Insolvency; Dissolution.** (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act

Exhibit 7

of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

6.    **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

7.    **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

8.    **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A.    All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B.    The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C.    If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D.    Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E.    This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

9.    **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

2

10. **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By: _____

Name: Joseph deAlteris

Title: Managing Member

By: _____

Name: Jacob Wunderlin

Title: Managing Member

By: _____

Name: Matthew Schweinzger

Title: Managing Member

# AMENDMENT TO PROMISSORY NOTE

This Amendment to Promissory Note ("Amendment") is executed by JJMT Capital LLC, a Delaware limited liability company ("JJMT") and Matthew Aronson ("Investor"), to amend the Promissory Note delivered by JJMT to Investor on June 11th, 2019, in the original principal amount of $50,000.00 (the "Note") as follows:

1.     The Maturity Date of the Note is hereby extended from December 13th, 2019 (the "Original Maturity Date") to January 10th, 2020.

2.     Between the Original Maturity Date and the date that JJMT pays the entire balance of the Note, interest shall accrue on any unpaid principal amount and any accrued interest under the Note at the rate of Twenty Five and One Tenth percent (25.1%) per annum.

3.     Except as expressly changed by this Amendment, the terms of the Note shall remain unchanged and in full force and effect.

JJMT:

JJMT CAPITAL, LLC

By: JJMT Management, LLC
Title: Manager

By: _____
Name: Joseph deAlteris
Title: Officer

By: _____
Name: Matthew Schweinzger
Title: Officer

By: _____
Name: Jacob Wunderlin
Title: Officer

ACCEPTED AND AGREED:

MATTHEW ARONSON

OR

[                              ]

By:_____
Name:
Title:

**PROMISSORY NOTE**

$125,000.00                                                                                11/05/2019

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Matthew Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled Strange But True & Christmas Camp.

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of One Hundred Twenty Five Thousand  Dollars and Zero Cents ($125,000.00) plus interest due thereon of Fourteen Thousand Two Hundred  Dollars and Zero Cents ($14,200.00) (the "Interest") for an aggregate amount of One Hundred Thirty Nine Thousand Two Hundred  Dollars and Zero Cents ($139,200.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before May 05, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

    A. Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

    B. Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

    C. Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity.  Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

Exhibit 8

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6.** **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7.** **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8.** **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9.** **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

**10.** **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

**11.** **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

**12.** **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____
Name: Joseph deAlteris
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Matthew Schweinzger
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Jacob Wunderlin
Title: Officer of JJMT Management, as Manager of JJMT Capital

# PROMISSORY NOTE

**$200,000.00**                                                                              06/11/2019

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Steven Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Depraved, Our House, Come To Daddy".

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of Two Hundred Thousand Dollars and Zero Cents ($200,000.00) plus interest due thereon of Twenty Three Thousand Five Hundred Dollars and Zero Cents ($23,500.00) (the "Interest") for an aggregate amount of Two Hundred Twenty Three Thousand Five Hundred Dollars and Zero Cents ($223,500.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before December 13, 2019 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

     A.   Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

     B.   Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

     C.   Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

Exhibit 9

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6.** **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7.** **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8.** **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9.** **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

2

10. **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By: _____

Name: Joseph deAlteris

Title: Managing Member

By: _____

Name: Matthew Schweinzger

Title: Managing Member

By: _____

Name: Jacob Wunderlin

Title: Managing Member

4

Case 1:21-cv-00100-ABJ Document 20-16 Filed 08/02/21 Page 15 of 50 Page ID #146

# AMENDMENT TO PROMISSORY NOTE

This Amendment to Promissory Note ("Amendment") is executed by JJMT Capital LLC, a Delaware limited liability company ("JJMT") and Steven Aronson ("Investor"), to amend the Promissory Note delivered by JJMT to Investor on June 11th, 2019, in the original principal amount of $200,000.00 (the "Note") as follows:

1. The Maturity Date of the Note is hereby extended from December 13th, 2019 (the "Original Maturity Date") to January 10th, 2020.

2. Between the Original Maturity Date and the date that JJMT pays the entire balance of the Note, interest shall accrue on any unpaid principal amount and any accrued interest under the Note at the rate of Twenty Four and Six Tenths percent (24.6%) per annum.

3. Except as expressly changed by this Amendment, the terms of the Note shall remain unchanged and in full force and effect.

**JJMT:**

**JJMT CAPITAL, LLC**

**By: JJMT Management, LLC**
**Title: Manager**

By: _____
Name: Joseph deAlteris
Title: Officer

By: _____
Name: Matthew Schweinzger
Title: Officer

By: _____
Name: Jacob Wunderlin
Title: Officer

ACCEPTED AND AGREED:

STEVEN ARONSON

_____

OR

[                              ]

By: _____
Name:
Title:

## **PROMISSORY NOTE**

**$110,000.00**                                                                         09/27/2019

     This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Matthew Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Little Italy".

1.   **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of One Hundred Ten Thousand  Dollars and Zero Cents ($110,000.00) plus interest due thereon of Twenty Seven Thousand Eight Hundred  Dollars and Zero Cents ($27,800.00) (the "Interest") for an aggregate amount of One Hundred Thirty Seven Thousand Eight Hundred  Dollars and Zero Cents ($137,800.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before October 01, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2.   **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3.   **Unsecured.** This Note is unsecured.

4.   **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

    A.   Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

    B.   Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

    C.   Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5.   **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

Exhibit 10

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

6. **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

7. **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

8. **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

9. **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

**10.    Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

**11.    WAIVER OF RIGHT TO TRIAL BY JURY.**  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION  OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

**12.    JURISDICTION AND VENUE.**  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____
Name: Joseph deAlteris
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Matthew Schweinzger
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Jacob Wunderlin
Title: Officer of JJMT Management, as Manager of JJMT Capital

4

# **PROMISSORY NOTE**

**$110,000.00**                                                                    09/27/2019

      This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Steven Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Little Italy".

    1.  **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of One Hundred Ten Thousand  Dollars and Zero Cents ($110,000.00) plus interest due thereon of Twenty Seven Thousand Eight Hundred  Dollars and Zero Cents ($27,800.00) (the "Interest") for an aggregate amount of One Hundred Thirty Seven Thousand Eight Hundred  Dollars and Zero Cents ($137,800.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before October 01, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

    2.  **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

    3.  **Unsecured.** This Note is unsecured.

    4.  **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

        A.  Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

        B.  Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

        C.  Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

    5.  **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

<div align="right">Exhibit 11</div>

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

      **6.**    **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

      **7.**    **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

      **8.**    **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

      A.    All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

      B.    The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

      C.    If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

      D.    Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

      E.    This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

      **9.**    **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

10. **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____

Name: Joseph deAlteris

Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____

Name: Matthew Schweinzger

Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____

Name: Jacob Wunderlin

Title: Officer of JJMT Management, as Manager of JJMT Capital

4

# PROMISSORY NOTE

**$112,000.00**                                                                    12/05/2019

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Matthew Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Villain", "Heidi: Queen of the Mountain", "VFW", and "Disturbing the Peace".

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of One Hundred Twelve Thousand Dollars and Zero Cents ($112,000.00) plus interest due thereon of Thirteen Thousand Dollars and Zero Cents ($13,000.00) (the "Interest") for an aggregate amount of One Hundred Twenty Five Thousand Dollars and Zero Cents ($125,000.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before June 09, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

    A. **Monetary.** JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

    B. **Performance of Obligation.** JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

    C. **Bankruptcy; Insolvency; Dissolution.** (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall

Exhibit 12

be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

6. **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

7. **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

8. **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

9. **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

2

10. **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____
Name: Joseph deAlteris
Title: Officer of JJMT Management, as Manager of JJMT Capital

By:_____
Name: Matthew Schweinzger
Title: Officer of JJMT Management, as Manager of JJMT Capital

By:_____
Name: Jacob Wunderlin
Title: Officer of JJMT Management, as Manager of JJMT Capital

**PROMISSORY NOTE**

**$90,000.00**                                                                      **11/05/2019**

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Steven Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled Strange But True & Christmas Camp.

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of Ninety Thousand Dollars and Zero Cents ($90,000.00) plus interest due thereon of Ten Thousand Two Hundred Dollars and Zero Cents ($10,200.00) (the "Interest") for an aggregate amount of One Hundred Thousand Two Hundred Dollars and Zero Cents ($100,200.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before May 05, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

    A.   Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

    B.   Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

    C.   Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

Exhibit 13

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

     **6.**    **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

     **7.**    **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

     **8.**    **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

        A.    All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

        B.    The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

        C.    If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

        D.    Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

        E.    This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

     **9.**    **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

10. **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____
Name: Joseph deAlteris
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Matthew Schweinzger
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Jacob Wunderlin
Title: Officer of JJMT Management, as Manager of JJMT Capital

4

# PROMISSORY NOTE

**$280,000.00**                                                                 12/05/2019

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Steven Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Villain", "Heidi: Queen of the Mountain", "VFW", and "Disturbing the Peace".

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of Two Hundred Eighty Thousand Dollars and Zero Cents ($280,000.00) plus interest due thereon of Thirty Three Thousand Dollars and Zero Cents ($33,000.00) (the "Interest") for an aggregate amount of Three Hundred Thirteen Thousand Dollars and Zero Cents ($313,000.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before June 09, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

    A.    Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

    B.    Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

    C.    Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall

Exhibit 14

be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6.** **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7.** **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8.** **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9.** **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

2

10. **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION  OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____
Name: Joseph deAlteris
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Matthew Schweinzger
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Jacob Wunderlin
Title: Officer of JJMT Management, as Manager of JJMT Capital

4

# PROMISSORY NOTE

**$35,000.00**                                                                11/05/2019

     This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Steven Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Allagash".

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of Thirty Five Thousand Dollars and Zero Cents ($35,000.00) plus interest due thereon of Four Thousand Dollars and Zero Cents ($4,000.00) (the "Interest") for an aggregate amount of Thirty Nine Thousand Dollars and Zero Cents ($39,000.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before May 07, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2.     **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3.     **Unsecured.** This Note is unsecured.

4.     **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

    A.     Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

    B.     Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

    C.     Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5.     **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act

Exhibit 15

of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6.** **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7.** **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8.** **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9.** **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

10. **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____
Name: Joseph deAlteris
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Matthew Schweinzger
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Jacob Wunderlin
Title: Officer of JJMT Management, as Manager of JJMT Capital

4

# PROMISSORY NOTE

**$300,000.00**                                                                                    08/27/2019

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Steven Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Samson".

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of Three Hundred Thousand Dollars and Zero Cents ($300,000.00) plus interest due thereon of Seventy Five Thousand Dollars and Zero Cents ($75,000.00) (the "Interest") for an aggregate amount of Three Hundred Seventy Five Thousand Dollars and Zero Cents ($375,000.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before August 31, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

   A. _Monetary._ JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

   B. _Performance of Obligation._ JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

   C. _Bankruptcy; Insolvency; Dissolution._ (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

Exhibit 16

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6. Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7. Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8. Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

    A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

    B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

    C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

    D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

    E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9. Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

2

10. **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____
Name: Joseph deAlteris
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Matthew Schweinzger
Title: Officer of JJMT Management, as Manager of JJMT Capital


By:_____
Name: Jacob Wunderlin
Title: Officer of JJMT Management, as Manager of JJMT Capital

**PROMISSORY NOTE**

$125,000.00                                                                                    09/12/2019

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Steven Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Run The Race" & "Storm Boy".

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of One Hundred Twenty Five Thousand Dollars and Zero Cents ($125,000.00) plus interest due thereon of Thirty Thousand Dollars and Zero Cents ($30,000.00) (the "Interest") for an aggregate amount of One Hundred Fifty Five Thousand Dollars and Zero Cents ($155,000.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before September 15, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

    A.    Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

    B.    Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

    C.    Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

Exhibit 17

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6.** **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7.** **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8.** **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9.** **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

2

**10.** **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

**11.** **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

**12.** **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By:_____
Name: Joseph deAlteris
Title: Officer of JJMT Management, as Manager of JJMT Capital

By:_____
Name: Matthew Schweinzger
Title: Officer of JJMT Management, as Manager of JJMT Capital

By:_____
Name: Jacob Wunderlin
Title: Officer of JJMT Management, as Manager of JJMT Capital

## PROMISSORY NOTE

**$35,000.00**                                                                                    06/27/2019

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Steven Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Sgt. Stubby: An American Hero".

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of Thirty Five Thousand Dollars and Zero Cents ($35,000.00) plus interest due thereon of Eight Thousand Seven Hundred Dollars and Zero Cents ($8,700.00) (the "Interest") for an aggregate amount of Forty Three Thousand Seven Hundred Dollars and Zero Cents ($43,700.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before June 29, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

    A. **Monetary.** JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

    B. **Performance of Obligation.** JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

    C. **Bankruptcy; Insolvency; Dissolution.** (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

Exhibit 18

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

6. **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

7. **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

8. **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

9. **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

10.    **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11.    **WAIVER OF RIGHT TO TRIAL BY JURY.**  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION  OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12.    **JURISDICTION AND VENUE.**  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.  BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By: _____

Name: Joseph deAlteris

Title: Managing Member

By: _____

Name: Jacob Wunderlin

Title: Managing Member

By: _____

Name: Matthew Schweinzger

Title: Managing Member

**PROMISSORY NOTE**

**$65,000.00**                                                               **02/25/2019**

       This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to Steven Aronson (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled "Yuli" & "Lucia's Grace".

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of Sixty Five Thousand  Dollars and Zero Cents ($65,000.00) plus interest due thereon of Fifteen Thousand Seven Hundred Fifty  Dollars and Zero Cents ($15,750.00) (the "Interest") for an aggregate amount of Eighty  Thousand Seven Hundred Fifty  Dollars and Zero Cents ($80,750.00) in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before February 28, 2020 (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

      A.    Monetary. JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

      B.    Performance of Obligation. JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

      C.    Bankruptcy; Insolvency; Dissolution. (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

**Exhibit 19**

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6.** **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7.** **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8.** **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9.** **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

2

10. **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By: _____

Name: Joseph deAlteris

Title: Managing Member

By: _____

Name: Jacob Wunderlin

Title: Managing Member

By: _____

Name: Matthew Schweinzger

Title: Managing Member

**Sent:** Thursday, December 14, 2017 10:40 PM
**To:** Steven Aronson
**Subject:** RE: Signed commitment letter attached

Steve,

Hope this finds you well!

I have another opportunity for an investment into JJMT... In line with our emails below, I'm working to get the balance of $155,000 invested for you. As of tonight, we've landed another HBO deal (~6 month investment)

4

EXHIBIT 20

and I can get $115,000 invested on or before Monday of next week (12/18). Returns are great on this one at 24.6% IRR.

If you're interested, please confirm and I'll send all documents and details over to you as is our standard practice. I will also keep looking for an opportunity for the other $40,000 to be invested before year end!

Thanks Steve! Hope to hear from you soon...

Matt

**Matt Schweinzger**
Managing Partner
JJMT Capital, LLC
P: (269) 808-7072
mschweinzger@jjmtcap.com

Confidentiality Notice. This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are not an intended recipient, you must not copy, forward, distribute, or take any action in reliance on it. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

## Karen L. May

| | |
|---|---|
| **From:** | Steven Aronson |
| **Sent:** | Wednesday, June 13, 2018 10:43 AM |
| **To:** | 'stevenjaronson@gmail.com' |
| **Subject:** | New JJMT movies investment |

**From:** Matthew Schweinzger <mschweinzger@jjmtcap.com>
**Sent:** Wednesday, June 13, 2018 10:51 AM
**To:** Steven Aronson <steven@aronsoninsurance.com>
**Subject:** RE: Signed commitment letter attached

Steve,

Hope you're well! May see you tonight if you're attending the NE Dinner on Long Island!

I wanted to circle back to you on your investment in La Vallee Des Loups (emails below)... You have $129,000 coming back to you later this month! We just landed another Netflix package with funding dates tight around the return of your money. To that end, I wanted to get your interest level in some, all or none of it being reinvested before going to other parties to fill out the round. Funding dates will be within a day or two so you can "roll" money should you wish to invest (and I'd send a net wire back to you should you invest less than the full return) or you can of course get the money back, then send it back over – totally up to you.

- Netflix Deal (~12 month investment)
- Same returns right around 25% IRR
- Repayment date of 7/2/2019, or earlier
- Can invest as much or as little as you'd like... big package of three titles

Let me know your thoughts here as we need to fill out the round fairly quick given the tight timeframe.

Thanks Steve! Hope to see you tonight!

Matt

**Matt Schweinzger**
Managing Partner
JJMT Capital, LLC
P: (269) 808-7072
mschweinzger@jjmtcap.com

Confidentiality Notice. This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are not an intended recipient, you must not copy, forward, distribute, or take any action in reliance on it. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

**From:** Steven Aronson [mailto:steven@aronsoninsurance.com]
**Sent:** Monday, December 18, 2017 9:57 AM
**To:** Matthew Schweinzger
**Subject:** RE: Signed commitment letter attached

**EXHIBIT 21**

## Karen L. May

| | |
|---|---|
| **From:** | Steven Aronson |
| **Sent:** | Saturday, June 16, 2018 5:08 AM |
| **To:** | stevenjaronson@gmail.com |
| **Subject:** | Fwd: Signed commitment letter attached |
| **Attachments:** | Investment Commitment_vAronson_S_Aterrados.pdf; ATT00001.htm; Promissory Note_vAronson_S_Aterrados.pdf; ATT00002.htm |

Steve
Sent from my iPhone

Begin forwarded message:

> **From:** "Matthew Schweinzger" <mschweinzger@jjmtcap.com>
> **Date:** June 15, 2018 at 5:18:32 PM EDT
> **To:** "'Steven Aronson'" <steven@aronsoninsurance.com>
> **Subject: RE: Signed commitment letter attached**
>
> Perfect – thank you sir!
> Attached are the standard documents for the upcoming investment with a funding date of Friday, June 22, 2018. The details for the title inside this deal we are selling to Netflix are below:
> ATERRADOS
> - Year / Genre: 2018 / Horror
> - Director: Demian Rugna
> - Cast: Ariel Chavarria / Maximliano Ghione / Norberto Gonzalo
> - Description: When strange events occur in a neighborhood in Buenos Aires, a doctor specializing in the paranormal, her colleague, and an ex-police officer decide to invest further…
> - **Investment Amount / Funding Date: $130,000 to be sent on or before 6/22/2018 at 2:30pm CT**
> - **Total Return / Return Date: $163,000 returned on 6/27/2019 (~25% IRR)**
>
> When you have a chance, please execute the attached Investment Commitment form and send it back to me. I'm also attaching the fully executed Promissory Note for your records. The capital call date is Friday, 6/22 and if you can please let me know when you send the top up wire for $1,000 over, I will confirm receipt on our end!
> Happy Father's Day weekend! Enjoy!
> Cheers!
> Matt
> **Matt Schweinzger**
> Managing Partner
> JJMT Capital, LLC
> P: (269) 808-7072
> mschweinzger@jjmtcap.com

Confidentiality Notice. This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are not an intended recipient, you must not copy, forward, distribute, or take any action in reliance on it. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

EXHIBIT 22

# INVESTMENT COMMITMENT

This Investment Commitment is provided as an addendum to the Subscription Agreement (the "*Subscription Agreement*") signed and provided by the investor identified below (the "*Investor*") to JJMT Capital, LLC, a Delaware limited liability company ("*JJMT*"), with respect to an investment by the Investor in one or more promissory notes (each, a "*Note*") to be issued by JJMT.

By signing this Investment Commitment, the Investor is agreeing to the following:

1. All information in the Subscription Agreement remains true and correct in all respects as of the date of the Investor's signature below, including (but not limited to) the fact that the Investor qualifies as an "accredited investor" under the federal securities laws.

2. The Investor agrees to purchase a Note to be issued by JJMT in substantially the form attached as <u>Appendix A</u> to the Subscription Agreement, but with the following terms:

| | |
|---|---|
| Principal Amount: | $130,000.00 |
| Investment Date: | *June 22, 2018* (*no later than 2:30pm CT*) |
| Issue Date: | *The Note will be issued on the date JJMT receives an amount of cash from the Investor equal to the Principal Amount noted above (the "Investment Date").* |
| Interest Amount: | $33,000.00 |
| Maturity Date: | *June 27, 2019* |

3. The investor agrees to transfer an amount of cash equal to the "Principal Amount" to JJMT no later than the Investment Date stated above.

---

**JJMT Wiring Instructions (we do not accept ACH):**
**Beneficiary**: JJMT Capital LLC
**Bank Name**: J.P. Morgan Chase
**Bank Address**: 1 Chase Manhattan, New York, NY 10005
**ABA / Routing # (for wire transfers):** 021-000-021
**ABA / Routing # (for ACH):** 071-000-013
**Account #:** 739-727-365
**Beneficiary Address:** 541 North Fairbanks Ct. Ste. 2200, Chicago IL, 60611

---

4. JJMT agrees to transfer an amount of cash equal to the "Principal Amount" plus "Interest Amount" no later than the Maturity Date stated above.

---

**Investor Wiring Instructions:**
**Beneficiary**:
**Bank Name**:
**Bank Address**:
**ABA / Routing #:**
**Account #:**
**SSN / FEIN:**
**Personal Address:**

INFORMATION PREVIOUSLY PROVIDED

---

*JJMT Capital, LLC*                                                                                  *Confidential*

Signed and dated:

| Investor Name: | Date of Signature: |
|---|---|
| Steven Aronson | |
| **Signature of Investor:** | Signature of Joint Investor *(if applicable)*: |
| Title *(if Investor is not a natural person)*: | Title *(if Investor is not a natural person)*: |

**PROMISSORY NOTE**

<mark>$130,000.00</mark>                                                    <mark>06/22/2018</mark>

This Promissory Note (the "Note") is made by JJMT Capital LLC, a Delaware limited liability company ("JJMT"), and is payable to <mark>Steven Aronson</mark> (the "Investor"). Proceeds of the Note shall be used by JJMT for the purpose of engaging in financing the acquisition of distribution rights related to the motion picture(s) entitled <mark>"Aterrados".</mark>

1. **Agreement to Pay.** For value received, JJMT promises to pay to the order of the Investor the principal sum of <mark>One Hundred Thirty Thousand Dollars and Zero Cents ($130,000.00)</mark> plus interest due thereon of <mark>Thirty Three Thousand Dollars and Zero Cents ($33,000.00)</mark> (the "Interest") for an aggregate amount of <mark>One Hundred Sixty Three Thousand Dollars and Zero Cents ($163,000.00)</mark> in accordance with the terms of this Note. The outstanding principal amount owed under this Note together with all accrued but unpaid interest, shall be due and payable by JJMT to the Investor in one balloon payment on or before <mark>June 27, 2019</mark> (the "Maturity Date"). JJMT shall have no obligation to make any payments on this Note prior to the Maturity Date.

2. **Prepayment.** JJMT shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty. All payments shall first be applied against accrued interest and the balance shall be applied against the principal.

3. **Unsecured.** This Note is unsecured.

4. **Default.** The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Note:

   A. _Monetary._ JJMT's failure to pay any sums payable under this Note within five (5) business days of the Maturity Date;

   B. _Performance of Obligation._ JJMT's failure to perform any material obligation, covenant or condition under the Note unless waived in writing by the Investor;

   C. _Bankruptcy; Insolvency; Dissolution._ (i) The filing by JJMT of a petition for relief under any other present or future governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT; (ii) the filing against JJMT of an involuntary proceeding under any governmental law regarding bankruptcy, reorganization or other debtor relief law applicable to JJMT and the failure of JJMT to effect a full dismissal of such proceeding within 90 days after the date of filing such proceeding; (iii) a general assignment by JJMT for the benefit of creditors; or (iv) JJMT applying for, or the appointment of, a receiver, trustee, custodian or liquidator of JJMT or any of its property.

5. **Remedies.** If an Event of Default has occurred and is continuing (subject to any applicable cure period), the Investor shall have the option, upon written notice to JJMT, to declare the unpaid principal amount of this Note, together with all accrued but unpaid interest, at once due and payable to the extent permitted by law and to exercise any rights and remedies available at law or in equity. Upon the occurrence of an Event of Default, the remedies of the Investor, as provided herein shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole

discretion of the Investor, and may be exercised as often as occasion therefor shall arise. No delay or act of omission or commission on part of the Investor, including specifically any failure to exercise any right, remedy or recourse, shall operate as a waiver or release of any such right, such waiver or release to be effected only through a written document executed by the Investor and then only to the extent specifically set forth in such written waiver. A waiver or release with reference to any one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to a subsequent event.

**6.** **Costs and Attorneys' Fees.** If any Event of Default under this Note shall occur, JJMT promises to pay all reasonable costs of collection, including but not limited to all attorneys' fees, court costs, and expenses incurred by the Investor in connection with such collection whether or not any lawsuit is filed with respect thereto.

**7.** **Waiver.** JJMT waives grace, protest, demand, presentment for payment and diligence in the collection of this Note, and in the filing of suit hereon, and agrees that its liability and the liability of its successors and assigns for the payment hereof shall not be affected or impaired by any release or change in the security, if any, or by any increase, modification, renewal or extension of the indebtedness or its mode and time of payment.

**8.** **Miscellaneous.** The headings of the paragraphs of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

A. All payments under this Note shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment; provided that a check will be deemed sufficient payment so long as it clears when presented for payment.

B. The obligations and liabilities of JJMT under this Note shall be binding upon and enforceable against JJMT and its successors and assigns. This Note shall inure to the benefit of and may be enforced by the Investor and its successors and legal heirs and personal representatives. Notwithstanding anything to the contrary in this Note, the Investor may not assign or otherwise transfer this Note, or any of its rights in this Note, without the express prior written consent of JJMT, which consent may be held in the sole discretion of JJMT. The issuance of this Note has not been registered under any federal and state securities laws, and as a result, its subsequent transfer is restricted pursuant to the provisions of applicable federal and state securities laws.

C. If any provision of this Note or any payments pursuant to the terms hereof shall be invalid or unenforceable to any extent, the remainder of this Note and any other payments hereunder shall not be affected thereby and shall be enforceable to the extent permitted by law.

D. Time is of the essence with respect to the repayment of this Note and of each and every provision hereof.

E. This Note and each provision hereof may be modified, amended, changed, altered, waived, terminated or discharged only by a written instrument signed by the party sought to be bound by such modification, amendment, change, alteration, waiver, termination or discharge.

**9.** **Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of Delaware.

10. **Extensions Granted by the Investor**. All endorsers hereunder agree that the holder of this Note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to JJMT any extension or extensions of time of payment thereof, in whole or in part.

11. **WAIVER OF RIGHT TO TRIAL BY JURY.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THIS NOTE, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE MODIFICATION HEREOF OR THEREOF OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF JJMT AND THE INVESTOR OR EITHER OF THEM WITH RESPECT TO THIS NOTE (AS NOW OR HEREAFTER MODIFIED) OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION IS NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND THE INVESTOR HEREBY AGREES AND CONSENTS THAT JJMT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE INVESTOR TO THE WAIVER OF ANY RIGHT THE INVESTOR MIGHT OTHERWISE HAVE TO TRIAL BY JURY.

12. **JURISDICTION AND VENUE.** BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INTIATED BY THE INVESTOR AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. BY ACCEPTING THIS NOTE, THE INVESTOR HEREBY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED BY JJMT IN ANY OF SUCH COURTS, AND HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS AND COMPLAINT, OR OTHER PROCESS OR PAPERS ISSUED THEREIN, AND AGREES THAT SERVICE OF SUCH SUMMONS AND COMPLAINT OR OTHER PROCESS OR PAPERS MAY BE MADE BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO SUCH PARTY AT THE ADDRESS TO WHICH NOTICES ARE TO BE SENT AS DIRECTED IN WRITING BY THE OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;**

**SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Promissory Note as of the day and year first above written.

**JJMT:**

By: _____

Name: Joseph deAlteris

Title: Managing Member

By: _____

Name: Jacob Wunderlin

Title: Managing Member

By: _____

Name: Matthew Schweinzger

Title: Managing Member