# EXHIBIT 5



ATTORNEYS AT LAW
321 NORTH CLARK STREET, SUITE 2800
CHICAGO, IL 60654-5313
312.832.4500 TEL
312.832.4700 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
312.832.4365
jlevin@foley.com EMAIL

CLIENT/MATTER NUMBER
122767-0102

April 22, 2022

**Via Email**

Daniel S. Rubin
Howard & Howard
200 S Michigan Ave, Ste 1100
Chicago, Illinois 60604-2461
drubin@howardandhoward.com

    Re: *Aronson, et al. v. JJMT Capital, LLC, et al.*, No. 1:21-cv-01867
       (N.D. Ill.)

Dear Dan,

  This letter is in response to your April 19, 2022[1] letter and in further follow up to the matters we discussed at length via Zoom videoconference on April 15, 2022, specifically (1) whether Tyler will produce documents in response to Plaintiffs' Requests for Production of Documents ("Requests") pending a ruling on Tyler's Motion to Stay, and (2) Tyler's objections to producing personal financial records in response to twenty-six of Plaintiffs' one hundred thirty-eight Requests.

  As a preliminary matter, I want to clarify one point from of our meet and confer. In an effort to streamline our clients' discovery disputes and avoid the expense of briefing and arguing cross motions, I offered that if we could hold our disputes regarding the twenty-six Requests for financial documents in abeyance until after the Court decides Tyler's Motion to Dismiss, Tyler would agree to produce documents now in response to the other Requests.

  It appears that you understood this proposal to mean that the real reason Tyler will not produce his personal financial records now is only that he expects the court will eventually dismiss the Aronsons' claims. That is not so. As I made clear during our conference, <u>our confidence in the strength of Tyler's Motion to Dismiss is not the basis for Tyler's objections to any Request</u>. Regardless of whether the Court dismisses the claims against Tyler, Plaintiffs unduly broad, sweeping Requests to Tyler seek sensitive financial records that are not necessary or even relevant to *any* of their claims and, therefore, not discoverable in this case. That is the central and foremost basis for Tyler's objections, as set forth in detail below.

---

[1] I received your letter via email at 3:25 p.m. on April 19, 2022, but note that the PDF is dated April 18, 2022, in error.

| | | | | |
|---|---|---|---|---|
| AUSTIN | DETROIT | MEXICO CITY | SACRAMENTO | TAMPA |
| BOSTON | HOUSTON | MIAMI | SAN DIEGO | WASHINGTON, D.C. |
| CHICAGO | JACKSONVILLE | MILWAUKEE | SAN FRANCISCO | BRUSSELS |
| DALLAS | LOS ANGELES | NEW YORK | SILICON VALLEY | TOKYO |
| DENVER | MADISON | ORLANDO | TALLAHASSEE | |

4882-0645-7629.1



April 22, 2022
Page 2

### 1. Tyler will seek a protective order to postpone his production in response to the Requests pending Judge Valderrama's ruling on Tyler's Motion to Stay

Tyler served written Responses to the Requests on January 27, 2022. Tyler agreed to conduct a reasonable search of documents in his possession, custody and control and, subject to certain objections, produce any documents located responsive to seventeen of Plaintiffs' **one hundred thirty-eight** Requests.[2] Those seventeen Requests seek mostly the same documents Plaintiffs are also seeking from the other defendants in this case and the vast majority of responsive documents Tyler may have will also be in the possession, custody and control of JJMT.

Shortly after serving his written Responses, Tyler moved to stay these proceedings entirely in light of the receivership order entered in *SEC v. Horwitz, et al.*, Case No. 2:21-cv-2927-CAS-GJS (C.D. Cal.) ("SEC Case"). In requesting appointment of a receiver, the SEC specifically noted its concern that "certain of Horwitz's investors [*i.e.* individual investors like the Aronsons] have already filed lawsuits against 1inMM and other investors [like Tyler] in an effort to recover funds for themselves." Thus, one reason the SEC sought to appoint a receiver was to ensure the efficient collection of assets and avoid piecemeal litigation by individual investors like the Aronsons, with the end goal of organizing a unified and fair claims process and distribution among the hundreds of victims of the Horwitz/1inMM Ponzi Scheme.

On February 14, 2022, you and I conferred briefly regarding Tyler's discovery responses and document production. During that call, I confirmed that Tyler would not produce documents pending the Court's ruling on the Motion to Stay. Plaintiffs thereafter filed an unopposed motion to extend the discovery deadlines, which was granted. Plaintiffs did not request to confer further on the subject of Tyler's production until after Judge Cox's April 11, 2022 Minute Order instructing the parties that discovery obligations are <u>not</u> stayed pending a ruling on the Motion to Stay. In light of that order, and as we discussed during the meet and confer, Tyler now intends to seek a protective order.

There is good cause for such an order because Federal Rule of Civil Procedure ("Rule") 26(c) allows the Court to protect Tyler from the expense and undue burden of having to produce documents while Tyler has a motion pending to stay this case entirely based on the injunction entered in the SEC Case on January 14, 2022. It could prove to be a waste of judicial and party resources to require that discovery to proceed while Tyler's Motion to Stay is pending, which

---

[2] Tyler has no documents responsive to ninety-five Requests. The vast majority of these Requests, like almost all one hundred thirty-eight of the Plaintiffs' Requests, seek documents in the possession, custody and control of JJMT. As I mentioned during the conference, to avoid unnecessary theoretical disputes, we declined to raise specific substantive objections to the ninety-three Requests to make clear that Tyler is not withholding responsive documents subject to any objection.



April 22, 2022
Page 3

would be particularly unfortunate here given that the precise reason for Tyler's Motion (and, indeed, for the receivership order and its anti-litigation injunction) is to avoid such waste. Rule 26(d) authorizes the court to dictate the timing and sequence of discovery and, under these circumstances, there are compelling reasons to temporarily stay discovery as to Tyler.

At the same time, there is also no good reason to deny Tyler this protection. Plaintiffs will not be prejudiced by what may be only a temporary delay of Tyler's document production. Plaintiffs do not need documents from Tyler to respond to the pending Motions to Dismiss and/or Stay. Rather, their only concern is with meeting the current fact discovery deadline. Additionally, a delay of Tyler's production will be inconsequential to Plaintiffs here because the other defendants in this case have begun producing documents and the vast majority of any responsive documents Tyler may have will necessarily be duplicative of documents also in JJMT's possession, custody and control. Specifically, any documents Tyler would produce in response to the following thirteen Requests will likely be duplicative of a subset of JJMT's production:

>**Request No. 2**: All communications between You and any of the Individual Defendants – either individually or collectively – regarding the corporate formation of JJMT.
>
>**Request No. 3**: All communications between You and JJMT regarding the corporate formation of JJMT.
>
>**Request No. 6**: All documents related to Your membership or ownership interest with JJMT.
>
>**Request No. 7**: All communications between You and any of the Individual Defendants – either individually or collectively – related to Your membership or ownership interest with JJMT.
>
>**Request No. 10**: All contracts, promissory notes, and other agreements that You executed with JJMT.
>
>**Request No. 11**: All communications regarding any and all contracts, promissory notes, and other agreements that You executed with JJMT.
>
>**Request No. 52**: All communications between You and any of the Individual Defendants – either individually or collectively – referencing Horwitz.
>
>**Request No. 53**: All communications between You and any of the Individual Defendants – either individually or collectively – referencing the 1inMM Entities.



April 22, 2022
Page 4

**Request No. 55**: All communications between You and any of the Individual Defendants – either individually or collectively – regarding any due diligence efforts undertaken into the 1inMM Entities or Horwitz.

**Request No. 86**: All documents and communications related to the transactions referenced in Paragraphs 5 and 8 of the Declaration of Matthew Schweinzger, which Declaration is attached as Exhibit 1 to the Amended Complaint.

**Request No. 88**: All documents and communications related to the "Licensing and Distribution Agreements with Netflix and HBO," which are referenced in Paragraph 10 of the Declaration of Mathew Schweinzger that is attached as Exhibit 1 to the Amended Complaint.

**Request No. 93**: All documents and communications related to the "more than 400 documents and contracts, as well as emails, and other materials regarding putative content licensing transactions conducted by 1inMM" that were provided to Schweinzger and/or any other Defendants, which are referenced in Paragraph 10 of the Declaration of Mathew Schweinzger that is attached as Exhibit 1 to the Amended Complaint.

**Request No. 110**: All documents related to any and all promissory notes, transactions, Subscription Agreements, or Projects in connection with Horwitz or any of the 1inMM Entities.

Only four of the seventeen Requests seek documents that are not necessarily likely to overlap with JJMT's production. Of those four Requests, Request Nos. 72 and 111 seek communications between Tyler and third parties (*i.e.* other investors who are not plaintiffs in this case) related to their investments in 1inMM and/or JJMT. There is good cause to temporarily relieve Tyler of the burden and expense of producing documents while the Court considers whether to stay this case entirely. Responsive third party communications, while arguably discoverable here if this case moves forward, are not necessary to prove any of Plaintiffs' claims. There is no particular urgency with respect to Tyler's production in response to Request Nos. 72 and 111 beyond the parties' mutual timing concerns based on the current fact discovery deadline. A reasonable compromise, therefore, would be to temporarily stay Tyler's production while the Court considers the Motion to Stay, and agree to further extend the fact discovery cutoff as necessary in the meantime.

Finally, Request Nos. 123 and 124 seek documents and communications related to Tyler's resignation from JJMT in 2018. These documents could be necessary only to prove *Tyler's defenses*, in the unlikely event that any of Plaintiffs' claims actually survive Tyler's Motion to Dismiss. But that alone is not sufficient reason to require Tyler to undergo the burden and expense of

4882-0645-7629.1



April 22, 2022
Page 5

an immediate, partial production, especially considering that most of these documents are, as a practical matter, available to Plaintiffs anyway through another party-defendant that has already begun to produce documents in this case.

> **2. Tyler stands on his objections and will seek a protective order as to Plaintiffs' unjustifiably intrusive Requests for Tyler's personal, sensitive financial records**

Tyler continues to object to producing the various extremely broad, sweeping categories of personal financial documents Plaintiffs seek Request Nos. 4, 5, 14, 15, 20, 21, 24, 27, 28, 47, 50, 51, 127, 128, 131, 132, 135, 136, and 137.

The financial documentation Plaintiffs are seeking from Tyler is not relevant or necessary to any of their claims for (a) violation of the Illinois Securities Law of 1953 ("ISL"), (b) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), or (c) conspiracy to defraud.[3]

Each claim against Tyler is premised on allegedly false and misleading "statements of fact and representations made by Defendants in the October 9 E-mail and Overview" including that JJMT was founded in 2014, acquired film rights and made money by negotiating deals with content producers, used loan proceeds to pay producers for distribution rights, made sales to HBO, made capital calls to investors only once a deal was completely negotiated and ready, and offered a "very low risk" investment opportunity. *See* Second Amend. Compl. ¶ 46. Plaintiffs also claim the Email and Overview failed to disclose money owed to some or all of the defendants in connection with certain ongoing loans and instead, and in furtherance of a clandestine agreement to obtain money from the Aronsons, falsely implied that 1inMM had already repaid all loans. *Id.* ¶ 47.

Other than the allegation regarding an alleged failure to disclose ongoing loans, Plaintiffs' claims rely exclusively on allegations that defendants failed to conduct sufficient due diligence to verify statements and representations by Horwitz/1inMM. Tyler's financial records, whether at the time of JJMT's inception, the time of the Aronsons' first investment, or after Tyler's resignation from JJMT, have no bearing on that issue. Plaintiffs allege the defendants were motivated to forego proper due diligence because they were profiting off the Ponzi Scheme, but that allegation is extraneous claims because motive is not an element of their statutory cause of action under either the ISL and/or ICFA.

---

[3] Your letter incorrectly states that "Plaintiffs have asserted claims of consumer fraud, common law fraud and conspiracy to defraud, and the basis for those claims is that [Tyler] personally benefitted from the furtherance of a Ponzi Scheme…" Plaintiffs have asserted common law fraud claims against defendant Schweinzger only, not Tyler.



**FOLEY & LARDNER LLP**

April 22, 2022
Page 6

        Plaintiffs argue that Tyler's alleged financial motive is a necessary component of their conspiracy to defraud claims. Tyler disagrees, for several reasons. First, the Requests are woefully overbroad, on their face, and in the most egregious instances do not make even a cursory attempt to limit the scope to records reflecting transactions with any remote connection to the other defendants, JJMT, Horwitz/1inMM or any aspect of this case (*see e.g.,* Request No. 132, seeking all bank statements between 2014-2021 for any personal account ever used to receive compensation and/or payments from JJMT). Instead, Plaintiffs seek all of Tyler's personal, private, financial information, without qualification. Second, the conspiracy to defraud claims are entirely duplicative of Plaintiffs' statutory claims. The conspiracy claims are based on the exact same facts, supplemented only by a conclusory allegation that the defendants conspired together toward the alleged statutory violations. Third, Plaintiffs claim they were defrauded of money in connection with JJMT promissory notes purchased in 2019. Tyler's financial records *before* 2019 have nothing to do with Plaintiffs' alleged damages. Neither do his financial records from 2019 and later, as Plaintiffs admit he resigned from JJMT in 2018.

        Despite the Plaintiffs' attempt at artful pleading, the Second Amended Complaint, as it stands today, does not justify a fishing expedition into Tyler's personal financial records, let alone an exhaustive excavation of his finances from 2014 through 2021. The only financial documents Plaintiffs seek from Tyler that might possibly be relevant in this case would become necessary if, and only if, Plaintiffs were to obtain a judgment against Tyler that Tyler could not satisfy. The chances of that happening are extremely remote, for reasons I will not belabor here. Suffice it to say that those reasons, likewise, do not justify Plaintiffs' attempted fishing expedition in Request Nos. 4-5, 14-15, 20-21, 24, 27-30, 32, 34, 36-38, 47, 50-51, 127-128, 131-133, and 136-137.

        Very truly yours,

        Jena L. Levin

JLL:
cc:   Scott C. Frost
      Margaret G. Nelson
      Ellen M. Wheeler